IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

LUTHER JEROME WILLIAMS,    )
                           )
          Petitioner,      )
                           )
vs.                        )    Case No. 7:01-cv-780-IPJ-TMP
                           )
DONAL CAMPBELL, Commissioner, )    (Death Penalty Habeas)
Alabama Department         )
of Corrections,            )
                           )
          Respondent.      )

**MEMORANDUM OPINION**

This is an action by an Alabama state prisoner pursuant to 28 U.S.C. § 2254, challenging the constitutional validity of the conviction he received in the Tuscaloosa County Circuit Court on November 30, 1989, of capital murder. The petitioner, Luther Jerome Williams, with the assistance of an attorney, filed the instant petition for writ of *habeas corpus* on March 29, 2001. He is incarcerated at Holman State Prison in Atmore, Alabama.

**I.  PROCEDURAL HISTORY**

On March 1, 1988, the petitioner was charged with first-degree murder committed during the course of a robbery in violation of Alabama Code Section 13A-5-40(a)(2). The victim, John Robert Kirk, was shot once in the left side of the head, and his money and

pickup truck were stolen.  Williams was convicted on November 30, 1989, after a jury trial, of capital murder.

## A.  The Crime

The Alabama Court of Criminal Appeals described the evidence presented at trial as follows:

> On January 22, 1988, a 1981 dark blue Oldsmobile Regency automobile was stolen from a motel parking lot in Birmingham, Alabama.  In the trunk of this vehicle was, among other items, a .22 caliber pistol.  A dark blue car arrived at the Smithfield housing project in Birmingham later that same evening and the appellant was identified as the sole occupant.  On the morning of January 23, 1988, John Robert Kirk was on his way home from work.  He stopped his vehicle – a red 1984 Chevrolet pickup truck with a camper on the back – near the West Blocton exit on Interstate 59 South in Tuscaloosa County.  The appellant and two men were traveling south on Interstate 59 in the stolen Oldsmobile.  After noticing the victim's vehicle beside the road, they stopped and confronted him.  The appellant led the victim to a nearby wooded area and shot him once in the left side of the head, "execution style," with the .22 caliber pistol which had been in the trunk of the stolen Oldsmobile.  The victim's body was left at the site of the shooting, and his money and vehicle were taken.
>
> Later that same morning, several witnesses identified the appellant as the driver of a red "camper truck" which was parked at the Smithfield housing project.  One of these witnesses, Priscilla Jones, a relative of the appellant's, testified that the appellant had visited her on the day of the murder.  She stated that the appellant told her that "he had killed a white man and stole his truck," and that he proceeded to show her the weapon, which she described as having a white handle.

On the night of January 24, 1988, after responding to a
call placed by a Rosie Mims, members of the Birmingham
Police Department interviewed Priscilla Jones regarding
the appellant.   During this interview, the Birmingham
police learned of the appellant's statement to Ms. Jones
concerning the shooting of a white man.  They were also
informed that he was staying at an apartment in the
housing project, and that he was an escapee from the
supervised intensive restitution (SIR) program.

During the very early morning hours of January 25, 1988,
after verifying that the appellant had indeed escaped
from the SIR program and that a warrant was still
outstanding, the Birmingham police went to the apartment
in the Smithfield housing project where the appellant
was reportedly staying.  The officers talked with the lessee
of the apartment, Margie Bush.  They inquired as to the
whereabouts of the appellant and his girlfriend, Debra
"Bootsie" Bush.   Margie Bush turned toward a curtain
which separated the front of the apartment from the back
bedroom and shouted for Bootsie, who then appeared from
behind the curtain.  Bootsie stated that she did not know
where the appellant was at that time.   However, one of
the officers happened to look behind the curtain and saw
the appellant lying in the bed.   After a struggle, the
appellant was taken into custody.

The supervising officer then informed Margie Bush that
the appellant was thought to have a gun and requested
permission to search the apartment for it.   Margie Bush
gave her permission.   During the search, Bootsie stated
that the appellant had hidden the gun in the bedroom.
The murder weapon was found inside a black purse located
on top of a dresser in the room in which the appellant
was apprehended.

*Williams v. State*, 601 So. 2d 1062, 1065-66 (Ala.Crim.App.1991).

### B.  The Trial

Petitioner was represented pre-trial by Al Vreeland and Bobby
Cockrell.   After Vreeland and Cockrell moved to withdraw as

counsel, the court appointed John Bivens to represent petitioner. Larry Ingram was later appointed as additional counsel for the defense. Bivens and Ingram represented petitioner through the guilt and penalty phases of the trial. After the penalty phase, the jury returned a recommendation that the death penalty be imposed. The recommendation passed by a 10-2 vote of the jury. On February 12, 1990, after conducting an evidentiary hearing on mitigating and aggravating circumstances, the trial judge entered an order imposing the death penalty.

### C.  The Direct Appeal

Petitioner was represented by Bivens and Ingram on appeal. He asserted that:

(1)   the court erred in finding that the mitigating circumstance of the defendant having no significant history of prior criminal activity under Alabama Code Section 13A-5-51(1) was not applicable;

(2)   the court's instruction at the penalty phase denied him his constitutional rights under the Sixth, Eighth, and Fourteenth Amendments;

(3)   the court erred in denying defendant's motion to suppress evidence obtained through an illegal search; and

(4)   incriminating statements made by the defendant while in a psychiatric facility for evaluation constituted a custodial interrogation that required defendant to be given a Miranda warning.

In a supplemental brief, petitioner raised the following additional issues:[1]

(5) he was deprived of his right to a fair trial in that the prosecutor improperly

    (a) commented on defendant's silence at the guilt phase and thereby shifted the burden of proof to the defense,

    (b) argued during the guilt phase that defendant would kill again, and

    (c) emphasized the race of the appellant to urge the jury to convict and to recommend death;

(6) the court failed to instruct the jury adequately on the lesser-included offenses of felony murder and robbery in the first degree;

(7) the trial court erred in instructing the jury that it had to find "actual doubt" in order to acquit;

(8) the trial court's instruction on circumstantial evidence impermissibly shifted the burden of proof to the defendant;

(9) the trial court improperly instructed the jury that it had a duty to reconcile the testimony of the witnesses;

(10) the state's presentation at the penalty phase of psychiatric testimony by Dr. Bernard Bryant concerning future dangerousness abridged defendant's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments;

(11) the exclusion of potential jurors based upon their "scruples against the death penalty" violated defendant's constitutional rights;

---

[1] For convenience and clarity, the issues are re-numbered sequentially herein.

(12) the trial court erred in denying defendant's motion to sequester the jury venire during *voir dire*;

(13) the conviction and sentence were improperly obtained on the basis of the presentation of evidence of personal characteristics of the victim and the victim's family, in violation of <u>Booth v. Maryland</u> in that:

    (a) the court allowed the victim's widow to sit at counsel table throughout trial and sentencing pursuant to an Alabama statute allowing a victim's family member to sit at counsel table, which is unconstitutional in capital cases, and

    (b) the victim's widow was allowed to give impermissible testimony;

(14) the jury's sense of responsibility was diminished in that the jury repeatedly was told that its sentence would be only a recommendation;

(15) the court improperly considered the pre-sentence report, which contained hearsay, non-statutory aggravating circumstances, and uncounseled statements, specifically including

    (a) the probation officer's recommendation of death,

    (b) prejudicial hearsay remarks, and

    (c) the parole officer's interview with the defendant;

(16) the evidence was insufficient to support a capital conviction or a death sentence;

(17) the prosecutor erroneously told the jury that it could impose the death penalty under a standard of "reasonable satisfaction";

(18) the heightened sensibility required for a capital case compels the court to reverse the sentence of death because the jury was allowed unguided

discretion in weighing mitigating and aggravating circumstances; and

(19) defendant's right to a speedy trial was violated.

The Alabama Court of Criminal Appeals affirmed the conviction and sentence in a published memorandum opinion dated June 14, 1991. Williams v. State, 601 So. 2d 1062. Petitioner sought rehearing, which was denied on July 26, 1991. Petitioner then sought review in the Alabama Supreme Court. The Alabama Supreme Court affirmed without opinion on November 2, 1992. Williams v. Alabama, 662 So. 2d 929 (Ala. 1992). The United States Supreme Court denied the petition for *certiorari*. Williams v. Alabama, 506 U.S. 957, 113 S. Ct. 417, 121 L. Ed. 2d 340 (1992).

## D.  The Post-Conviction Proceedings

Petitioner filed a motion for post-conviction relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure in the trial court on or about April 8, 1994, alleging:[2]

(1) he was deprived of his right to a fair trial in that the prosecutor improperly

(a) commented on defendant's silence by saying "unless something else is shown as to why [he] had that gun,"

---

[2]    The court has re-numbered petitioner's Rule 32 Claims to group them in a logical fashion. References hereinafter are made to the court's re-numbered claims, rather than as they are numbered in the Rule 32 petition.

     (b)   argued at the guilt phase that defendant would kill again, and

     (c)   emphasized the race of the victim to urge the jury to convict and to recommend death;

(2)   the court failed to adequately instruct the jury on the lesser-included offense of felony murder under Alabama Code § 13A-6-2(a)(3);

(3)   the trial court erred in instructing the jury that it had to find "actual doubt" in order to acquit;

(4)   the trial court's instruction on circumstantial evidence impermissibly shifted the burden of proof to the defendant;

(5)   the trial court improperly instructed the jury that it had a duty to reconcile the testimony of the witnesses;

(6)   the state's presentation of psychiatric testimony by Dr. Bryant concerning future dangerousness abridged defendant's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments;

(7)   the exclusion of potential jurors based upon their "difficulty" with, or "scruples against", the death penalty violated defendant's constitutional rights;

(8)   the trial court erred in denying defendant's motion to sequester the jury venire during *voir dire*;

(9)   the conviction and sentence were improperly obtained on the basis of the presentation of evidence of personal characteristics of the victim and the victim's family, in violation of <u>Booth v. Maryland</u>, 482 U.S. 496, 107 S. Ct. 2529, 96 L. Ed. 2d 440 (1987), in that:

     (a)   the court allowed the victim's widow to sit at counsel table throughout trial and sentencing pursuant to an Alabama statute allowing a victim's family member to sit

-8-

at counsel table, which is uncon-
stitutional in capital cases, and

(b) the victim's widow was allowed to give
impermissible testimony;

(10) the jury's sense of responsibility was diminished
in that the jury repeatedly was told that its
sentence would be only a recommendation;

(11) the court improperly considered the pre-sentence
report, which contained hearsay, non-statutory
aggravating circumstances, and uncounseled
statements including:

(a) the probation officer's recommendation of
death,

(b) prejudicial hearsay remarks, and

(c) the parole officer's interview with the
defendant;

(12) the evidence was insufficient to support a capital
conviction or a death sentence;

(13) the state erroneously told the jury that it could
impose the death penalty under a standard of
"reasonable satisfaction";

(14) the trial court erred in allowing the jury to use
unguided discretion in weighing mitigating and
aggravating circumstances to determine whether to
recommend the death penalty;

(15) defendant's right to a speedy trial was violated;

(16) the trial court erred in finding that the
mitigating circumstance of the defendant having no
significant history of prior criminal activity
under Alabama Code Section 13A-5-51(1) was not
applicable;

(17) the trial court erred in denying defendant's motion
to suppress evidence obtained through an illegal
search, conducted in violation of the Fourth
Amendment;

(18) incriminating statements made by the defendant while in a psychiatric facility for evaluation constituted a custodial interrogation that required defendant to be given a <u>Miranda</u> warning;

(19) statements made by defendant while at a psychiatric facility were improperly used against him at the guilt phase of the trial in violation of his right against self-incrimination;

(20) defendant was deprived of his right to a fair trial by the prosecutor's racially discriminatory use of peremptory challenges;

(21) defendant was denied his right to a pool of grand and petit jury members who were representative of his community;

(22) Alabama's death penalty statute is violative of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the Alabama Constitution;

(23) defendant was denied effective assistance of counsel at trial and on direct appeal in that:

  (a) Bivens was taking medication that adversely affected his ability to provide effective assistance at trial,

  (b) trial counsel failed to interview defendant at length before trial,

  (c) trial counsel never talked with Vreeland, who represented defendant at the preliminary hearing and at a motion hearing,

  (d) trial counsel failed to interview witnesses who were subpoenaed prior to the start of trial and did not follow-up with cross examination relating to

inconsistencies in Priscilla[3] Jones' testimony,

(e)   trial counsel failed to interview other witnesses who had knowledge of the proceedings,

(f)   trial counsel failed to monitor and supervise the work of the investigator and social worker and to identify and correct deficiencies in their performances,

(g)   trial counsel failed to employ a forensic expert to analyze the state's forensic evidence,

(h)   trial counsel failed to employ the services of a psychologist,

(i)   trial counsel failed to properly support motions for expert assistance and failed to renew those motions after they were denied for lack of detail,

(j)   trial counsel failed to properly support the motion for sequestration of the jury venire,

(k)   trial counsel failed to conduct *voir dire* as to whether any potential juror would automatically impose a death sentence if defendant were convicted of capital murder,

(l)   trial counsel failed to examine and review adequately a report from Taylor Hardin that was presented by the state and that contained defendant's statement

_____

[3]   The name of this witness is spelled "Pricilla" and "Priscilla" at different times in the transcripts and briefs.  The court uses the more common spelling as a matter of convenience, and because the court has no information as to which spelling is correct.

that he had killed one "white mother-
fucker," and would kill another,

(m)  trial counsel failed to investigate and
present evidence of mitigating circum-
stances in that the sole investigator
interviewed only three of defendant's
friends or family members,

(n)  trial counsel failed to properly inter-
view witnesses and potential witnesses
who could have offered testimony at the
penalty phase to support mitigating
circumstances,

(o)  trial counsel failed to object to
repeated and prejudicial instances of
prosecutorial misconduct,

(p)  trial counsel failed to object to
prosecutor's improper comments on
defendant's silence,

(q)  trial counsel failed to object to
improper and repeated remarks about the
future dangerousness of defendant,

(r)  trial counsel failed to object to
prosecutor's attempts to inflame the
emotions of the jury by a "thematic
presentation of the race of the victim,"

(s)  trial counsel failed to object to
erroneous instructions given by the
court,

(t)  trial counsel failed to object to the
court's failure to instruct the jury
adequately on lesser-included offenses,

(u)  trial counsel failed to object to (and
stated he was satisfied with) the
instruction given by the court regarding
circumstantial evidence, which lessened
the degree of proof necessary for
conviction and shifted the burden of
proof to the defendant,

(v) trial counsel failed to object to a jury instruction that informed the jury that they had a duty to reconcile the testimony of all the witnesses,

(w) trial counsel failed to object to the court's instruction to jurors that they had to find "actual doubt" in order to acquit the defendant,

(x) trial counsel failed to object to the testimony of Dr. Bryant on grounds that the defense offered no expert testimony on defendant's mental health,

(y) trial counsel failed to object to the admission of the report from Taylor Hardin to rebut mitigation,

(z) trial counsel failed to object to the introduction of the widow to the jury, and to the widow's improper and prejudicial testimony at the guilt phase,

(aa) trial counsel failed to object to jury instructions that were constitutionally flawed, including:

    (1) an instruction that limited the jury's discretion to impose a sentence of life without parole,

    (2) the instruction that one aggravating circumstance already had been proven in that the jury had found the defendant guilty of a capital offense,

    (3) the description of the jury's sentence as a recommendation, and

    (4) the statement that reasonable doubt was the same as moral certainty;

-13-

(bb) trial counsel failed to object to the
trial court's consideration of a pre-
sentence report that contained hearsay,
non-statutory aggravating circumstances,
and uncounseled statement of the
defendant,

(cc) trial counsel failed to properly seek
suppression of the defendant's incrim-
inating statement made at Taylor Hardin,

(dd) trial counsel failed to waive reliance on
the mitigating circumstance of no
significant criminal history, thereby
allowing introduction of prior
convictions for nonviolent offenses,

(ee) trial counsel failed to object to the
court's instruction that the jury had a
duty to reconcile the testimony of the
witnesses,

(ff) trial counsel failed to object to
exclusion of potential jurors based on
their scruples against the death penalty,

(gg) trial counsel failed to object to the
statements by the court and the
prosecutor that the sentence would be a
recommendation,

(hh) trial counsel failed to object to the
prosecutor's use of the standard of
"reasonable satisfaction" for the
imposition of the death penalty,

(ii) trial counsel failed to object that the
trial court allowed the jury unguided
discretion in weighing aggravating and
mitigating circumstances,

(jj) trial counsel failed to obtain a speedy
trial,

(kk) trial counsel failed to object to the use
of jury pools that were not
representative of the community, and

> (ll) that each instance of ineffective assistance was prejudicial, but that the combined effect of the errors was extremely prejudicial and a denial of defendant's constitutional right to counsel under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, and under Article I of the Alabama Constitution.

On or about July 7, 1994, the petitioner filed an amendment to his Rule 32 petition, but asserted no new claims. He was represented in the Rule 32 proceedings by Lisa Borden and Christopher Little.

The court held a two-day evidentiary hearing on the Rule 32 petition on August 13 and 14, 1997, and allowed the parties to file briefs after the evidentiary hearing. On March 22, 1999, the trial court denied the petition.[4] Petitioner appealed to the Alabama Court of Criminal Appeals, asserting:

> (1) his due process rights were violated in the Rule 32 hearing in that:
>
>> (a) the trial court refused to grant funding for the appointment of expert witnesses; and

---

[4] The trial court denied 22 of petitioner's claims on grounds that the claims were precluded by Alabama Rule of Criminal Procedure 32.2(a). The court examined on the merits all petitioner's claims that he had been denied effective assistance of counsel. A copy of the trial court's order denying relief on the Rule 32 petition is contained within the exhibits provided by the respondents at Tab 53, and is referred to hereinafter as "Order Denying Rule 32 Petition.")

-15-

      (b)   the trial court erred in taking judicial notice of the race of the trial attorney's secretary;

(2)   he received ineffective assistance of counsel at the penalty phase of the trial in that trial counsel failed to:

      (a)   investigate the petitioner's background and interview potential witnesses in order to develop evidence of mitigating circumstances,

      (b)   seek the assistance of a psychologist to prepare and present evidence,

      (c)   object to the testimony of the state's psychiatric witness, Dr. Bernard Bryant, regarding the future dangerousness of the petitioner,

      (d)   object to the court's consideration of the pre-sentence report, which contained hearsay, uncounseled statements by the defendant, and non-statutory aggravating circumstances, and

      (e)   failed to object to the prosecutor's improper opening statement in which he told the jury that they could recommend the death penalty under a standard of "reasonable satisfaction";

(3)   he received ineffective assistance of counsel at the guilt phase of the trial in that trial counsel failed to:

      (a)   investigate the case and interview potential witnesses who could have testified in his favor at trial,

      (b)   prepare for trial in a timely manner, consult with petitioner's previous attorneys and interview the petitioner before trial except in a summary fashion,

(c) object on proper grounds to the admissibility of Wallace Gaskin's statement at trial,

(d) present sufficient support for the motion to suppress evidence found during an illegal search,

(e) request funds to hire a forensic expert and a forensic pathologist,

(f) present an adequate theory of the defense,

(g) object to improper jury instructions regarding:

   (i) lesser-included offenses of felony murder and first-degree robbery,

   (ii) reasonable doubt,

   (iii) circumstantial evidence, and

   (iv) the jury's duty to reconcile the evidence;

(h) object to prosecutorial misconduct when the prosecutor:

   (i) improperly commented on the defendant's silence,

   (ii) improperly commented that the defendant would "kill again," and

   (iii) improperly commented on the race of the victim;

(i) present sufficient evidence to support the motion for sequestration of the jury venire;

(j)  *voir dire* the jury venire as to whether they would automatically impose the death penalty;

(k)  object to the role of the victim's widow at trial;

(l)  impeach the prosecutor's witness, Priscilla Jones; and

(m)  secure a speedy trial;

(4)  the cumulative effect of counsel's errors served to deny petitioner his constitutional right to a fair trial;

(5)  the extremely low funding provided by the State of Alabama for the compensation of defense attorneys in capital trials acted to deny petitioner his right to effective assistance of counsel;

(6)  trial counsel's failure to object at trial prejudiced petitioner by limiting his rights on appeal to that of review under the "plain error" rule; and

(7)  he was denied a fair trial in violation of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and the law of Alabama.

The Alabama Court of Criminal Appeals affirmed by order dated March 31, 2000.  *Williams v. State*, 783 So. 2d 108 (Ala. Crim. App. 2000).  Petitioner sought rehearing, which was denied May 19, 2000. He subsequently sought *certiorari* in the Alabama Supreme Court, which denied the petition on October 27, 2000.

## E.  The Instant *Habeas* Petition

On March 29, 2001, petitioner filed the instant petition for *habeas* relief in this court, asserting:

(1)  that he was denied effective assistance of counsel at the guilt phase of his trial in that his attorneys at trial failed to:

    (a)  challenge the evidence against petitioner,

    (b)  present a coherent theory of the defense,

    (c)  interview potential witnesses and investigate the facts and circumstances in that counsel relied upon an investigator, William Formby, instead of performing the investigation himself, and failed to supervise or correct the deficiencies in Formby's investigation,

    (d)  call witnesses who could have testified in petitioner's favor at trial, including Laura Williams and Sandra King,

    (e)  impeach witness Priscilla Jones by calling her father to testify as to her reputation as a liar or by demonstrating that she "fenced" stolen items from her apartment,

    (f)  properly object to the admission of Wallace Gaskin's statement that petitioner said he had killed a man,

    (g)  begin to prepare for trial until the week before trial,

    (h)  interview the petitioner before trial except in a summary fashion, and during trial only occasionally,

    (i)  call or return calls from Vreeland, who represented petitioner at the beginning

-19-

of a suppression hearing, which caused
counsel to appear at the continuation of
the suppression hearing without adequate
preparation,

(j)   examine records from the state mental
hospital, which would have alerted
counsel to the potential testimony of
Gaskin, who "surprised" counsel at trial
by testifying he had heard petitioner say
he killed a man,

(k)   properly object to or seek to exclude
admission of the murder weapon on the
basis that it was seized in an illegal
search of petitioner's bedroom obtained
by consent of one who had no authority to
consent,

(l)   provide evidence to support his theory of
the defense, which was that the
petitioner did not commit the crime
because he was unconscious from alcohol
and drugs at the time of the crime,

(m)   present evidence that someone other than
petitioner was driving the victim's car
at the time of the murder,

(n)   point out to the jury the absence of
physical evidence against petitioner,
including the lack of fingerprint, blood,
or gunpowder evidence,

(o)   argue to the jury that the co-defendants
had colluded to make it appear that
petitioner was guilty of the murder by
showing that the co-defendants had the
opportunity to collude during a hiatus in
the questioning,

(p)   hire a forensic expert and a forensic
pathologist to analyze the state's
evidence and to develop independent
evidence for the defense concerning the
lack of any finding of fingerprints,
gunpowder, or hair,

-20-

(q)     object to the court's failure to instruct
        the jury on lesser-included offenses of
        felony murder and first-degree robbery,

(r)     object to the court's jury instruction
        concerning reasonable doubt in that the
        court told the jury that they had to have
        an "actual doubt" or a "moral certainty"
        in order to acquit the petitioner,

(s)     object to the court's jury instruction
        concerning circumstantial evidence by
        suggesting that the jury must find an
        explanation for the circumstantial
        evidence that was consistent with the
        petitioner's innocence, which improperly
        shifted the burden of proof to the
        petitioner,

(t)     object to the court's jury instruction
        concerning the jury's duty to reconcile
        conflicting testimony by suggesting that
        the jury had to convict if they could
        reconcile all of the evidence with a
        finding of guilt,

(u)     object to prosecutorial misconduct when
        the prosecutor commented on the silence
        of the petitioner,

(v)     object to the prosecutor's improper
        comment that the petitioner would kill
        again,

(w)     object to the prosecutor's improper
        comments concerning the race of the
        petitioner and racial slurs allegedly
        spoken by the petitioner,

(x)     support a motion for sequestration of the
        jury by demonstrating the amount of pre-
        trial publicity,

(y)     conduct an adequate *voir dire* designed to
        identify jurors who were biased in favor
        of capital punishment,

(z)   object to testimony from the widow of the
      victim regarding the personal character-
      istics of the victim that was irrelevant
      and highly prejudicial,

(aa)  secure a speedy trial in that about 22
      months elapsed between the issuance of
      the arrest warrant and trial, which made
      it difficult to find witnesses or
      preserve evidence favorable to the
      defense,

(bb)  preserve for review on appeal numerous
      issues, causing petitioner to be subject
      to review only under the "plain error"
      standard,

(2)  that petitioner was denied effective assistance of
     counsel because Alabama provides inadequate funding
     for the compensation of defense attorneys and their
     expenses in capital trials;

(3)  that petitioner was denied effective assistance of
     counsel at the penalty phase of his trial in that
     his attorneys failed to:

     (a)   investigate and develop mitigating evi-
           dence concerning petitioner's traumatic
           childhood, troubled adolescence, and
           learning problems,

     (b)   seek the assistance of a psychological
           expert to prepare and present evidence
           related to mental health issues and drug
           or alcohol dependency,

     (c)   object to the testimony of a
           psychiatrist, Dr. Bernard Bryant,
           presented by the state to testify
           relating to petitioner's future danger-
           ousness,

     (d)   object to the court's consideration of
           the pre-sentence report that contained
           statements made by petitioner in
           violation of his Fifth and Sixth
           Amendment rights, prejudicial hearsay,

-22-

and suggestions that the death penalty should be imposed on the basis of non-statutory aggravating circumstances, and

(e) object to the prosecutor's opening statement which referred to the wrong standard for imposition of the death penalty (referencing "reasonable satis-faction");

(4) that petitioner's right to due process was denied in the Rule 32 proceedings in that the state court:

(a) refused to grant funds for the appointment of experts after petitioner argued that his attorneys were ineffective for failing to request funds for experts, and

(b) improperly took judicial notice of the race of trial counsel's secretary, and used that fact to justify the adequacy of trial counsel's investigation, which was an issue in the Rule 32 proceedings;

(5) that petitioner was denied a fair trial in violation of his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments because the prosecutor improperly commented on petitioner's silence at the guilt phase of the trial;

(6) that petitioner was denied a fair trial in violation of his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments because the prosecutor improperly commented on the petitioner's future dangerousness;

(7) that petitioner was denied a fair trial in violation of his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments because the prosecutor improperly referred to the race of the victim and to racial slurs made by the petitioner;

(8) that the trial court violated petitioner's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments by failing to adequately

-23-

instruct the jury on the lesser-included offenses
of felony murder and/or first-degree robbery;

(9)   that the trial court violated petitioner's rights
under the Fourth, Fifth, Sixth, Eighth, and
Fourteenth Amendments by instructing the jury that
it had to find "actual doubt" or "moral certainty"
in order to acquit petitioner;

(10)  that the trial court violated petitioner's rights
under the Fourth, Fifth, Sixth, Eighth, and
Fourteenth Amendments by instructing the jury that
it had to find an explanation for the
circumstantial evidence that would be "consistent
with the defendant's innocence" in order to acquit;

(11)  that the trial court violated petitioner's rights
under the Fourth, Fifth, Sixth, Eighth, and
Fourteenth Amendments by instructing the jury that
it had a duty to reconcile the testimony of the
witnesses where the defendant failed to call any
witnesses;

(12)  that the trial court violated petitioner's rights
under the Fourth, Fifth, Sixth, Eighth, and
Fourteenth Amendments by allowing the state to
present psychiatric testimony concerning
petitioner's future dangerousness;

(13)  that the trial court violated petitioner's rights
under the Fourth, Fifth, Sixth, Eighth, and
Fourteenth Amendments in that it excluded for cause
a potential juror who indicated that she could
follow the law despite her "difficulty" with
capital punishment;

(14)  that the trial court violated petitioner's rights
under the Fourth, Fifth, Sixth, Eighth, and
Fourteenth Amendments by denying counsel's motion
for sequestration of the jury venire during *voir
dire*;

(15)  that the trial court violated petitioner's rights
under the Fourth, Fifth, Sixth, Eighth, and
Fourteenth Amendments in that the conviction and
death sentence were obtained on the basis of
improper evidence of the victim's personal

-24-

characteristics and the impact of the victim's death on the victim's widow;

(16) that the trial court violated petitioner's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments in that the jury was repeatedly told that the sentence would be only a "recommendation";

(17) that the trial court violated petitioner's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments by considering a highly prejudicial pre-sentence report that contained hearsay, non-statutory aggravating circumstances, and uncounseled statements made by petitioner;

(18) that the trial court violated petitioner's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments in that the evidence was insufficient to support a conviction for capital murder or a sentence of death;

(19) that the trial court violated petitioner's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments by allowing the prosecutor to tell the jury that it could impose the death penalty under a standard of "reasonable satisfaction";

(20) that the trial court violated petitioner's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments in that it allowed the jury at the penalty phase unguided discretion in weighing the aggravating circumstances against the mitigating circumstances;

(21) that the petitioner's right to a speedy trial was violated by the delay of almost two years between the issuance of the arrest warrant and the impaneling of the jury;

(22) that the trial court violated petitioner's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments by finding that there were no mitigating circumstances and that petitioner had escaped from a prior sentence when he committed the

capital offense, although the escape had never been proven at trial;

(23) that the trial court violated petitioner's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments by denying the motion to suppress evidence obtained through the search of the home where petitioner was living;

(24) that the trial court violated petitioner's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments by allowing the prosecution to strike jurors on the basis of race in violation of <u>Batson</u>;

(25) that the trial court violated petitioner's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments in that the jury pools for the grand and petit jury were selected from a list of licensed drivers, a method that excluded certain segments of the community and denied petitioner his right to a jury that was representative of the community; and

(26) that the Alabama death penalty statute violates the Fifth, Sixth, Eighth, and Fourteenth Amendments in that it fails to ensure even-handed and non-arbitrary imposition of the death penalty because it provides for a review of the application of the death sentence only by comparison to other cases in which the death penalty has been imposed.

Petitioner filed an amended petition on June 7, 2001, re-asserting the claims set forth in the original petition, and adding:[5]

---

[5]    For convenience and in order to logically group the issues, the petitioner's claims set forth in the amended petition are numbered herein in sequence with the numbering of the claims in the original petition.

(1)  that he was denied effective assistance of counsel
     at trial in that his attorneys failed to:

     (cc) consult with petitioner upon hearing the
          testimony of Wallace Gaskin in that
          petitioner could have explained that
          Gaskin was biased because he believed
          petitioner had filed a grievance against
          him; and

     (dd) object to the testimony of the state's
          medical examiner relating to the angle of
          the gunshot wound being consistent with
          the victim being on his knees or lying
          down, and the prosecutor's use of that
          opinion in closing argument.

On August 6, 2001, after seeking and receiving an extension of
time in which to file a response to the *habeas* petition, the
respondents filed an answer, supported by exhibits, and an initial
brief on the merits.   After seeking and receiving extensions of
time in which to respond to the answer, petitioner filed a brief on
October 15, 2001, along with a motion for funds for a psychologist
and a motion for evidentiary hearing.   On November 9, 2001, the
respondents filed objections to the petitioner's motions.

On July 15, 2002, petitioner sought additional time in which
to submit arguments and briefs on issues including the
constitutionality of Alabama's death sentencing scheme.   The motion
for time was granted, and on August 30, 2002, petitioner filed a
brief on that issue.   Respondents sought leave to respond and to
address issues raised by the United States Supreme Court opinion in
Ring v. Arizona, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556

-27-

(2002).  The motion was granted, and both parties filed briefs on the <u>Ring</u> issue.  This court, anticipating the Supreme Court's further analysis of relevant issues, informally stayed the action pending the decision in <u>Schriro v.Summerlin</u>, ___ U.S. ___, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004).  Thereafter, the court directed the parties by order dated August 18, 2004, to file any additional arguments on those issues no later than September 15, 2004.  The petitioner filed a supplemental brief on September 15, 2004,[6] and sought leave to file an additional brief, which was granted.  The petitioner filed a final brief on October 15, 2004.

## II.  APPLICABLE LAW

There are several guiding principles that must be followed in evaluating any claim arising in a federal *habeas* case.  These principles and legal standards will apply to most of the petitioner's claims in this case, and need not be repeated with respect to each individual claim.  Accordingly, the general standards which inform consideration of certain aspects of all *habeas* claims are set forth below, and will be referenced only briefly in the discussion of each individual claim that follows.

---

[6]    Petitioner conceded in that brief that the Supreme Court had determined in <u>Shriro</u> that <u>Ring</u> does not apply retroactively. Consequently, <u>Ring</u> does not impact the instant conviction or sentence.

**A.  Exhaustion**

An application for writ of *habeas corpus* will not be considered unless the applicant has exhausted available state-court remedies.  28 U.S.C. § 2254(b); <u>Walker v. Zant</u>, 693 F.2d 1087, 1088 (11th Cir. 1982).  The exhaustion requirement is designed "to effect a proper balance between the roles of state and federal judicial institutions in protecting federal rights." <u>Ogle v. Estelle</u>, 592 F.2d 1264, 1267 (5th Cir. 1979) (citing <u>Lerma v. Estelle</u>, 585 F.2d 1297, 1299 (5th Cir. 1978)).[7]  As a matter of comity, the rule requires the federal courts to allow the states the initial "opportunity to pass upon and correct errors of federal law in the state prisoner's conviction." <u>Fay v. Noia</u>, 372 U.S. 391, 438, 83 S. Ct 822, 9 L. Ed. 2d 837 (1963).  Section 2254(c) provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the questions presented." <u>Rose v. Lundy</u>, 455 U.S. 509, 518 n.9, 102 S. Ct. 1198, 71 L. Ed. 2d 879 (1982).  If the unexhausted claims would now be deemed procedurally barred by the state court to which the petitioner would be required to submit his claims in order to meet the exhaustion requirement, those claims are considered

---

[7]  The Eleventh Circuit Court of Appeals has adopted as binding precedent the decisions of the former Fifth Circuit decided prior to October 1, 1981.  <u>Bonner v. City of Prichard</u>, 661 F.2d 1206 (11th Cir. 1981)(*en banc*).

-29-

procedurally defaulted for purposes of federal *habeas* relief. Kennedy v. Hopper, 156 F.3d 1143, 1145 (11th Cir. 1998).

## B.  Procedural Default

Procedural default is the manner in which the *habeas* requirement of exhaustion of state remedies is enforced. Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001)("The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine."). Before a federal *habeas* court may consider the merits of a claim, the state courts first must be given the opportunity to address and cure any constitutional defect that may exist in the conviction or sentence.

### 1.  Claims Raised But Defaulted In State Courts

The United States Court of Appeals for the Eleventh Circuit has stated:

> The federal courts' authority to review state court criminal convictions pursuant to writs of habeas corpus is severely restricted when a petitioner has failed to follow applicable state procedural rules in raising a claim, that is, where the claim is procedurally defaulted. Federal review of a petitioner's claim is barred by the procedural default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, Harris v. Reed, 489 U.S. 255, 263, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989), and that bar provides an adequate and independent state ground for denying relief. See id. at 262, 109 S. Ct. at 1042-43; Johnson v. Mississippi, 486 U.S. 578, 587, 108 S. Ct. 1981, 1987,

> 100 L. Ed. 2d 575 (1988).  The doctrine serves to ensure
> petitioners will first seek relief in accordance with
> state procedures, see Presnell v. Kemp, 835 F.2d 1567,
> 1578-79 (11th Cir. 1988), cert. denied, 488 U.S. 1050,
> 109 S. Ct. 882, 102 L. Ed. 2d 1004 (1989), and to "lessen
> the injury to a State that results through reexamination
> of a state conviction on a ground that a State did not
> have the opportunity to address at a prior, appropriate
> time." McCleskey v. Zant, 499 U.S. 467, 111 S.Ct. 1454,
> 1470, 113 L.Ed. 2d 517 (1991).

Johnson v. Singletary, 938 F.2d 1166, 1173 (11th Cir. 1991); see

also Bailey v. Nagle, 172 F.3d 1299 (11th Cir. 1999)("A state *habeas*

*corpus* petitioner who fails to raise his federal claims properly in

state court is procedurally barred from pursuing the same claim in

federal court absent a showing of cause for and actual prejudice

from the default.").  Thus, if a claim has been presented in some

form previously to a state court, a federal *habeas* court may refuse

to hear that claim only if the last state court rendering the

judgment "'clearly and expressly' states that its judgment rests on

a state procedural bar." Harris v. Reed, 489 U.S. 255, 263, 109 S.

Ct. 1038, 103 L. Ed. 2d 308, 317 (1989).  The stated bar also must

be "independent and adequate," as determined under federal law.

See Lee v. Kemna, 534 U.S. 362, 376, 122 S. Ct. 877, 885, 151 L.

Ed. 2d 820 (2002)("There are, however, exceptional cases in which

exorbitant application of a generally sound rule renders the state

ground inadequate to stop consideration of a federal question.");

Johnson v. Mississippi, 486 U.S. 578, 587, 108 S. Ct. 1981, 1987,

100 L. Ed. 2d 575 (1988).

-31-

## 2. Claims Never Presented In State Courts

A claim may be procedurally defaulted in at least two ways: first, when the claim is presented to the state courts in a way that does not comport with state procedural rules, and, second, when the claim has never been presented to the state courts and has become barred from being presented by state procedural rules. Again, the Eleventh Circuit has explained:

> Such procedural default can arise in two ways. First, where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred, <u>Sykes</u> requires the federal court to respect the state court's decision. <u>Atkins v. Singletary</u>, 965 F.2d 952, 956 (11th Cir. 1992), *cert. denied*, 515 U.S. 1165, 115 S. Ct. 2624, 132 L. Ed. 2d 865 (1995); <u>Meagher v. Dugger</u>, 861 F.2d 1242, 1245 (11th Cir. 1988). Second, if the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal. <u>Snowden v. Singletary</u>, 135 F.3d 732, 737 (11th Cir.), *cert. denied*, 525 U.S. 963, 119 S. Ct. 405, 142 L. Ed. 2d 329 (1998); <u>see also</u> 28 U.S.C. § 2254(b)(1)(A)(1994)(pre-AEDPA) ("An application for writ of habeas corpus ... shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State....").

<u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302-03 (11th Cir. 1999); <u>see</u> <u>Smith v. Jones</u>, 256 F.3d 1135, 1138 (11th Cir. 2001)("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal *habeas*

relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established"). Consequently, the *habeas* court is required not only to determine how claims presented to the state court were treated by those courts, but also to tag those claims asserted in the *habeas* action that were never alleged during state proceedings

### 3. "Cause and Prejudice"

If it is determined that a claim was procedurally defaulted in state court, the petitioner may obtain review of the claim in *habeas corpus* only by showing "cause and actual prejudice" to excuse the default, <u>Engle v. Isaac</u>, 456 U.S. 107, 129, 102 S. Ct. 1558, 1572-73, 71 L. Ed. 2d 783 (1982); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 86, 97 S. Ct. 2497, 2506, 53 L. Ed. 2d 594 (1977), or by showing that refusal to consider the claim will result in a "fundamental miscarriage of justice." <u>Smith v. Murray</u>, 477 U.S. 527, 537-38, 106 S. Ct. 2661, 2668, 91 L. Ed. 2d 434 (1986). The "cause and prejudice" test of <u>Engle v. Isaac</u> and <u>Wainwright v. Sykes</u> is in the conjunctive; therefore, petitioner must prove both cause and prejudice.

The United States Supreme Court summarized the "cause" prong of the standard in the following manner:

> In <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977), this Court adopted the "cause and prejudice" requirement of <u>Francis</u>

-33-

v. Henderson, supra, for all petitioners seeking federal
habeas relief on constitutional claims defaulted in state
court.   The Sykes Court did not elaborate upon this
requirement, but rather left open "for resolution in
future decisions the precise definition of the 'cause'-
and-'prejudice' standard." 433 U.S. at 87.  Although more
recent decisions likewise have not attempted to establish
conclusively the contours of the standard, they offer
some helpful guidance on the question of cause.   In Reed
v. Ross, 468 U.S. 1 (1984), the Court explained that
although a "tactical" or "intentional" decision to forego
a procedural opportunity normally cannot constitute
cause, id., at 13-14, "the failure of counsel to raise a
constitutional issue reasonably unknown to him is one
situation in which the [cause] requirement is met." Id.,
at 14.   The Court later elaborated upon Ross and stated
that "the existence of cause for a procedural default
must ordinarily turn on whether the prisoner can show
that some objective factor external to the defense
impeded counsel's efforts to comply with the State's
procedural rule." Murray v. Carrier, 477 U.S. 478, 488
(1986).  We explained that "a showing that the factual or
legal basis for a claim was not reasonably available to
counsel, ... would constitute cause under this standard."
Ibid. (Citations omitted.)

Amadeo v. Zant, 486 U.S. 214, 221-22, 108 S. Ct. 1771, 1776, 100 L.

Ed. 2d 249 (1988).

The petitioner also must demonstrate that he was prejudiced;

he must show "not merely that the errors ... created a *possibility*

of prejudice, but that they worked to his *actual* and substantial

disadvantage, infecting his entire trial with error of

constitutional dimensions." United States v. Frady, 456 U.S. 152,

170, 102 S. Ct. 1584, 1596, 71 L. Ed. 2d 816 (1982)(emphasis in

original).

-34-

A federal *habeas* court will consider a procedurally defaulted claim on one additional basis in the absence of a showing of "cause and prejudice": if a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually innocent." Smith v. Murray, 477 U.S. 527, 537-38, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986)(quoting, respectively, Engle, 456 U.S. at 135, and Murray, 477 U.S. at 496).   This exception requires a showing of innocence of the fact of the crime, not merely "legal" innocence.  The burden rests on the petitioner to come forward with evidence tending to establish a colorable claim of *actual* innocence.  Isaacs v. Head, 300 F.3d 1232, 1255 (11th Cir. 2002)("In order to show the type of 'miscarriage of justice' that will excuse a procedural bar, a petitioner must make 'a colorable showing of actual innocence.'" (quoting Bailey v. Nagle, 172 F.3d 1299, 1306 (11th Cir. 1999))); see also Crawford v. Head, 311 F.3d 1288, 1327 (11th Cir. 2002); see generally Herrera v. Collins, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed. 2d 203 (1993); Kuhlmann v. Wilson, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed. 2d 364 (1986).

In the instant *habeas* action, the respondents have asserted that many of the petitioner's claims are procedurally defaulted. Those claims will be examined using the standards discussed *supra*.

-35-

### C.  Claims Adjudicated On the Merits In the State Courts

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the petitioner can obtain federal *habeas* relief on claims resolved on the merits by the state courts only if he shows that the Alabama Court of Criminal Appeals' adjudication of the ineffective-assistance claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1) and (2).  See Williams v. Taylor, 529 U.S. 362, 404, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). This standard of review is strict, and federal courts are required to give "greater deference to the determinations made by state courts than they were required to under the previous law."  Verser v. Nelson, 980 F. Supp. 280, 283 (N.D. Ill. 1997)(quoting Spreitzer v. Peters, 114 F.3d 1435, 1441 (7th Cir. 1997)).

The state court determination of an issue will be sustained under § 2254(d)(1) unless it is "contrary" to clearly established, controlling Supreme Court law or is an "unreasonable application" of that law.  These are two different inquiries, not be confused. The Supreme Court has explained:

-36-

> Section 2254(d)(1) defines two categories of cases in
> which a state prisoner may obtain federal habeas relief
> with respect to a claim adjudicated on the merits in
> state court.   Under the statute, a federal court may
> grant a writ of habeas corpus if the relevant state-court
> decision   was   either   (1)   "*contrary to*...   clearly
> established Federal law, as determined by the Supreme
> Court   of   the   United   States,"   or   (2)   "*involved an
> unreasonable   application   of*...   clearly   established
> Federal law, as determined by the Supreme Court of the
> United States." [Emphases added.]

Williams v. Taylor,   529 U.S. 362, 404-05, 120 S. Ct. 1495, 1519,

146 L. Ed. 2d 389 (2000).   A state-court determination is

"contrary" to clearly established Supreme Court law in either of

two ways:

> First, a state-court decision is contrary to this Court's
> precedent   if   the   state   court   arrives   at   a   conclusion
> opposite to that reached by this Court on a question of
> law.   Second, a state-court decision is also contrary to
> this Court's precedent if the state court confronts facts
> that   are   materially   indistinguishable   from   a   relevant
> Supreme Court precedent and arrives at a result opposite
> to ours.

Id. at 405.   Likewise, a state-court determination can be an

"unreasonable application" of clearly established Supreme Court law

in two ways:

> First, a state-court decision involves an unreasonable
> application of this Court's precedent if the state court
> identifies   the   correct   governing   legal   rule   from   this
> Court's cases but unreasonably applies it to the facts of
> the   particular   state   prisoner's   case.    Second,   a
> state-court   decision   also   involves   an   unreasonable
> application of this Court's precedent if the state court
> either   unreasonably   extends   a   legal   principle   from   our

> precedent to a new context where it should not apply or
> unreasonably refuses to extend that principle to a new
> context where it should apply.

Id. at 407; see Putman v. Head, 268 F.3d 1223 (11th Cir. 2001).
Whether the application is "reasonable" turns not on subjective
factors, but on whether it was "objectively unreasonable."  The
question is not whether the state court "correctly" decided the
issue, but whether its determination was "reasonable," even if
incorrect.  The court will examine all of petitioner's claims that
have been adjudicated on the merits in the state courts by using
this standard.

### D.  Claims Of Ineffective Assistance Of Counsel

The Supreme Court's clearly established standard for assessing
claims of ineffective assistance of counsel is found in Strickland
v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674
(1984).  The United States Supreme Court has established a
national standard for judging the effectiveness of criminal defense
counsel under the Sixth Amendment.  "The benchmark for judging any
claim of ineffectiveness must be whether counsel's conduct so
undermined the proper functioning of the adversarial process that
the trial cannot be relied on as having produced a just result."
Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064,
80 L. Ed. 2d 674 (1984).  The Court elaborated:

-38-

> A convicted defendant's claim that counsel's assistance
> was so defective as to require reversal of a conviction
> or death sentence has two components.  First, the
> defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made
> errors so serious that counsel was not functioning as the
> "counsel" guaranteed the defendant by the Sixth
> Amendment.  Second, the defendant must show that the
> deficient performance prejudiced the defense.  This
> requires showing that counsel's errors were so serious as
> to deprive the defendant of a fair trial, a trial whose
> result is reliable.

466 U.S. at 687.

In order to show ineffectiveness of counsel, the movant must demonstrate that his attorney's performance fell below "an objective standard of reasonableness," 466 U.S. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  Also, in making such an evaluation, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690.  The effectiveness or ineffectiveness must be evaluated by consideration of the totality of the circumstances. Stanley v. Zant, 697 F.2d 955, 962 (11th Cir. 1983).  The court must remember that a defendant in a criminal case has a constitutional right only to adequate counsel; he is not entitled to the very best legal representation.  Stone v. Dugger, 837 F.2d 1477, 1429 (11th Cir. 1988).

-39-

The second requisite element in a claim of ineffective assistance of counsel is a showing of prejudice. Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice to the defendant. See Strickland v. Washington, supra. Prejudice means a reasonable probability that the outcome of the proceeding would have been different had the errors not occurred. "When evaluating this probability, 'a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.'" Brownlee v. Haley, 306 F.3d 1043, 1060 (11th Cir. 2002)(quoting Strickland v. Washington, 466 U.S. 668, 695, 104 S. Ct. 2052, 2069, 80 L. Ed. 2d 674 (1984)). The court of appeals has explained:

> Significantly, although a petitioner must show that counsel's errors had more than "some conceivable effect on the outcome of the proceeding," the Supreme Court has said that a petitioner is *not* required to show that "counsel's deficient conduct more likely than not altered the outcome in the case." Rather, as the Supreme Court has held, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged."

Hall v. Head, 310 F.3d 683, 694-695 (11th Cir. 2002)(quoting Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). A "reasonable probability" is one that undermines confidence in the outcome of the proceeding.

-40-

Nonetheless, the court of appeals has stated that "The petitioner's burden of demonstrating prejudice is high," Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002), and that "this standard is difficult to meet." Brownlee v. Haley, 306 F.3d 1043, 1059 (11th Cir. 2002); Johnson v. Alabama, 256 F.3d 1156, 1177 (11th Cir. 2001). The reason the burden is so difficult lies in the fact that errors are made in every case, but it is only those errors that affect the fundamental fairness of the proceeding that rise to the level of prejudice under the ineffectiveness standard. The Eleventh Circuit stated as follows:

> A finding of prejudice requires proof of "'unprofessional errors' so egregious 'that the trial was rendered unfair and the verdict rendered suspect.'" Eddmonds v. Peters, 93 F.3d 1307, 1313 (7th Cir. 1996)(quoting Kimmelman v. Morrison, 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986)). As we recently explained, "habeas petitioners must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.' '[T]hat the error had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Gilreath v. Head, 234 F.3d 547, 551 (11th Cir. 2000)(quoting Strickland).

Johnson v. Alabama, 256 F.3d 1156, 1177 (11th Cir. 2001). Moreover, the court of appeals has cautioned:

> The petitioner bears the burden of proof on the "performance" prong as well as the "prejudice" prong of a Strickland claim, and both prongs must be proved to prevail. The Strickland test is not easily met; as we have said, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance

of counsel are 'few and far between.'" <u>Waters v. Thomas</u>, 46 F.3d 1506, 1511 (11th Cir. 1995)(en banc)(citation omitted).

<u>Johnson v. Alabama</u>, 256 F.3d 1156, 1176 (11th Cir. 2001).

In the instant case, petitioner advances 28 specific claims of ineffective assistance by his trial attorneys at the guilt phase of his trial, plus the general claim that he was denied effective assistance of counsel due to alleged inadequacies in Alabama's funding for the defense in capital cases. In addition, petitioner asserts five claims of ineffective assistance of counsel at the penalty phase of his trial. The state trial court conducted an evidentiary hearing that examined all but six[8] of these claims, and entered a lengthy opinion in which the claims were found to be without merit. <u>See</u> Order Denying Rule 32 Petition, Tab 53 at Exhibits to Respondents' Answer. The claims also were considered on appeal by the Alabama Court of Criminal Appeals. <u>See</u> <u>Williams v. State</u>, 783 So. 2d 108 (Ala. Crim. App. 2000). The court will

---

[8]     The petitioner did not raise at the Rule 32 stage, or anywhere at the state court level, his guilt-phase claims set forth herein as Claim 1(a)(a general claim that counsel failed to challenge the evidence), Claim 1(g)(a general claim that counsel failed to prepare for trial until the week before trial), Claim 1(l)(that counsel failed to present evidence that petitioner was unconscious at the time of the crime), Claim 1(m)(that counsel failed to present evidence that someone other than petitioner was driving the victim's car), Claim 1(n)(that counsel failed to argue to the jury the absence of physical evidence), and Claim 1(o)(that counsel failed to argue that the co-defendants had colluded to implicate petitioner).

examine each of petitioner's allegations of ineffective assistance of counsel below, applying the <u>Strickland</u> standard, and all other applicable law.

<b>III.   DISCUSSION</b>

### A.  *Habeas* Claim 1(a)  (Failure To Challenge the Evidence)

Petitioner's first claim, found at paragraph 35 of the amended petition, alleges in vague and conclusory terms that his trial attorneys failed to challenge the evidence against the petitioner. Without identifying any particular errors by counsel, this claim could be read to refer to errors by counsel which are alleged as separate grounds for relief at other places in the petition (set forth herein as Claims 1 (b), (c), (d), (e), (f), (i), (j), (k), (o), and (p)).  To the extent that it states a separate claim, it is procedurally defaulted because it has never been properly raised on direct appeal or in a post-conviction motion.  <u>See</u> <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302-03 (11th Cir. 1999).  It is due to be dismissed because petitioner has failed to assert "cause and prejudice" to excuse his default.  <u>Engle v. Isaac</u>, 456 U.S. 107, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977).  Accordingly, Claim 1(a) is due to be dismissed.  To the extent, however, that Claim 1(a) simply restates more specific claims, it will be examined in more detail *infra*.

-43-

**B.  *Habeas* Claim 1(b) (Failure To Present a Coherent Defense)**

Petitioner's Claim 1(b), found at paragraphs 35 and 70-77 of the amended petition, likewise alleges only in vague terms that counsel exposed the jury to improper and inadmissible evidence against him.  Petitioner fails to identify what "coherent defense" should have been presented.  Accordingly, the claim does not merit the court's consideration because it is vague and conclusory.[9] Furthermore, to the extent that it could state a separate and viable claim, it is procedurally defaulted because it was raised for the first time in the appeal from the Rule 32 petition, and was never properly raised in the trial court or on direct appeal.  See 783 So. 2d at 130.  To the extent, however, that it refers to counsel's failure to present specific evidence and argument detailed more fully in petitioner's Claims (1)(l), (m), (n), and (o), the claim is addressed more fully *infra*.

**C.  *Habeas* Claims 1(c), (g), (h), (j) and (cc) (Failure To Timely Prepare and Consult With Petitioner)**

Petitioner alleges that he was denied effective assistance of counsel in that his trial attorneys relied upon an investigator, Formby, instead of performing the investigation into the facts and circumstances of the crime themselves, and that they failed to

---

[9]     Vague, general, or conclusory allegations do not constitute sufficiently compelling grounds for federal *habeas* relief.  Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir. 1978).

supervise or correct the deficiencies of Formby's investigation (Claim 1(c)). Similarly, petitioner alleges that trial counsel failed to sufficiently interview petitioner before and during trial (Claim 1(h)), and failed to sufficiently investigate and review mental health records (Claim 1(j)). These claims, set forth in the amended petition at paragraphs 37-47, 50, and 52, first were raised in the Rule 32 petition and were examined by the trial court in its written memorandum opinion. (See Rule 32 Claims 23(b), (c), (d), (e), (f), (l); Order Denying Rule 32 Petition, pp. 15-30.) The claims were then raised on appeal from the Rule 32 denial, and the Alabama Court of Criminal Appeals adopted the trial court's opinion in finding that the petitioner had failed to show that the use of Formby constituted ineffective assistance. (See Rule 32 Appeal Claims 3(a) and (b); Williams v. State, 783 So. 2d at 123-29.)

After a lengthy evidentiary hearing, the Alabama state courts made findings of fact, both explicit and implicit, in regards to the general allegation that counsel failed to conduct a reasonable investigation by relying on Formby to interview petitioner, interview potential witnesses, and review the mental health records of petitioner. The Alabama Court of Criminal Appeals stated those findings as follows:

> First, the appellant contends that his attorneys rendered ineffective assistance because they allegedly did not properly investigate the case and interview potential

witnesses.  The circuit court made the following findings
concerning this contention:

> "[Trial counsel] principally relied on Dr.
> Formby, who had been engaged by his
> predecessor counsel, to conduct the case
> investigation and witness interviews.  Dr.
> Formby was well qualified for that role by
> virtue of many background attributes, as
> detailed by his testimony at the evidentiary
> hearing and his 'vitae' introduced as State's
> Exhibit 6 to the same.  During the time of his
> engagement on the case, he was also a co-
> principal with Dr. Sumrall in the forensic
> services firm of Veritas, Inc. ...  Dr. Formby
> testified that he 'probably put in easily 200
> hours' on the investigation, having commenced
> it in the service of [trial counsel's]
> predecessor attorneys and therefore having
> been on the case 'essentially longer than
> anybody else.'  (EH 398).  Dr. Formby 'spent a
> good bit of time talking with Luther
> [Williams]' and spent a good bit of time
> talking to potential witnesses in the
> Smithfield Apartments area of Birmingham.  (EH
> 378).  He visited with some of Williams'
> family members in the Titusville projects and
> Debra Bush in the Avondale projects.  (EH
> 378).  He went to see Margie Bush, the
> grandmother of Debra Bush and she admitted him
> to her apartment where Luther had been
> apprehended, showing him the bedroom.  Dr.
> Formby spent many hours 'just walking around
> that area talking to people.'  (EH 380).  For
> various reasons adequately explained in his
> testimony, he did not keep detailed records of
> everyone he interviewed or of all the time he
> devoted to the case.  He interviewed Priscilla
> Jones and DeWayne Pierce.  (EH 382-83).  A lot
> of his investigation and interviewing was
> devoted to trying to develop connections
> between Williams' co-defendants and the
> property stolen from Mr. Kirk, and other
> evidence against the co-defendants.  (EH 381,
> 384).  He went to the Titusville projects and
> spent approximately two hours interviewing
> Williams' grandmother and one of his sisters.

-46-

(EH 3834).... As the District Attorney's office provided the defense with more and more discovery materials, Dr. Formby 'would go back to Luther and talk to him again to see if he could push me or give me leads in other directions.' He talked to Williams a lot. (EH 388). Dr. Formby went to the crime scene on a couple of occasions. (EH 388-89). He attempted to follow the route that Williams and his two co-defendants had traversed at different points during the incidents in question. (EH 389). He and [trial counsel] routinely 'would have meetings probably twice a week up until the last few weeks before trial, and then we met virtually every day.' (EH 389-90). Dr. Formby would brief [trial counsel] on all that he had developed, and [trial counsel] would provide guidance in terms of things that he felt were important that Dr. Formby needed to follow up on. (EH 390).... "For his part, [trial counsel] personally tried to locate witnesses who could corroborate Mr. Williams' claim that he was incapacitated by intoxication on the night of the murder. (EH 78-80)."

(C.R. 658-61.)

The appellant also contends that his attorneys rendered ineffective assistance because they did not interview and present witnesses who he alleges could have rebutted most of the circumstantial evidence presented in the case. Specifically, he asserts that there were witnesses who could have placed his codefendant in the victim's truck on the day of the murder and who could have impeached Priscilla Jones, the appellant's sister, who testified that the appellant told her that he had killed a white man. In regard to this issue, the circuit court made the following findings:

"Williams argues in his Post-Hearing Brief that '[t]o counter the damaging evidence that Mr. Williams was seen driving Mr. Kirk's truck, trial counsel could have offered testimony through Laura Williams or Sandra King that Albert Carmichael had been seen driving the red truck, that he smelled of

-47-

gasoline and that Mr. Carmichael had white
man's cigarettes on him Saturday evening, just
hours after Mr. Kirk was murdered.' (PHB, p.
12). Ms. Williams and Ms. King testified at
the evidentiary hearing that they were at Ms.
King's apartment house on a Saturday night
when they observed Albert Carmichael in a red
truck parked in the parking lot by Priscilla
Jones' house. As far as the date on which
that occurred, Ms. Williams was only asked if
she remembered being at Ms. Kings' 'a few days
before the time that Luther was arrested for
the murder,' and she identified it as a
Saturday night, and Ms. King was asked if she
could remember being at home with Laura
visiting her 'January 23, I believe a Saturday
night, Saturday afternoon or night. I may be
wrong on the day, but I think that is the
date, January 23. Do you remember being home
on that date?,' to which she answered in the
affirmative. (EH 181). Both testified that
Carmichael came into King's apartment and they
were then able to notice the smell of gasoline
on him. Ms. Williams testified that he 'had
some cigarettes that he didn't smoke,' which
were 'a white man's kind of cigarettes.'
Asked what brand they were, she testified that
they were 'Merit or something like that. I
can't really remember what kind they were,'
whereas Carmichael usually smoked Kools. Ms.
King testified that Carmichael usually smoked
'Kools or either Newport 100s' and that the
cigarettes he had with him on the occasion in
question were not 'the same kind' but she
could not state what brand they were. (EH
175-76, 183-84).

"....

"Considering all of the interviewing of
Williams and his family members conducted by
Dr. Formby, and considering all of the
evidence showing the involvement of Albert
Carmichael and Trosky Gregory in various
critical events of the weekend in question,
the court does not find that Williams has
carried his burden of proving that a failure

-48-

to use Laura Williams or Sandra King as
defense witnesses constituted ineffective
assistance of counsel; or that the omission of
their testimony prejudiced the defense in the
way required by the *Strickland* test.  Under
*Strickland*, it is not enough to show that
trial errors 'had some conceivable effect on
the outcome of the proceeding,' rather the
defendant 'must show that there is a
reasonable probability that, *but for* counsel's
unprofessional errors, the result of the
proceeding would have been different.'
(*Strickland*, 466 U.S. at 693-94[, 104 S. Ct.
2052]) (Emphasis added).   That Albert
Carmichael was observed in the red camper
truck at the apartment complex during the
night of Saturday, January 23rd, after Luther
Williams had been observed to have been
involved with it at earlier points in time
that day, would not have altered the impact or
implication of any of the State's critical
evidence.  There is no indication that either
Laura Williams or Sandra King ever told anyone
before Williams' trial that they had seen
Albert Carmichael in the red truck....

"Williams asserts in his post-hearing brief
that defense counsel should have countered the
damaging testimony of Priscilla Jones by
eliciting testimony from her father, Jesse
Hill, that she was 'a big liar.'  Under Rule
608(a) of the Alabama Rules of Evidence ..., a
witness may impeach the credibility of a
witness who has testified by offering the
second witness's opinion regarding the first
witness's untruthfulness.  The Alabama Rules
of Evidence did not become effective until
January 1, 1996, however, and the law of
evidence existing at the time of Williams'
trial restricted the testimony of an
impeaching witness to the limited fact of the
other witness' general reputation in the
community for untruthfulness.  Before a
witness can testify concerning the reputation
in the community for the truthfulness or
untruthfulness of another witness, a predicate
must be laid establishing that the impeaching

witness actually has knowledge of the other
witness's reputation for truthfulness or
untruthfulness in the first witness's
community. That was the evidentiary point
addressed by the court in its comments to
counsel during Mr. Hill's testimony. (EH 164-
66). Although the question put to Mr. Hill
was rephrased so as to properly inquire as to
'reputation,' Mr. Hill persisted in expressing
the matter in terms of his own personal
knowledge of her lack of veracity. His
testimony as ultimately offered related to his
own personal assessment or opinion of her
history of untruthfulness, rather than
relating it to her reputation in the
community. He expressed his opinion that
Priscilla 'had come down here and told the
people out here a bunch of – to me, it is a
bunch of fairy tales.' (EH 166). Mr. Hill
conceded, however, that he [had] no knowledge
about the evidence in the case and that it was
his testimony that Priscilla was telling the
people in Tuscaloosa 'fairy tales' because
'that is my daughter, and I know what she is
capable of doing. My daughter would do
anything, say anything to anybody.' (EH 167).
When asked how, if he did not know anything
about the facts of the case, he could attack
the credibility of her testimony, he answered
that Priscilla was 'a big liar,' and that she
'never tells the truth about a lot of things.'
(EH 168). Accordingly, as the record stands,
there is no affirmative showing that Mr. Hill
could have offered testimony that would meet
the foundational requirement of showing that
it related to Priscilla Jones' reputation for
truthfulness/untruthfulness in her community
in 1989.... [Trial counsel] impeached
Priscilla Jones with respect to the
inconsistencies between her trial testimony
and her preliminary hearing testimony, and her
testimony on several important points was
corroborated by that of Teresa Ann Evans. One
of the critical features of Priscilla Jones'
testimony was that Luther Williams told her,
on the occasion that he came to her apartment
building the morning of Saturday, January 23,

in the 'red and white camper truck,' that he
had killed a white man (R. 479), and 'I just
killed a white man.'  (R. 502).  She did not
believe him at the time.  (R. 480, 502).
Immediately prior to making that statement,
he had hugged her and apologized to her for the
altercation between them the preceding night.
(R. 476, 502).  He had the odor of gas on him.
(R. 480).  When she returned to her apartment,
he followed her and showed her 'a pistol and
some bullets,' with the pistol having 'a clear
handle,' meaning that it was 'white.'  (R.
480).  As the only other participant to that
conversation, Williams was the only person who
could have contradicted Jones' testimony about
it, but he did not testify and the trial
strategy decision in that regard is not
challenged in this proceeding.  The court does
not consider the fact that Mr. Hill might have
testified that he had knowledge of his
daughter's reputation for truthfulness, and
that her reputation was bad in that regard and
she had a reputation for untruthfulness, would
have been of such import as to impeach her as
a witness to the extent that the outcome of
the trial would have been different."

(C.R. 662-72.)

We agree with the circuit court's findings as to these
claims and adopt them as part of this opinion.  Because
the appellant has not established that his attorneys
rendered ineffective assistance in these instances, he is
not entitled to relief on these claims.  *See Strickland*,
supra.

783 So. 2d 108, 123-26.  The court further stated:

Fifth, the appellant contends that his attorneys rendered
ineffective assistance because they allegedly did not
examine the records furnished by the State and therefore
did not discover that he had made a statement to an
employee at Taylor Hardin to the effect that he had
killed one white man and would kill another.  He also
argues that counsel should have objected to the admission

of the statement on the ground that it was not relevant.
In addressing these contentions, the circuit court made
the following findings:

"The thrust of Williams' treatment of this
contention in his post-hearing brief is that
[trial counsel] erred by not interposing a
relevancy objection to this testimony of Mr.
Gaskin....

Indisputably, [trial counsel] was surprised by
Mr. Gaskin's testimony concerning the
statement made in his presence by Williams,
because neither Dr. Sumrall nor Dr. Formby had
noted it or called it to his attention.  Dr.
Formby testified that he had gone through the
records in question but 'just simply didn't
pick up on it.'  (EH 414).

"The Court of Criminal Appeals analyzed the
content and context of the statement
attributed to Williams by Gaskin in its
opinion, although it did so in connection with
responding to Williams' contention that the
statement should have been excluded because he
had not been read his *Miranda* rights prior to
making the statement.  Nonetheless, at the end
of the entire opinion, after having addressed
all issues which had been specifically raised,
the court declared, '...We have searched the
entire record for any error which may have
adversely affected the appellant's substantial
rights and have found none.'  601 So. 2d at
1087.  As previously noted, '[a] finding of no
plain error is one factor to consider when
assessing the performance of trial counsel.'
*Hallford v. State*, 629 So. 2d 6, 10 (Ala.
Crim. App. 1992).

"Does it constitute ineffective assistance of
counsel to delegate various aspects of case
investigation to an apparently qualified
professional investigator, who then fails to
note, or appreciate the significance of, a
prejudicial entry in medical records under
review?  At least one court has so held.  In
*Stubbs v. Thomas*, 590 F. Supp. 94 (S.D. New

York 1984), defense counsel asked the court-appointed investigator to look into some records.  The investigator visited an incorrect address and, when the business at that address did not have the records, failed to pursue the issue.  The Defendant was convicted of murder and the state trial judge subsequently found that the attorney could not be faulted for the investigator's deficient performance.  However, in reconsidering the issue in the habeas proceeding before him, U.S. District Judge Lowe noted that the right to effective assistance of counsel encompassed the right to adequate investigation, and went on to observe:

"That right may not be defeated by delegating investigative services to someone other than counsel.  Therefore, where an investigator is appointed, he has a duty to provide the defendant with reasonably competent investigative assistance.  His failure to do so may constitute a violation of the defendant's right to effective assistance of counsel under the Sixth and Fourteenth Amendments.'

"590 F. Supp. 94, 100.

"Nonetheless, Judge Lowe concluded that the investigator's misconduct did not satisfy the prejudice prong of *Strickland* because there was not a reasonable probability that, absent the error, the jury would have had a reasonable doubt concerning the defendant's guilt.  Likewise, this court finds in this case that any deficiency in the records review, or investigation otherwise, by Dr. Formby, Dr. Sumrall, and/or [trial counsel] did not result in the requisite degree of prejudice.  Unless a defendant satisfies both the deficient performance prong and the prejudice prong of *Strickland*, 'it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.' *Strickland*, 466 U.S. at 687[, 104 S. Ct.

2052].... [T]he court finds that there is no
reasonable probability that a relevancy
objection would have been sustained, nor that
overruling it would have constituted
reversible error. The testimony of Mr. Gaskin
followed immediately after the testimony of
Priscilla Jones. She had testified that when
she encountered Williams at her apartment
project the morning of Saturday, January 23,
1988, he had made the statement to her in the
course of their conversation that he had
killed a white man. (R. 479-80). When
questioned further as to whether Mr. Williams
had told her: 'I just killed a white man,' she
confirmed that as his statement to her. (R.
502). On the heels of that testimony, Mr.
Gaskin testified that Williams had stated in
the course of an argument with another patient
at Taylor Hardin Secure Medical Facility, in
Mr. Gaskin's presence and hearing, on December
12, 1988, 'I have killed one white m_____
f_____; I'll kill another one.' (R. 515-17,
537-38). The patient with whom Williams
was arguing was white and Mr. Gaskin is black.
(R. 549). Mr. Gaskin recorded that statement
in the 'SOAP notes' portion of Mr. Williams'
record at Taylor Hardin. (R. 539-43; State's
Exhibit 3 at the evidentiary hearing.)
Williams had been arrested during the early
morning hours of January 25, 1988, and had
been incarcerated at various locations at all
times between then and the date of the
statement overheard by Mr. Gaskin. Presumably
there would have been no opportunity to kill
undetected a white person, or any other
person, during that time frame. Accordingly,
the statement made by Williams in the hearing
of Gaskin would have related to an event
preceding January 25, 1988. Consequently, it
is not 'remote' to the January 23, 1988,
incident, and statements that date to
Priscilla Jones. The court finds the
testimony was relevant. 'The rule is stated
to be that the acts, declarations and demeanor
of an accused before or after the offense
whether a part of the res gestae or not are
admissible against him, but unless a part of

the res gestae are not admissible for him' *Smoot v. State*, 381 So. 2d 668, 671 (Ala. Crim. App. 1980).  In *Oryang v. State*, 642 So. 2d 989 (Ala. Crim. App. 1994), the Defendant was convicted of attempted murder with respect to shootings that occurred in December 1991. A witness was allowed to testify that, 'sometime in 1990,' the Defendant had made the statement, while drinking, that one day he was going to kill someone 'for the hell of it.' After concluding that the statement was admissible for one purpose, the court opined, *further*, the testimony concerning the appellant's statement that one day he was going to kill someone "for the hell of it," was *relevant* and not too remote.' (642 So. 2d at 997)(Emphasis supplied.)  The court went on to say that 'Moreover,' the statement was admissible under the rule quoted above from *Smoot*. (642 So. 2d at 997).

"Accordingly, the court concludes that the statement was not objectionable on grounds of relevancy, and also concludes that the Court of Criminal Appeals would have noted it to have been thus objectionable, under the 'search the record for error' rule of review attending capital murder appeals, were that not so."

(C.R. 679-83.)  We agree with the circuit court's findings and adopt them as part of this opinion. Accordingly, the appellant is not entitled to relief on these claims.

<u>Williams v. State</u>, 783 So. 2d 127-29.

The state appellate court's findings and conclusions are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). <u>Williams v. Taylor</u>, 529 U.S. 362, 404, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  Petitioner has not attempted to show that they are contrary to or an unreasonable application of binding Supreme Court

-55-

precedent.  Indeed, the conclusions reached by the state courts clearly are based upon the Strickland standard and, thus, are not "contrary" to Supreme Court precedent.

These conclusions also are not an "unreasonable application" of Strickland.  In essence, the state courts found that counsel conducted a reasonable investigation, through Formby, in preparation for trial.[10]  The trial court found that Formby was well qualified to conduct the investigation, and that he invested "easily 200 hours" in the case.  He repeatedly interviewed the petitioner, sought and interviewed potential witnesses in the apartment complex where petitioner was then living, talked with petitioner's family members, and met with petitioner's girlfriend and her grandmother (who had consented to the search that resulted in the seizure of the murder weapon).  He interviewed the key prosecution witness, Priscilla Jones, and her boyfriend, Dewayne Pierce.  He visited the crime scene and traced the route petitioner was accused of having followed on the night of the crime.  Formby met frequently with counsel and worked closely with counsel's psychological expert.  The state courts found that it was not unreasonable for counsel to rely on Formby's efforts and skills.

_____

[10]     Petitioner urges that the court must look only to Formby's time sheets, and not to his testimony, as to the best evidence of the time he spent.  This court cannot say, however, that the state court's reliance upon Formby's testimony at the Rule 32 hearing was objectively unreasonable.

-56-

The only specific conduct petitioner now alleges constitutes insufficient "investigation" is Formby's failure to: (1) take notice of records from Taylor Hardin, in which was recorded that petitioner told Gaskin he had killed a man, and (2) adequately interview petitioner and potential witnesses.  The trial court noted that Formby did review the Taylor Hardin records and did forward them to the expert witness, but failed to notice or alert counsel to the significance of the statement Gaskin testified about.  As to the interviews with petitioner, Formby testified that he met with petitioner several times and at some length.[11]  Finally, Formby did interview and meet with several potential witnesses, but apparently did not interview Laura Williams or Sandra King, who could have testified at the guilt phase that they saw co-defendant Albert Carmichael driving the victim's truck after the crime and that Carmichael smelled of gasoline and was smoking "white man's" cigarettes.

While courts have recognized that there is a duty imposed on counsel to conduct a pre-trial investigation into the facts and circumstances, that duty does not require counsel to conduct a

---

[11]     Formby further testified that he reported the results of these meetings to counsel.  In addition to meetings with Formby, petitioner met several times with Vreeland, and notes from those meetings were delivered to Bivens when Bivens was appointed as counsel.  (See Rule 32 Hearing Transcript pp. 89-90.)  It is not clear from the Rule 32 hearing transcript whether Bivens met face-to-face with Williams before trial.

perfect pre-trial investigation. Defense counsel must make a "reasonable investigation" or must arrive at a "reasonable decision that makes particular investigation unnecessary." <u>Kelley v. Secretary for the Department of Corrections</u>, 377 F.3d 1317, 1333 (11th Cir. 2004). While the lower court in <u>Kelley</u> found that counsel was ineffective in hiring a "disbarred attorney, lazy to a fault" to conduct the pre-trial investigation, there is no precedent for a finding that delegating the pre-trial investigation to an investigator, rather than having defense counsel conduct the investigation personally, itself constitutes ineffective assistance. Here, there is no allegation that Formby was incompetent or otherwise unqualified.[12] Rather, petitioner merely asserts that Formby failed to interview *every* potential witness, failed to properly note the importance of a portion of the Taylor

---

[12]   Petitioner alleges that Formby went through a period of inactivity between his early investigation and the investigation conducted immediately prior to trial. Even assuming, as his time sheets suggest, that Formby did nothing on this case for some period of time, petitioner fails to demonstrate that any critical evidence would have been discovered during that time that was unavailable at the time closer to trial. Although this court is troubled by the fact that it appears that almost all of the trial preparation occurred in the few days leading up to trial, petitioner still has the burden of showing that counsel's procrastination prejudiced him. Petitioner's related claim that his attorney did not prepare for trial until one week before trial (Claim 1(g)) was never presented to the Alabama state courts on appeal or in the Rule 32 petition and, thus, is barred from review here. Even if not procedurally barred, however, the claim suffers from the same deficiency as the other "preparation" claims in that petitioner has failed to demonstrate the prejudice required by <u>Strickland</u>.

Hardin records that proved damaging to the petitioner, and did not meet with petitioner as often or for as long as petitioner would have liked.[13]  These "failings" of counsel's pre-trial investigation do not rise to the level of unreasonableness necessary to constitute ineffective assistance.

First, there is no indication that petitioner knew about the potential testimony of Williams and King, that he told Formby or counsel of the existence of those witnesses, that he would have informed Formby of the witnesses if Formby had met with him, or that a "reasonable investigation" would have uncovered those witnesses.  In any criminal case, it is likely that some facts or circumstances remain uncovered even after a reasonable investigation.  A "reasonable investigation" does not require that counsel interview every conceivable potential witness.  Nor is counsel required to conduct investigatory activities every day, or even every week, before the trial begins.  Finally, there is no

---

[13]     Petitioner asserts that Formby never met with him until the week before trial, but Formby's testimony at the Rule 32 hearing indicates that he met with petitioner early on, and on multiple occasions.  The state courts apparently found Formby's oral testimony credible.  Petitioner further argues that counsel's failure to interview petitioner during trial prejudiced him in that counsel did not learn that Gaskin was biased against petitioner because petitioner had filed a grievance against him.  Counsel for petitioner in the instant action admits that this claim was never asserted in the state courts.  (See Petitioner's Brief, p. 31 n. 6).

minimum amount of time that must be spent in meetings with a defendant before or during the trial.

Furthermore, even if counsel performed deficiently by relying upon Formby's investigation, petitioner's claim has merit only if petitioner has shown that "but for" the investigative shortcomings, the outcome of the trial would have been different.  In short, the petitioner must demonstrate prejudice.

Petitioner's argument with regard to potential witnesses is simply that Williams and King could have testified that petitioner was not the only person in possession of the victim's truck, because they saw co-defendant Carmichael in possession of the truck.  This testimony merely further inculpates the co-defendant; it does not exculpate the petitioner.  The jury was presented with evidence that Carmichael committed the robbery along with the petitioner.  The testimony of the witnesses does not rebut or contradict evidence that petitioner also was in possession of the victim's truck immediately after the crime.  Additional evidence of Carmichael's involvement in the crime does not compel the conclusion that the jury would have found petitioner any less culpable.  In fact, such testimony could be viewed as further evidence of petitioner's guilt because petitioner does not dispute that he was with Carmichael at the scene of the crime.

As to the amount of time spent investigating or interviewing petitioner, that claim must fail absent some showing that the

additional time spent would have resulted in information that would have changed the outcome of the trial.  At the Rule 32 hearing, Bivens testified that he would have spent more time with the petitioner if he had had some knowledge about the case that would be helpful to the defense.  (See Rule 32 Hearing Transcript, pp. 58-59.)  In this case, the petitioner has maintained – both then and now – that he was incapacitated by drugs and alcohol during the commission of the crime.  Accordingly, petitioner had no information about the crime itself.  Petitioner has failed to demonstrate that he had any other knowledge regarding witnesses that would have helped his defense that counsel could have obtained through more extensive interviews with petitioner.

The fact that Formby and Sumrall overlooked a statement in the medical records also does not provide a basis for finding that counsel was constitutionally inadequate.  Bivens testified that the only advantage he would have gained from having knowledge of the statement was to make his objection in advance in writing, rather than orally at trial, and to seek a suppression hearing.  (Rule 32 Hearing Transcript, pp. 65-69.)  There is no indication that the statement would have been excluded.[14]  Nor is there any showing

---

[14]    To the contrary, the trial court has indicated that the statement was admissible, and the appellate court has indicated that it would have upheld admission of the statement.

that, absent the admission of the statement, petitioner would have been acquitted.

The state appellate court's conclusion that counsel's investigation of the facts and circumstances in 1988 was not constitutionally ineffective assistance is neither contrary to nor an unreasonable application of Supreme Court precedent. Consequently, it is entitled to a presumption of correctness and deference under § 2254(d). Even if these claims were due to be re-examined on the merits by this court, petitioner would not be entitled to relief because of his failure to meet the two-pronged test of <u>Strickland</u>. For these reasons, Claims 1(c), (h), and (j) are due to be dismissed.

Finally, petitioner's Claim 1(cc), set forth at paragraph 62, that counsel unreasonably failed to consult with him at trial as to any bias Gaskin may have had against him, is presented for the first time in the instant *habeas* action. Because the state courts have never been given an opportunity to rule on this issue, it is precluded from review here. <u>See</u> <u>Smith v. Jones</u>, 256 F.3d 1135 (11th Cir. 2001). Petitioner has not shown cause and prejudice, or a fundamental miscarriage of justice, to avoid the procedural default.

### D.  *Habeas* Claim 1(d) (Failure To Call Witnesses)

Petitioner also contends, at paragraphs 44 and 72 of the amended petition, that counsel was ineffective in failing to call as a witness at trial Laura Williams or Sandra King.  (Claim 1(d).)  As discussed above, petitioner asserts that Williams or King could have testified that they saw Albert Carmichael, one of petitioner's co-defendants, driving the victim's truck after the victim was killed.  Petitioner further asserts that they could have testified that Carmichael smelled of gasoline and had "white man's" cigarettes.  This testimony, petitioner asserts, would have diluted the evidence that petitioner was seen driving the truck, and would have bolstered a "reasonable doubt" defense.   Petitioner raised this claim in the Rule 32 proceedings, and the trial court examined the issue.   See Rule 32 Claim 23(e); Order Denying Rule 32 Petition, pp. 19-26.   Petitioner also raised the claim in his appeal from the Rule 32 proceedings, and the Alabama Court of Criminal Appeals adopted the trial court's findings, noting that the evidence that would have been given by Williams and King did not "alter the implication or impact" of the evidence provided by the state: that petitioner was in possession of the victim's truck after the crime.   (See Rule 32 Appeal Claim 3(a); Williams v. State, 783 So. 2d at 123-25.)   The state courts concluded that because this evidence probably would not have changed the outcome of the trial, it was not ineffectiveness for counsel not to call

-63-

the witnesses.  Moreover, the state courts pointed out that there is no evidence that either Formby or Bivens ever became aware of the testimony Williams or King might have given, and that petitioner does not allege that the fact that Williams or King had seen Carmichael with the truck was known to Formby or Bivens or was reasonably available to Formby or Bivens.  Moreover, petitioner has admitted that he drove the red truck on the morning after the murder and parked it near his girlfriend's grandmother's apartment, where he was then living.  (See Rule 32 Hearing Transcript, pp. 200-06).  He then moved the truck to the area near his stepsister's (Priscilla Jones') apartment.  (Id. at 246-49.)  He has admitted that Carmichael told him to drive the truck to that area, and that he left the keys in the truck.  (Id. at 244-45.)  The court fails to see any reason that evidence that Carmichael drove the victim's truck *later* would lead a reasonable juror to entertain a reasonable doubt that petitioner was guilty of the murder, especially when the murder occurred closer in time to the time petitioner was seen with the truck.  As to the cigarettes, there was no evidence that the cigarettes belonged to the victim, and even if they did, facts that may inculpate Carmichael in this case do not serve to exculpate the petitioner.

The mere fact that witnesses existed but were never discovered in spite of an investigation does not, in itself, indicate that counsel was ineffective.  The state appellate court's conclusion

that counsel's failure to call Williams or King as witnesses at the guilt phase of the trial was not constitutionally ineffective assistance is neither contrary to nor an unreasonable application of Supreme Court precedent.  Consequently, it is entitled to a presumption of correctness and deference under § 2254(d).

### E.  *Habeas* Claim 1(e) (Failure To Impeach Jones)

Petitioner claims that counsel was ineffective in that he failed to impeach Priscilla Jones's testimony by calling Jones's father, Jesse Hill, as a witness to testify that Jones was a "liar" and had "fenced" stolen items from her apartment (Claim 1(e).) This claim is set forth in the amended petition at paragraphs 103-05.  Petitioner claims that, had they investigated, counsel would have known to call Jones's father to testify as to Jones's poor reputation for veracity, and could have impeached her by evidence that she had "fenced" stolen merchandise.  This claim was raised in the Rule 32 petition and was denied by the trial court. (See Rule 32 Claim 23(d), Order Denying Rule 32 Petition, pp. 26-29.)  Petitioner raised the claim again on appeal from the denial of Rule 32 relief, and the Alabama Court of Criminal Appeals adopted the trial court's opinion, stating:

> Ninth, the appellant contends that his attorneys rendered
> ineffective assistance because they did not impeach
> Priscilla Jones.  Specifically, he contends that counsel
> should have impeached her with the testimony of Jesse

-65-

> Hill concerning her reputation for untruthfulness and
> should have impeached her by presenting evidence that she
> allegedly allowed her apartment to be used to fence
> stolen items. However, he did not specifically present
> these claims to the circuit court in his original or
> amended petition. Rather, in his amended petition, his
> entire argument in this regard is that "[t]rial counsel
> did not follow-up with cross-examination of
> inconsistencies in Priscilla Jones' story." (C.R. 156.)
> This statement was not sufficient to satisfy the pleading
> or specificity requirements of Rules 32.3 and 32.6(b),
> Ala. R. Crim. P., or the requirements of *Strickland*,
> supra. Therefore, the appellant is not entitled to
> relief on this claim.

783 So. 2d at 130. <u>See also</u> 783 So. 2d at 125-26. The last state
court to evaluate this claim held that it had not been properly
presented in the Rule 32 petition. A review of the record,
including the original and amended petitions filed in the Rule 32
proceeding, shows only a reference to trial counsel's failure to
cross-examine Jones about "inconsistencies" in her testimony.
(Rule 32 Claim 23(d).) The petition does not mention Jesse Hill,
Jones's credibility, or her reputation for veracity. Furthermore,
the Rule 32 petitions make no mention of fencing activities.[15] The

---

[15]   Even though the potential merit of such a claim is not
the basis for this court's denial of it, the court notes that
petitioner does not allege any basis, and the court is not aware of
any, in which the alleged use of Jones's apartment to fence items
would have been admissible for impeachment. Moreover, petitioner
does not allege that Jones was convicted of the crime of selling
stolen property, nor does he allege that such an offense would be
considered one that bears on the veracity of a witness, as would
the offense of, for example, perjury. The only testimony elicited
during the Rule 32 hearing that would evidence fencing activities
was when the petitioner told the court that the reason he parked
the truck at Jones' apartment was because that was "where we take

post-hearing brief filed by petitioner's counsel after the Rule 32 hearing similarly recounts alleged "inconsistencies," but does not assert that Hill was available to testify as to her reputation for truthfulness.[16]   (See Post-Hearing Brief, p. 9, at Tab 49 of Respondents' Exhibits.)

Petitioner's claim that his counsel rendered ineffective assistance because they failed to impeach Jones with Hill's testimony or evidence of fencing was not properly presented to the state courts for consideration.  Federal review of this claim is barred by the procedural default doctrine because the last state court to review the claim stated clearly and expressly that its judgment rested on a procedural bar, Harris v. Reed, 489 U.S. 255, 263, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989), and that bar provides an adequate and independent state ground for denying relief.  See id. at 262, 109 S. Ct. at 1042-43; Johnson v. Mississippi, 486 U.S. 578, 587, 108 S. Ct. 1981, 1987, 100 L. Ed. 2d 575 (1988).

---

all our hot stuff."  (See Rule 32 Hearing Transcript, p. 248.)

[16]     Even in the brief filed in support of the instant *habeas* petition, petitioner does not assert that counsel knew or should have known about Hill, except to state that Hill "lived in the Smithfield area of Birmingham."  (Petitioner's Brief at p. 27.)

###### F.  *Habeas* Claim 1(f) (Failure To Object To Gaskin Statement)

At paragraphs 54-61 of the amended *habeas* petition, petitioner pleads that his trial counsel rendered ineffective assistance by failing to object to the admission of a statement made by Wallace Gaskin that he heard petitioner state that he had "killed one white motherfucker and would kill another."  (Claim 1(f)).  This claim is similar to *habeas* Claims 1(c) and (j), which focused on counsel's alleged failure to discover Gaskin's statement contained in the medical records from Taylor Hardin, where Gaskin was employed.  The claim also is similar to one raised in the direct appeal, in which petitioner asserted that the statement was inadmissible because petitioner had not been given a <u>Miranda</u> warning.  (<u>See</u> Appeal Claim 4; <u>Williams v. State</u>, 601 So. 2d at 1071-72.)  In his Rule 32 petition, the claim was raised as a claim that counsel failed to properly object to the statement (Rule 32 Claim 23(y)) and as a claim that counsel failed to seek to suppress the statement (Rule 32 Claim 23(cc)).[17]  In the instant *habeas* action, petitioner asserts that counsel at trial should have objected to the statement on relevancy grounds.

In resolving this claim during the direct appeal, the Alabama Court of Criminal Appeals noted that the statement was not

---

[17]   Although the Rule 32 petitions did not specifically assert that the proper objection was one of relevancy, that assertion clearly was made in the brief filed after the evidentiary hearing.  (<u>See</u> Post-Hearing Brief, p. 14.)

objectionable because it was made voluntarily and not in response to any interrogation.  <u>See</u> 601 So. 2d at 1072.  In the context of the Rule 32 petition, the trial court further opined that any relevancy objection would not have been sustained because the statement was relevant and not too remote.  (<u>See</u> Order Denying Rule 32 Petition, p. 39.)  The Alabama Court of Criminal Appeals affirmed, adopting that view.  <u>See</u> 783 So. 2d at 129 (set forth herein at Section III C).  The state appellate court's conclusion that the statement was not objectionable on relevancy grounds is neither contrary to nor an unreasonable application of Supreme Court precedent.[18]  Consequently, it is entitled to a presumption of correctness and deference under § 2254(d).  Because the statement was not objectionable, counsel's failure to object cannot be deemed ineffective assistance, even if counsel's failure to discover Gaskin's statement was unreasonable.  Put another way, because any objection would not have been sustained at trial or on appeal, the petitioner did not suffer any prejudice from counsel's failure to object.  Accordingly, the claim does not meet the <u>Strickland</u> standard and is due to be dismissed.

---

[18]    It should be noted that trial counsel did conduct a lengthy *voir dire* of the witness out of the presence of the jury in an attempt to establish the inadmissibility of the statement on the basis that the statement was obtained in violation of petitioner's <u>Miranda</u> rights, but counsel's objections on those grounds were eventually overruled.  (Trial Transcript, pp. 509-35.)

###### G.   *Habeas* Claims 1(i), 1(k), and 23 (Suppression/Search)

Petitioner alleges in paragraphs 51 and 67 of the amended petition that counsel rendered ineffective assistance pre-trial by failing to contact petitioner's first attorney before arguing the motion to suppress evidence obtained during the search of petitioner's bedroom (Claim 1(i).)  Similarly, petitioner asserts at paragraphs 63-69 that counsel unreasonably failed to present sufficient support for the motion to suppress (Claim 1(k).) Finally, petitioner makes the substantive claim, at paragraphs 190-91, that the trial court erred in denying the motion to suppress (Claim 23).   Each of these claims is due to be denied for procedural reasons, as well as because the search of Margie Bush's apartment, which yielded the murder weapon, was not violative of the Fourth Amendment.

Vreeland filed the original motion to suppress the gun obtained in the search.   Bivens took over representation of petitioner while the motion to suppress was under consideration. Petitioner argues that Bivens "misperceived" the issue and argued only the issue of consent to the search, while he should have argued that petitioner had an expectation of privacy in the apartment.

While phrased differently at different stages of this case, petitioner has made these claims before.   On direct appeal, petitioner challenged the legality of the search (but not the

effectiveness of counsel) on grounds that the consent given by
Margie Bush was not voluntary.  <u>See</u> Appeal Claim 3.  The Alabama
Court of Criminal Appeals first considered that issue based upon
the efficacy of the consent, but further noted that the legality of
the search might turn upon petitioner's legitimate expectation of
privacy.  The appellate court specifically held that the gun was
found inside a woman's purse, that the purse did not belong to
petitioner, and that the purse was located on a dresser in a
portion of the apartment that was separated from the rest of the
space by only a curtain.  The court further found that all
occupants of the apartment had access to that area, that petitioner
had "no expectation of privacy" in the area where the gun was
found, and that petitioner had "no standing to challenge" the
search.  <u>See</u> 608 So. 2d at 1069-71.  The court weighed factors set
forth by the United States Supreme Court in <u>Rawlings v. Kentucky</u>,
448 U.S. 98, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980).  Those
factors included whether petitioner could exclude others from the
place searched, whether he exhibited a subjective expectation that
the area would remain free from governmental invasion, and whether
he took normal precautions to maintain his privacy.  <u>Williams v.
State</u>, 601 So. 2d at 1071.

     Petitioner subsequently raised a related claim in his Rule 32
petition, asserting that Bivens was ineffective in that he failed
to meet with Vreeland before attending the suppression hearing.

(See Rule 32 Claim 23(c), Order Denying Rule 32 Petition, pp. 9-
12.) On appeal, petitioner asserted the same claim, and further
asserted that the trial court erred in denying the motion to
suppress the gun.  See Rule 32 Appeal Claim 3(b).  The Alabama
Court of Criminal Appeals addressed the claim regarding counsel's
failure to consult with Vreeland, and found that the contention in
the Rule 32 petition was "not sufficient to satisfy the specificity
requirements of Rule 32.6(b)" or the pleading requirements of Rule
32.3.  Williams, 783 So. 2d at 127.

     The plaintiff is not entitled to any relief on any of the
claims related to the search of the apartment.  The claim that
counsel rendered ineffective assistance by failing to meet with
Vreeland regarding the motion to suppress was rejected by the
Alabama Court of Criminal Appeals on an adequate and independent
state procedural ground.  Consequently, Claim 1(i) is barred from
review in this *habeas* action.  Harris v. Reed, 489 U.S. 255, 263,
109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The claim that
counsel unreasonably failed to support the motion is due to be
denied because it has never been properly raised in the state
courts.  Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999);
Smith v. Jones, 256 F.3d 1135 (11th Cir. 2001)("If the petitioner
has failed to exhaust state remedies that are no longer available,
that failure is a procedural default which will bar federal habeas
relief, unless either the cause and prejudice or the fundamental

-72-

miscarriage of justice exception is established"). Petitioner has made no showing of cause and prejudice, or of a fundamental miscarriage of justice, to avoid the procedural default.

Furthermore, even if Claim 1(k) had been raised, it is without merit because the courts have found that the search was valid based both on "consent" and a lack of "expectation-of-privacy." Accordingly, counsel's failure to raise the privacy issue cannot have prejudiced the petitioner because the objection would not have bee sustained. Absent prejudice, there was no Sixth Amendment ineffectiveness.

Moreover, petitioner is not entitled to relief on the substantive claim that the search was illegal because the state courts examined the issue on the merits, applying the proper standard enunciated by the United States Supreme Court. The state court's conclusion that the search was legal is neither contrary to nor an unreasonable application of Supreme Court precedent. Consequently, it is entitled to a presumption of correctness and deference under § 2254(d).[19]

Finally, the substantive claim implicating the petitioner's constitutional rights under the Fourth Amendment is due to be

---

[19] The court notes that, even if the ineffective-assistance-of-counsel claim were not procedurally barred, it would be due to be denied because the search was not violative of the Fourth Amendment, and therefore any failure to support a motion to suppress on grounds that the search was improper would not have prejudiced the petitioner.

dismissed because petitioner had a full and fair opportunity to litigate his claims in a state court proceeding.  The Supreme Court has held that:

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

Stone v. Powell, 428 U.S. 465, 482, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976).  *Stone* teaches that under such circumstances he is not entitled to further consideration of the claims in *habeas*.  As the Court noted in *Stone*, exclusionary rule claims are not related to the petitioner's guilt, and thus have "no bearing on the basic justice of [petitioner's] incarceration."  Id. at 491, n. 31. Accordingly, petitioner's claim relating to the validity of the search warrant itself, Claim 23, fails to state a cognizable claim under *habeas* law and therefore is due to be dismissed.

### H.   *Habeas* Claims 1(l), (m), (n) and (o)(Failure To Present Evidence and Argument

Petitioner asserts at paragraphs 70-77 that his trial counsel were ineffective because they failed to present certain evidence and argument to the jury at the guilt phase of the trial. Specifically, petitioner alleges at paragraph 70 that counsel failed to present evidence that petitioner was unconscious from

drugs and alcohol at the time of the murder (Claim 1(l)).[20]
Petitioner further asserts at paragraph 72 that counsel failed to
present evidence that Carmichael was seen driving the victim's
truck (Claim 1(m))[21] and, at paragraph 74, that counsel failed to
present evidence that Carmichael and Gregory colluded to make it
appear that petitioner was guilty of the murder they had committed
(Claim 1(o)).[22]   Finally, petitioner asserts at paragraph 73 that
counsel unreasonably failed to point out to the jury that no
fingerprints, blood, or gunpowder was found that implicated the
petitioner in the murder (Claim 1(n)).

---

[20]     The court notes that the petitioner fails to assert what
evidence, short of petitioner's own testimony, could have been
presented to support a finding that petitioner was unconscious.
Trial counsel attempted to find a witness at a convenience store
where petitioner alleges he was asleep or unconscious in the car
used in the robbery and murder, but was unable to find any employee
of the store who remembered seeing the petitioner.  Petitioner does
not allege that he wanted to testify or that he should have
testified at the guilt phase of the trial, yet the only evidence
adduced at the Rule 32 hearing regarding intoxication on the night
of the crime was petitioner's own account of what happened.
Petitioner does argue, at Petitioner's Brief, pp. 47-48, that
counsel should have presented evidence of Williams' "debilitating"
drug and alcohol habit.  However, he offers no explanation of how
such evidence would be admissible to show that petitioner was
unconscious or asleep at the particular time of the crime.

[21]     This claim is a restatement of petitioner's claim that
counsel unreasonably failed to call Laura Williams and Sandra King
as witnesses, which is discussed *supra* at Section III C.

[22]     There appears to be no evidence of collusion either,
except for an observation that Trosky and Carmichael were together
alone at some time and could have colluded to implicate petitioner.

Although petitioner asserted these claims in his brief on appeal from the trial court's denial of his Rule 32 petition,[23] the Alabama Court of Criminal Appeals rejected these claims because they were not raised in the trial court.  See 783 So. 2d at 130. A review of the petition and amended petition reveals that, although 37 claims of ineffective assistance were raised in the trial court, these specific claims were not asserted.  Each of these claims was rejected by the Alabama Court of Criminal Appeals on an adequate and independent state procedural ground.  Petitioner has made no showing of cause and prejudice, or of a fundamental miscarriage of justice, to avoid the default.  Consequently, Claims 1(l), (m), (n), and (o) are barred from review in this *habeas*

---

[23]    It should be noted, however, that the brief references the absence of fingerprint evidence, but omits any reference to a lack of blood or gunpowder evidence.  Accordingly, those assertions have never been submitted to any state court and are procedurally barred for that separate reason.

action.[24]  Harris v. Reed, 489 U.S. 255, 263, 109 S. Ct. 1038, 1043,
103 L. Ed. 2d 308 (1989).

### I.  *Habeas* Claim 1(p)(Failure to Hire Experts)

Petitioner asserts at paragraphs 78-80 of his *habeas* petition
that his counsel at trial unreasonably failed to hire forensic
experts to analyze and rebut the evidence presented by the
prosecution.  (Claim 1(p).)  Petitioner first raised the claim in
his Rule 32 petition.  See Rule 32 Claim 23(g).  The trial court
denied relief, asserting that the claim was not stated with "the
specificity and particularity" required by Rule 32, and no proof
was offered in support of it at the evidentiary hearing.  See Order
Denying Rule 32 Petition, p. 30.   Petitioner again asserted the
claim on appeal, and the Alabama Court of Criminal Appeals affirmed
on grounds that the claim failed to satisfy Alabama Rules of
Criminal Procedure 32.6(b) and 32.3.  This claim was rejected by

---

[24]     The court further notes that petitioner has not, to date,
specified what evidence might have been offered to prove that he
was "unconscious" at the time of the crime.  Petitioner does not
allege that he wanted to testify or that he was prevented from
testifying.  Bivens specifically testified at the Rule 32 hearing
that he attempted to find a witness at the convenience store where
the defendants stopped the night of the crime (who presumably may
have witnessed the petitioner unconscious in the back seat of the
car), but that none of the employees of the store remembered any of
the defendants having stopped there.   Petitioner has likewise
failed to present any evidence that counsel could have presented at
trial that would have supported an argument that the co-defendants
colluded against him.

the Alabama Court of Criminal Appeals on an adequate and independent state procedural ground. Petitioner has made no showing of cause and prejudice, or of a fundamental miscarriage of justice, to avoid the default. Consequently, claim 1(p) is barred from review in this *habeas* action. Harris v. Reed, 489 U.S. 255, 263, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).

### J. *Habeas* Claims 1(q), (r), (s), (t), and 8, 9, 10, and 11 (Improper Jury Instructions)

Petitioner makes several claims that his trial counsel rendered ineffective assistance in that they failed to object to certain jury instructions at the guilt phase of the trial. Specifically, petitioner asserts at paragraphs 82-83 that counsel should have objected to the court's failure to instruct the jury on lesser-included offenses of felony murder and robbery (Claim 1(q)).[25] He further argues at paragraphs 84-86 that counsel should have objected to the instructions concerning reasonable doubt (Claim 1(r)), circumstantial evidence (Claim 1(s)), and reconciling testimony (Claim 1(t)). Petitioner also asserts at paragraphs 166-169 that he was denied a fair trial because the court failed to adequately instruct the jury on the same topics (Claims 8-11).

---

[25] Petitioner does not argue in his brief that he was entitled to an instruction on robbery, but only on felony murder, although petitioner fails to assert that any evidence was presented that would support a finding that the victim's death was an unintended result.

-78-

The petitioner first raised the substantive issues regarding these instructions on direct appeal.  See Appeal Claims 6-9. Petitioner next raised the issues as both substantive claims and as claims of ineffective-assistance in his Rule 32 proceedings.  See Rule 32 Claims 2-5 and 23(s)-(w).

### 1.  Lesser-Included Offenses

On the subject of lesser-included offenses, the appellate court stated on direct appeal:

> The appellant next argues in his supplemental brief that the trial court erred in not instructing the jury on the lesser included offenses of felony murder and robbery in the first degree.  Initially we observe that no objection was made to this failure to instruct.  We believe no plain error occurred here.  There was absolutely no evidence presented during the trial that would warrant an instruction on felony murder or robbery in the first degree.
>
> The evidence at trial tended to establish that the victim was killed, execution style, with one bullet to the head. Powder burns were found on his head.  The appellant was seen driving the victim's truck on the same day that the murder occurred.  The appellant went to visit Ms. Jones that same day and showed her a gun and bullets and told her that he had killed a white man.  There is absolutely no evidence to support an instruction on felony murder. As Judge Bowen stated in *White*, supra:
>
> > "'[T]he purpose of the felony-murder doctrine is to hold felons accountable for unintended deaths caused by their dangerous conduct.'  W. LaFave and A. Scott, 2 *Substantive Criminal Law* § 7.5 at 210 (1986).  See *Ex parte Ritter*, 375 So. 2d 270, 273-74 (Ala. 1979), vacated on other grounds, 448 U.S. 903, 100 S. Ct. 3044, 65 L. Ed. 2d 1133 (1980); *Ex parte Bates*, 461

> So. 2d 5, 7 (Ala. 1984).   Here the evidence
> shows that the defendant intentionally killed
> his wife.   There is no rational basis for a
> verdict convicting him of felony-murder.
> § 13A-1-9(b)."

*White*, 587 So. 2d at 1231.

> Furthermore, the facts do not support a charge on robbery
> in the first degree.   No error occurs in not giving a
> charge on a lesser included offense when there is no
> reasonable theory to support the lesser offense. See
> *Dill*.   "'A trial judge may refuse to charge on a lesser
> included offense when it is clear to the judicial mind
> that there is no evidence to support the jury's being
> charged on the lesser included offense.'" *Dill*, 600 So.
> 2d at 360, quoting *Gurganus v. State*, 520 So. 2d 170, 174
> (Ala. Cr. App. 1987).   No plain error exists here.

601 So. 2d at 1075.   Petitioner is not entitled to relief on the

substantive claim that the trial court erred in failing to instruct

on lesser-included offenses because the state courts examined the

issue on the merits, applying Alabama law.   The state courts'

conclusion that there was "absolutely no evidence" to support an

instruction on felony murder or robbery is neither contrary to nor

an unreasonable application of Supreme Court precedent.

Consequently, it is entitled to a presumption of correctness and

deference under § 2254(d).

It then follows that the claim that counsel was ineffective in

failing to object to the court's failure to so instruct the jury is

without merit.   The related claim of ineffective-assistance was

raised in the Rule 32 petition.   <u>See</u> Rule 32 Claim 23(t).   The

Alabama Court of Criminal Appeals again addressed the issue on

-80-

appeal, stating that there was "no basis for an objection by counsel" because there was no basis for an instruction on the lesser charges. 783 So. 2d at 133-34. Consequently, petitioner is not entitled to relief on the ineffective-assistance claim related to an instruction on lesser-included offenses because the state courts examined the issue, both substantively and as it related to counsel's performance, on the merits. Furthermore, the state court applied the proper standard under Alabama law and under <u>Strickland</u>. The state courts' conclusion that the failure to charge the jury on felony murder and first-degree robbery was not objectionable is neither contrary to nor an unreasonable application of Supreme Court precedent. Consequently, it is entitled to a presumption of correctness and deference under § 2254(d).

### 2.  Reasonable Doubt

As to the claims relating to the jury instruction on reasonable doubt, the Alabama Court of Criminal Appeals stated:

> The appellant next argues that the following instruction on reasonable doubt violated the holding in *Cage v. Louisiana*, 498 U.S. 39, 111 S. Ct. 328, 112 L. Ed. 2d 339 (1990):
>
>> "Now I have mentioned the term 'reasonable doubt' just as the attorneys have because that's a basic, fundamental concept in the trial of a criminal case.  What is 'beyond a reasonable doubt and to a moral certainty'? First, the two terms are synonymous. That is, they mean the same thing. Whatever is beyond

a reasonable doubt is to a moral certainty.
'Beyond a reasonable doubt' simply means
beyond a doubt for which a reason can be
given.

"The phrase 'reasonable doubt,' then is rather
self-explanatory and efforts to further define
it do not always help to clarify it in any
way.  But it might help some to say that the
doubt which would justify an acquittal must be
an actual doubt which arises from the evidence
or from a lack of evidence or from
contradictory evidence and which remains after
a careful consideration of all of the evidence
in the case.  The doubt which justifies an
acquittal cannot be a mere fanciful or vague
or conjectural or speculative doubt, but it
must be a reasonable doubt which, as I said,
comes from the evidence or from the lack of
evidence.

"If after considering all of the evidence in
this case, you have an abiding conviction of
the truth of the charge in this case and
you're convinced beyond a reasonable doubt,
then it would be your duty to convict the
defendant of the offense of capital murder.
The reasonable doubt which entitles the
accused to an acquittal is not a mere fanciful
or vague or conjectural or speculative doubt,
but, as I said, it must arise from the
evidence or from a lack of evidence."

Initially, we observe that no objection was made to this
instruction during the trial.  While this failure will
not bar review in this case, it will weigh against any
claim of prejudice.  *See Kuenzel*.

In *Cage*, the complained-of instruction on reasonable
doubt contained the phrases, "grave uncertainty," "actual
substantial doubt," and "moral certainty."  It appears
from the opinion that the Court's problem with the
instruction lay in the phrases, "grave uncertainty" and
"actual substantial doubt."  The United States Supreme
Court stated:

-82-

"It is plain to us that the words 'substantial' and 'grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. *When those statements are then considered with the reference to 'moral certainty,' rather than evidentiary certainty,* it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause."

We do not believe that *Cage* is applicable to the charge in the instant case. The trial court did not use the key terms "grave uncertainty" and "actual substantial doubt" used in *Cage*. The trial court thoroughly instructed the jury that its reasonable doubt must be based on evidence in the case or the lack thereof. The instruction in *Cage* is distinguishable from the instruction in the present case.

We note that the instruction given in this case is similar to one this court has recently held was not violative of *Cage*. See *Adams v. State*, 587 So. 2d 1265 (Ala. Cr. App. 1991). No plain error occurred here.

601 So. 2d at 1076-77. With respect to the instruction on reasonable doubt, the Court of Criminal Appeals reviewed the charge given, and concluded that the charge was thorough and correct in its explanation of the term "reasonable doubt." That court again examined the instruction in the context of the post-conviction motion and specifically held that there was "no basis for objection." 783 So. 2d at 134. Accordingly, petitioner is not entitled to relief on either the substantive or ineffective-assistance claim related to the "reasonable doubt" instruction because the state courts examined the issues on the merits,

applying the proper standard under state and federal[26] law, both with respect to the content of the jury instructions and the effectiveness of counsel under <u>Strickland</u>.  The state courts' conclusions that the charge was sufficient and was not objectionable are neither contrary to nor an unreasonable application of Supreme Court precedent.  Consequently, they are entitled to a presumption of correctness and deference under § 2254(d).

### 3.  Circumstantial Evidence

As to the claims relating to the jury instruction regarding circumstantial evidence, the Alabama Court of Criminal Appeals stated:

> The appellant next argues that the instruction regarding circumstantial evidence given by the trial court in its instruction in the guilt phase of the trial, lessened the degree of proof necessary to convict the appellant and shifted the burden of proof.  Counsel made no objection at trial.  In fact, defense counsel stated that he was satisfied with the court's instruction.  The trial court gave the following instruction on circumstantial evidence:
>
>> "Circumstantial evidence simply means all evidence of an indirect nature.  In other words, there is direct evidence and there is indirect evidence.  So circumstantial evidence

---

[26]   The United States Supreme Court has explicitly held that the use of the term "moral certainty" does not render an instruction violative of the Constitution.  <u>Victor v. Nebraska</u>, 511 U.S. 1, 9, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994).

is simply evidence of an indirect nature. When the evidence against a defendant is partially circumstantial or indirect, his innocence should be presumed by the jury until his guilt is established by the evidence in all of the material aspects of the case beyond a reasonable doubt and to a moral certainty, the same as if the evidence were wholly direct or wholly circumstantial. The question always comes back to: Did the State by the evidence prove the defendant guilty beyond a reasonable doubt?

"The test of the sufficiency of circumstantial evidence in a criminal case is whether the circumstances as proven are capable of an explanation upon a reasonable hypothesis consistent with the defendant's innocence, and if they are so capable of such an explanation, then a defendant should be acquitted. Because in that instance what we are saying is that you can explain away the evidence to the point where you reach a reasonable basis for doubting the evidence before you, and in that event you're not convinced beyond a reasonable doubt, so we come back to the basic instruction that the State carries the burden of proof.

"So circumstantial evidence is as good as any other kind of evidence, but like that of positive evidence it must produce in the minds of the jury a conviction of guilt beyond a reasonable doubt. So the presence, or absence even, of circumstantial evidence does not change the burden of proof. In any case on any kind of evidence, the burden always remains on the State to prove the defendant guilty beyond a reasonable doubt. No more, no less."

The trial court thoroughly charged the jury on circumstantial evidence and reasonable doubt. We believe this charge was sufficient. See *Wabbington v. State*, 446 So. 2d 665 (Ala. Cr. App. 1983), cert. denied, 467 U.S. 1254, 104 S. Ct. 3542, 82 L. Ed. 2d 846 (1984). See also *Marlow v. State*, 538 So. 2d 804 (Ala. Cr. App. 1988).

> This in no way conflicts with our holding in *Davenport v.*
> *City of Birmingham*, 570 So. 2d 1298 (Ala. Cr. App.
> 1990), in which we reversed the trial court based on its
> instruction on circumstantial evidence.   In *Davenport*,
> there was absolutely no instruction on the proof
> necessary to convict on circumstantial evidence.   There
> was such an instruction in this case.

601 So. 2d at 1075-76.  The Court of Criminal Appeals reviewed the
charge given and concluded that the charge regarding circumstantial
evidence was thorough and sufficient.   That court again examined
the instruction in the context of the post-conviction motion, and
specifically held that the charge provided "no basis for
objection."  783 So. 2d at 134.  Consequently, petitioner is not
entitled to relief on the substantive or ineffective-assistance
claims related to the circumstantial evidence instruction because
the state courts examined the issues on the merits, applying the
proper standard under state and federal law and <u>Strickland</u>.  The
state courts' conclusions that the charge was sufficient and was
not objectionable, and, therefore, that counsel were not
ineffective, are neither contrary to nor an unreasonable
application of Supreme Court precedent.  Consequently, they are
entitled to a presumption of correctness and deference under §
2254(d).

4.  Reconciling Testimony

Petitioner's final claims relating to jury instructions assert that the trial court improperly instructed the jury on a duty to "reconcile the testimony" of the witnesses to make them speak the truth.   The Alabama Court of Criminal Appeals reviewed this substantive claim on direct appeal and stated:

> The appellant next argues that the trial court erred in instructing the jury that they had a duty to reconcile the testimony of all the witnesses to make them speak the truth. He maintains that this instruction "impermissibly conditions the juror's right to disbelieve even uncontroverted testimony" and violated his right to a fair trial.  The record reflects that no objection was made to this instruction at trial.  The trial court gave the following instruction:
>
>> "*You should, in the trial of this case, of course, attempt in every way you can to reconcile all of the evidence in this case so as, if possible, to make all witnesses speak the truth*.  If you cannot do that, and you find that the evidence is in conflict on material points, then it's up to the jury to decide what are the true facts and what is usually accepted and received by the jury and used by the jury and what is due to be rejected or ignored.  In other words, you may have to pick and choose through this evidence and decide just what is believable and what is not.  But in passing upon that, you do not have to capriciously accept or reject the testimony of any witness.
>>
>> "You should look at all of the evidence in the case with a view of determining what the true facts are and make your decision from the evidence.  If you find that some of that evidence is unworthy of belief, you have the right to throw it out. But you still have the remainder, and that would be what you would

act upon.  But you first start out with all of
the evidence with a view of determining what
the true facts are and you sort through it,
always remembering that your job is to
determine what are the true facts."

When the single instruction underlined above is viewed in
the abstract, it could be confusing.  However, "[a]
single instruction to a jury may not be judged in
artificial isolation, but must be viewed in the context
of the overall charge." *Kuenzel*, 577 So. 2d at 517.  The
instruction was a charge on the jury's function as the
sole factfinder.  The jury has the "'responsibility of
assessing the credibility of each witness and weighing
all the evidence, whether direct or circumstantial, as
they viewed it.' *Cumbo v. State*, 368 So. 2d 871 (Ala.
Crim. App. 1978), cert. denied, 368 So. 2d 877 (1979).
Moreover, a conflict in the testimony is the sole
province for the jury to determine...." *Boggan v. State*,
455 So. 2d 228, 240 (Ala. Cr. App. 1984).  See also *White
v. State*, 546 So. 2d 1014 (Ala. Cr. App. 1989).  There
was no plain error in the above instruction.

601 So. 2d at 1076.  With respect to the instruction on reconciling

the testimony, the Court of Criminal Appeals reviewed the charge

given, and concluded that the charge may have been confusing when

viewed in isolation, but did not constitute plain error when viewed

in the context of the overall charge.  That court again examined

the trial court's instruction in the context of the post-conviction

petition, and specifically held that there was "no basis for

objection."  783 So. 2d at 134.  Consequently, petitioner is not

entitled to relief on the substantive or ineffective-assistance

claim related to the instruction on reconciling the testimony

because the state courts examined the issues on the merits,

applying the proper standards under Alabama law and <u>Strickland</u>.

The state courts' conclusions that the charge was not in error and was not objectionable, and, therefore, counsel were not ineffective, are neither contrary to nor an unreasonable application of Supreme Court precedent.[27]   Consequently, they are entitled to a presumption of correctness and deference under § 2254(d).

Accordingly, for all the reasons set forth above, petitioner's claims relating to the propriety of the jury instructions, Claims 1(q), (r), (s), (t), and 8, 9, 10, and 11 are due to be denied.

###     K.    *Habeas* Claims 1(u), (v), (w), and 5, 6, and 7 (Prosecutorial Misconduct)

At paragraphs 89-94 of the amended *habeas* petition, petitioner asserts three claims of ineffective-assistance of counsel that relate to comments made by the prosecutor.   Specifically, petitioner asserts that his trial attorneys should have objected to the prosecutor's comment on petitioner's lack of an explanation for why he had the murder weapon (Claim 1(u)).   He further asserts that the prosecutor's suggestion that the petitioner would kill again should have prompted an objection (Claim 1(v)).   Finally,

---

[27]    In addition, petitioner is not entitled to relief on the substantive claim related to the instruction on reconciling the testimony because he concedes that the issue of the propriety of this instruction turns on a question of state law and is not subject to review as an independent claim on *habeas* review. (Petitioner's Brief, p. 131-32.)

petitioner asserts that the prosecutor's improper comments on the race of the victim and racial slurs spoken by petitioner should have drawn an objection (Claim 1(w)).  These same issues also are stated at paragraphs 164-65 as substantive claims that petitioner's constitutional rights were violated by the improper comments made to the jury (Claims 5, 6, and 7, respectively).

Petitioner first raised the substantive claims of prosecutorial misconduct on direct appeal.  See Appeal Claims 5(a)-(c).  Petitioner next raised the issues as both substantive claims and as claims of ineffective assistance in his Rule 32 proceedings.  See Rule 32 Petition Claims 1(a)-(c) and 23(o)-(r).

On the subject of comments on defendant's failure to testify, the appellate court stated on direct appeal:

> The appellant further argues that he was prejudiced by the following remarks made by the prosecutor in his closing argument in the guilt phase of the trial:
>
> > "You heard his comment about 'Well, it's just as possible that Trosky and Carmichael were the ones that shot Mr. Kirk as anybody else,' and I submit to you: What fathom of evidence at all indicates that they were involved in the execution of John Robert Kirk?  What fathom of evidence at all indicates that this weapon hidden in a purse in that very room – if you are going to use this as an item to pawn, you don't hide it in the room that you are staying in; you hide it somewhere else or you get rid of this quick.  If you are going to use it as a tool of the trade, you keep it handy."

"The last thing I will submit to you is that, you know, when you talk about circumstantial evidence, one thing everybody says is when some parts of the case are circumstantial, circumstantial evidence is just as good as regular evidence. You notice he didn't comment on this part at all. In this case, first you have the circumstance that he is found with the murder weapon. That in and of itself is sufficient circumstances unless something else is shown as to why that person had that gun other than they did the killing. There is no evidence of that whatsoever."

Defense counsel had, prior to the above comments made by the prosecutor, argued the following in his closing argument:

"Reasonable doubt is a doubt for which you have a reason. If you can tell me, ladies and gentlemen, that based on the facts in this case that you can exclude Trosky Gregory and Albert Carmichael as the persons that pulled the trigger in this case based on the evidence that is before you like going out to the scene....

"....

"I want to talk to you about the gun. To the person who shot Mr. Kirk, this is a weapon, but to a thief who steals and pawns things, this is money; this is money. To the person who shot Mr. Kirk, you take this with the knowledge that Mr. Kirk has been shot and you get rid of this evidence. To the person who has stolen that and has not used it as a murder weapon, you keep it until you sell it. Which did Luther Williams do? He kept it in a purse at the house. He didn't get rid of it."

Initially, we observe that no objections were made to the complained-of portions of the prosecutor's argument. While this does not bar review in a case involving the death penalty, it will weigh against any prejudice that the appellant may have suffered. See *Kuenzel*.

It is clearly impermissible for a prosecutor to directly comment on a defendant's failure to testify at trial. See *Griffin v. California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965).  However, the above comments made by the prosecutor in his rebuttal were replies to the comments made by defense counsel in his closing argument.  "When the door is opened by defense counsel's argument, it swings wide, and a number of areas barred to prosecutorial comment will suddenly be subject to reply." *Davis v. State*, 494 So. 2d 851, 855 (Ala. Cr. App. 1986). Recently this court, in *Stephens*, supra, stated the following regarding prosecutor's statements in arguments:

> "'... "[I]t must be examined in its context and in light of what had transpired, that is, in light of preceding argument of defense counsel, to which the prosecutor's argument was an answer." *Washington v. State*, 259 Ala. 104, 65 So. 2d 704 (1953); *Gibson v. State*, 347 So. 2d 576 (Ala. Crim. App. 1977); *Rutledge v. State*, [482 So. 2d 1250][Ms. 5 Div. 610, August 16, 1983](Ala. Crim. App. 1983).  The rule in Alabama is that "remarks or comments of the prosecuting attorney, including those which might otherwise be improper, are not grounds for reversal when they are invited, provoked, or occasioned by accused's counsel and are in reply to or retaliation for his acts and statements." *Shewbart v. State*, 33 Ala. App. 195, 32 So. 2d 241, cert. denied, 249 Ala. 572, 32 So. 2d 244 (1947); *Camper v. State*, 384 So. 2d 637 (Ala. Cr. App. 1980); *Wilder v. State*, 401 So. 2d 167 (Ala. 1981), cert. denied, 454 U.S. 1057, 102 S. Ct. 606, 70 L. Ed. 2d 595 (1981); *Miller v. State*, 431 So. 2d 586 (Ala. Crim. App. 1983); *Rutledge*, supra.'"

*Stephens*, 580 So. 2d at 21, quoting *Henderson v. State*, 460 So. 2d 331, 333 (Ala. Cr. App. 1984).  The United States Supreme Court in *United States v. Robinson*, 485 U.S. 25, 108 S. Ct. 864, 99 L. Ed. 2d 23 (1988), narrowed the Court's holding in *Griffin* concerning a prosecutor's comment on the defendant's failure to testify and stated the following:

> "'[T]he protective shield of the Fifth
> Amendment should [not] be converted into a
> sword that cuts back on the area of legitimate
> comment by the prosecutor on the weaknesses in
> the defense case.'...
>
> "...
>
> "'[T]he central purpose of a criminal trial is
> to decide the factual question of the
> defendant's guilt or innocence....  To this
> end it is important that both the defendant
> and the prosecutor have the opportunity to
> meet fairly the evidence and arguments of one
> another.'"

*Robinson*, 108 S. Ct. at 869. (Citations omitted.)

After evaluating the prosecutor's comments in relation to
the whole case, we cannot say that this comment, which
was a reply in kind to a statement made by defense
counsel in his closing argument, amounted to plain error.
See *Dill*.  To constitute plain error the error must be so
"egregious as to 'seriously affect the fairness or
integrity of the judicial proceedings.'" *Dill*, 600 So. 2d
at 355; quoting, *Ex parte Womack*, 435 So. 2d 766 (Ala.),
cert. denied, 464 U.S. 986, 104 S. Ct. 436, 78 L. Ed. 2d
367 (1983).

Furthermore, there is some question whether the comment
was intended to be a reference to the appellant's failure
to testify.  See *Duncan v. Stynchcombe*, 704 F.2d 1213
(11th Cir. 1983).

601 So. 2d at 1073-75.

On the subject of the prosecutor's references to the race of

the petitioner, the court opined:

> The appellant also argues that the prosecutor emphasized
> the race of the appellant to urge the jury to return a
> verdict of death.  No objections were made to any
> evidence received at trial that may have emphasized the
> race of the appellant.  We must apply the plain error

analysis, i.e., is the error so egregious that it seriously affected the fairness and integrity of the proceeding?  See *Dill* and *Kuenzel*.

The following statement made by the appellant while he was at Taylor Hardin, was received into evidence.  "I killed one white m____ f____; I'll kill another one." (See part V of this opinion.)  Priscilla Jones also testified that the appellant said that he had killed a white man.  These statements were not brought out to emphasize race.  These were statements made by the appellant himself.  There is absolutely no evidence in the record that the prosecuting attorney tried to prejudice the minds of the jurors by emphasizing the difference in race between the appellant and the victim.

Furthermore, the trial court made the following admonition to the jury concerning race:

> "The fact that the deceased was a white man or that the defendant was a black man is irrelevant insofar as your determination and duty in this case is concerned.  Whether or not race played any part in the death of John Robert Kirk and regardless of the presence, if any, of any racial epithets or statements, considerations of race simply do not enter into this courtroom or inject themselves into your consideration of the evidence in the case."

No plain error exists here.

601 So. 2d at 1073.

In considering whether the prosecutor's comment on defendant's future dangerousness, the court stated:

The appellant next argues that the prosecutor impermissibly stated during his rebuttal closing argument in the guilt phase of the trial that the appellant would kill again.  No objection was made to this comment. While the fact that no objection was made will not preclude review in a case where the appellant has been

sentenced to death, it will weigh against any claim of prejudice.  See *Dill v. State*, 600 So. 2d 343 (Ala. Cr. App. 1991); *Kuenzel v. State*, 577 So. 2d 474 (Ala. Cr. App. 1990), aff'd, 577 So. 2d 531 (Ala. 1991).  "'This court has concluded that the failure to object to improper prosecutorial arguments ... should be weighed as part of our evaluation of the claim on the merits because of its suggestion that the defense did not consider the comments in question to be particularly harmful.'"  *Dill*, 600 So. 2d at 356, quoting *Kuenzel*, 577 So. 2d at 489.

The prosecutor made the following statement during his rebuttal closing argument:

> "Circumstantial evidence is kind of like a big rat and a little rat in a box.  Circumstantial evidence is when you put that lid on that box at night and make sure there are no holes. And you open up the box the next day.  The big rat ... is still there but the little mouse is gone.  You look down there and you say, 'Well, that big rat ate that little mouse' which is what you have in this case.  But then what happens is that you look at that big rat and what does the big rat say?  This is not circumstantial evidence.  He says, 'I ate the mouse.'  He says that to some of the first people that saw him.  He also has in his possession some of the fur of the little mouse that the little mouse had.  And also at a later time he says '<u>I ate the little mouse and I will eat another little mouse if you give me a chance</u>.'"

The appellant maintains that the underlined portion of the argument was a comment that the appellant would kill again.  (The analogy is similar to statements made by the trial court in its instructions to the prospective jurors during voir dire and statements made by defense counsel in his closing argument.)  The prosecutor's statement was a comment on the statement made by the appellant, which was received into evidence at trial.  See part V of this opinion.  "'The test of legitimate argument is that whatever is based on a fact or facts in evidence is within the scope of proper comment in argument to the jury.'"  *White v. State*, 587 So. 2d 1218, 1229 (Ala. Cr. App. 1990).  "Whatever is in evidence is considered

subject to legitimate comment by counsel." *Bankhead v. State*, 585 So. 2d 97 (Ala. Cr. App. 1989), aff'd, 585 So. 2d 112 (Ala. 1991).  See also *Ward v. State*, 440 So. 2d 1227 (Ala. Cr. App. 1983).  "The prosecutor has the right to present his impressions from the evidence.  He may argue every matter of legitimate inference and may examine, collate, sift, and treat the evidence in his own way." (Citations omitted.)  *Donahoo v. State*, 505 So. 2d 1067, 1072 (Ala. Cr. App. 1986).

Furthermore, "'[s]tatements of counsel in argument to the jury must be viewed as having been made in the heat of the debate, and such statements are usually valued by the jury at their true worth.'"  *Stephens v. State*, 580 So. 2d 11 (Ala. Cr. App. 1990), aff'd, 580 So. 2d 26 (Ala. 1991), quoting *Harris v. State*, 539 So. 2d 1117, 1123 (Ala. Cr. App. 1988).  No plain error occurred here.

601 So. 2d at 1072-73.

Petitioner is not entitled to relief on any of the substantive claims that the trial court erred in permitting the prosecutor to make the comments.  The state courts examined the issues on the merits, applying the proper standard regarding comments on silence that was applied by the Supreme Court in Griffin v. California, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965).  The state courts also made findings of fact in determining that the racial references of which petitioner complains were not made to prejudice the jury or to emphasize race, but were mere recitations of statements made by the petitioner himself, stating that he had killed a white man.  Finally, the state courts properly assessed the comment regarding future dangerousness as fair comments on the evidence presented -

petitioner's own statement that he had killed one "white motherfucker" and would "kill another." The state courts' conclusion that the comments did not "'seriously affect the fairness'" of the trial is neither contrary to nor an unreasonable application of Supreme Court precedent. Consequently, the state court findings are entitled to a presumption of correctness and deference under § 2254(d).

The claims that counsel was ineffective in failing to object to the prosecutor's comments also are without merit. The claims of ineffective-assistance were raised in the Rule 32 petition. The Alabama Court of Criminal Appeals again addressed the issue on appeal, stating that there was "no basis for an objection by counsel" because none of the comments rose to the level of plain error. 783 So. 2d at 134. Consequently, petitioner is not entitled to relief on the ineffective-assistance claims related to prosecutorial misconduct because the state courts examined the issues, both substantively and as they related to counsel's performance, on the merits. Furthermore, the state court applied the proper standard under Strickland. The state courts' conclusions that the comments were not objectionable, and, therefore, that counsel were not ineffective, are neither contrary to nor an unreasonable application of Supreme Court precedent. Consequently, those conclusions are entitled to a presumption of correctness and deference under § 2254(d).

-97-

###### L.   *Habeas* Claim 1(x) and (y), and 13, 14, 24, and 25 (Jury Selection)

At paragraphs 95-98 of the amended *habeas* petition, petitioner alleges that counsel unreasonably failed to present sufficient support for the motion to sequester the jury venire.  Petitioner complains that the motion should have been supported by news articles to demonstrate pretrial publicity (Claim 1(x)).  At paragraphs 173-74, he also raises the substantive claim that the court erred in denying the motion for sequestration of the venire (Claim 14), and at paragraph 99 that counsel failed to adequately conduct a *voir dire* to identify biased jurors (Claim 1(y)). Petitioner alleges at paragraph 172 that the court erred in excluding for cause a potential juror who said she had "difficulty" with the death penalty but could follow the law (Claim 13). Finally, petitioner asserts at paragraph 192 that the trial court violated his constitutional rights by allowing the prosecutor to strike jurors on the basis of race in violation of <u>Batson</u> (Claim 24), and at paragraph 193 that the selection of the jury venire from licensed drivers denied petitioner of his right to a jury that was representative of the community (Claim 25).

Petitioner first raised the substantive claim regarding sequestration on direct appeal.  <u>See</u> Appeal Claim 12.  Petitioner next raised the issue as both a substantive claim and a claim of

ineffective assistance in his Rule 32 proceedings.  See Rule 32 Petition, Claims 8 and 23(j).

Speaking to the issue of sequestration, the appellate court stated that petitioner was not prejudiced by the lack of sequestration, stating in the opinion affirming his conviction:

> The appellant next contends that the trial court erred in denying his motion to sequester the venire during voir dire examination.  The appellant claims that the trial court's denial of his motion limited his opportunity "to expose the effect of pretrial publicity on the venire."
>
> This court has heretofore concluded that there is no requirement mandating that the defendant be allowed individual voir dire of potential jurors and sequestration of potential jurors during voir dire. *Browning v. State*, 549 So. 2d 549 (Ala. Cr. App. 1989); *Bell v. State*, 475 So. 2d 601 (Ala. Cr. App. 1984), aff'd, 475 So. 2d 609 (Ala.), cert. denied, 474 U.S. 1038, 106 S. Ct. 607, 88 L. Ed. 2d 585 (1985).  Any decision to allow individual questioning or sequestration of potential jurors is within the discretion of the trial court. *Heath v. State*, 480 So. 2d 26 (Ala. Cr. App. 1985).
>
> The appellant claims that pretrial publicity may have affected the venire.  However, during voir dire examination, the appellant, as well as the state, had ample opportunity to question the veniremembers about their knowledge of the case at hand.  When asked, only one member of the venire stated that he had any knowledge of the case.  This veniremember was ultimately excused and did not sit on the jury.  Furthermore, the appellant presented no evidence of a significant possibility of prejudice due to pretrial publicity.  [FN1]  *See Brown v. State*, 571 So. 2d 345 (Ala. Cr. App.), writ quashed, 571 So. 2d 353 (Ala. 1990).  Absent such a showing, the mere fact that veniremembers might know something about a case is not sufficient to prove prejudice.  *United States v. Hawkins*, 658 F.2d 279 (5th Cir. 1981); *Waldrop v. State*, 462 So. 2d 1021 (Ala. Cr. App.), cert. denied, 472 U.S. 1019, 105 S. Ct. 3483, 87 L. Ed. 2d 618 (1984).

Therefore, we find that the trial court correctly denied the appellant's motion to sequester the venire during voir dire.

> FN1.  We note that the appellant did file copies of news articles that appeared in local newspapers around the time of his arrest.  However, these articles were filed in conjunction with his motion for a change of venue and not to support his claim of prejudicial pretrial publicity.  In addition, the most recent of these articles was published more than a year before the date of the appellant's trial.

601 So. 2d at 1067-68.

Subsequently, when evaluating counsel's performance regarding seeking sequestration, the Alabama Court of Criminal Appeals adopted the trial court's conclusion that petitioner had failed to demonstrate that pre-trial publicity had in any way tainted the jury pool, and that petitioner had failed to satisfy the prejudice prong of the Strickland test.  The court stated:

> Tenth, the appellant contends that his attorneys rendered ineffective assistance because they allegedly did not present sufficient evidence to support his motion for individual voir dire examination of the veniremembers. In addressing this contention, the circuit court found as follows:
>
> > "The substantive issue concerning the trial court's denial of trial counsel's motion to sequester the venire during voir dire examination was fully addressed on direct appeal.  *Williams v. State*, 601 So. 2d at 1067-68.  Williams' present assertion is that his trial counsel 'unreasonably failed to properly support' that motion.  He offered no evidence in support of this contention at the evidentiary hearing, but does address it at pages 52-53 of his Post-Hearing Brief.  As

noted by the Court of Criminal Appeals,
'[D]uring voir dire examination, the
appellant, as well as the state, had ample
opportunity to question the veniremembers
about their knowledge of the case at hand,'
but, when asked, 'only one member of the
venire stated that he had any knowledge of the
case,' and he was ultimately excused.  Rule 32
counsel have made no showing, and have
presented no argument, concerning how the lack
of sequestered voir dire prevented adequate
inquiry into and exploration of possible
effects of pretrial publicity.  Williams
argues in his post-hearing brief that because
the jurors were not sequestered 'their answers
could be heard by the rest of the venire.'
However, he does not identify any such answer.
He argues that non-sequestered voir dire
'impeded Mr. Williams from making an adequate
showing of pretrial prejudice.'  Again, he
does not explain how this impediment took
place.  There was no restriction on the right
of either counsel to inquire concerning
whether or not any venireperson had been
exposed to any pretrial publicity of any
nature or degree, and there was no restriction
on the right of either side to request that a
responding venireperson be asked to remain
after the conclusion of the voir dire for
'private,' individualized questioning.  That
was exactly the approach followed at the
conclusion of the general voir dire with
respect to numerous individuals who had given
answers concerning various matters.  (R. 294-
324).  Accordingly, even assuming that trial
counsel's motion for sequestered voir dire
might have been better supported, and even
assuming that a better supported motion might
have persuaded the trial judge to sequester
the venire during voir dire, Rule 32 counsel
have made no showing of prejudice resulting
from a non-sequestered voir dire.  To the
extent that Rule 32 counsel fault trial
counsel for having presented no evidence of
pretrial publicity more recent than newspaper
articles published over a year before the date
of the trial (filed in conjunction with

Williams' motion for a change of venue), they
offer no *evidence* of subsequent pretrial
publicity.  They do state in footnote 8 at
page 52 of the Post-Hearing Brief that
'articles from Mr. Lemley's file following the
hearings of March and August 1989' demonstrate
that there was 'continuing coverage.'  In that
regard, they reference 'Attachment B' which
consists of a photostatic reproduction of an
article from the August 9, 1989, edition of
*The Tuscaloosa News*.  This item was not
offered as an exhibit at the evidentiary
hearing and was not otherwise placed *in
evidence*.  Certainly the court cannot now take
judicial notice of something simply presented
as an attachment to a brief.  The handwritten
annotations on the article, because of their
content, seemingly are those of Williams.  At
any rate, there is no showing of 'articles,'
but rather only a single article appearing
some 3 ½ months prior to trial.  The court
finds that, at the very least, Williams has
failed to satisfy the prejudice prong of the
*Strickland* test as to the contention asserted
in these two grounds."

(C.R.676-78.)  We agree with the circuit court's findings
and adopt them as part of this opinion.  Therefore, the
appellant is not entitled to relief on this claim.

783 So. 2d at 130-132.

On direct appeal, the Alabama Court of Criminal Appeals
specifically noted that there exists "no requirement that the
defendant be allowed individual *voir dire* of potential jurors."
601 So. 2d at 1067.  In evaluating counsel's failure to request
individual *voir dire*, the same court held that petitioner had
failed to meet his burden of proof under <u>Strickland</u>.  783 So. 2d at
130.

-102-

In Smith v. Phillips, 455 U.S. 209, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982), the United States Supreme Court discussed the constitutional right to an impartial jury and the remedy for an alleged violation of the right. The Court stated that it "has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." Id. at 215. Due process does not require that every instance of potential bias by a juror result in the setting aside of the jury's decision. Rather, the defendant must be given an opportunity to prove that the possible bias caused him "actual prejudice." In refusing to apply a standard to proceedings in state court different from that in federal court, the Court explained:

> Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Such determinations may properly be made at a hearing like that ordered in Remmer [v. United States, 347 U.S. 227, 74 S. Ct. 450, 98 L. Ed. 654 (1954)], and held in this case.

Id. at 217. The right to be tried by an impartial jury carries no implied prejudice; rather, actual prejudice must be proven at a hearing for that purpose. The burden of proving prejudice falls to the petitioner. See, e.g., Williams v. Taylor, 529 U.S. 420, 442, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000)(held: petitioner was

entitled to an evidentiary hearing because "[i]t may be that petitioner could establish that [a particular juror] was not impartial").

Here, petitioner was afforded an evidentiary hearing at which he had the opportunity to attempt to prove actual prejudice from the lack of sequestration, the failure of counsel to seek and conduct individual *voir dire*, or pre-trial publicity. Petitioner, both then and now, has failed to show that pre-trial publicity tainted the jury pool, or that any answers given in voir dire in any way tainted other veniremembers.[28]   The conclusions by the state court are not factually unreasonable nor are they contrary to or an unreasonable application of Supreme Court precedent. Factually, the trial record reveals no evidence that any juror was tainted by publicity, that sequestration was appropriate or necessary, or that any juror had any bias that would have been revealed only through individual *voir dire*.  The state court's conclusions are entitled to deference under 28 U.S.C. § 2254(d). Accordingly, *habeas* relief is not warranted on any of petitioner's claims that challenge the jury selection process.

---

[28]    The case cited by petitioner in support of his argument that voir dire should have been conducted on an individual basis, Irwin v. Dowd, 366 U.S. 717, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961), was based upon the perceived danger that questioning as a group would "apprise otherwise ignorant jurors of prejudicial material."  In this case, petitioner has failed to show that any such "prejudicial material" was elicited by any question or answer.

As to his specific allegation that one juror was improperly excused for cause because of her "difficulty" with the death penalty, the appellate court found no error, stating:

The appellant contends that the trial court erred by granting the state's challenge for cause of a veniremember based on her adversity to the death penalty. The following exchange took place during voir dire:

"THE COURT: ... you had indicated earlier that you had strong religious beliefs against capital punishment. Would those beliefs be so strong that if you sat on this case and you heard the evidence and you decided under the law and under the statutes that the defendant in fact was guilty beyond a reasonable doubt, would you because of your beliefs vote not guilty rather than vote guilty whereby the defendant would be placed in jeopardy of receiving capital punishment?

"[JUROR]: I wouldn't vote not guilty if I was convinced he was guilty.

"THE COURT: Let's suppose, then, at that point the verdict were to be guilty, would you refuse to vote for capital punishment, that is, the death penalty under all circumstances regardless of the evidence?

"[JUROR]: I don't think that I would try to obstruct justice. I would say yes, that I would vote for the capital punishment, but it would be very difficult for me. I think there would be an after effect, my conscience, and I would question my decision, whether I had done the right thing; but I wouldn't want to do something that was illegal against the State.

"THE COURT: So, if the evidence did convince you that under the law that this person was guilty of capital murder and it came down to voting for the death penalty, you could do that?

"[JUROR]: Well, I say that now, but when I got in there I might change my mind and not do it, and that wouldn't be right.

-105-

"THE COURT: Unfortunately people can change
their mind, but the question right now is –
and you're under oath – I have to ask you
again –
"[JUROR] I'm just going to say I wouldn't do
it.  I'm going to say no.
"THE COURT: You would not do it?
"[JUROR]: Right.
"THE COURT: In answer to my question, if I
asked you in this case if the State proved
their case beyond a reasonable doubt and to a
moral certainty in the case, and the defendant
in your mind was guilty of capital murder,
would you refuse to impose the death penalty
regardless of the evidence?
"[JUROR]: I would refuse to do it because I
would be afraid."

This veniremember was further questioned by defense
counsel and by the prosecutor, and she continued to
vacillate on whether she would be capable of voting to
impose the death penalty.

The "standard for determining when a prospective juror
may be excluded for cause because of his or her views on
capital punishment ... is whether the juror's views would
'prevent or substantially impair the performance of his
duties as a juror in accordance with his instructions and
his oath.'" *Wainwright v. Witt*, 469 U.S. 412, 424, 105
S. Ct. 844, 852, 83 L. Ed. 2d 841 (1985).  See also *Haney
v. State*, 603 So. 2d 368 (Ala. Cr. App. 1991).  In the
present case, the answers given by the prospective juror
clearly indicate the possibility that she would be unable
to perform her duties as a juror.  In reaching its
decision to exclude a juror for cause, the trial court
need not determine whether this impairment has been
demonstrated with "unmistakable clarity."  *Wainwright*,
supra 469 U.S. at 424, 105 S. Ct. at 852.  It is
sufficient if the trial court, after taking into
consideration the veniremember's answers and demeanor,
"is left with the definite impression that a prospective
juror would be unable to faithfully and impartially apply
the law."  *Wainwright*, supra at 426, 105 S. Ct. at 853.
See also *Darden v. Wainwright*, 477 U.S. 168, 106 S. Ct.
2464, 91 L. Ed. 2d 144 (1988); *Whisenhant v. State*, 555
So. 2d 219 (Ala. Cr. App.), aff'd, 555 So. 2d 235 (Ala.
1989), cert. denied, 496 U.S. 943, 110 S. Ct. 3230, 110

-106-

L. Ed. 2d 676 (1990); *Brownlee v. State*, 545 So. 2d 151
(Ala. Cr. App. 1988), aff'd, 545 So. 2d 166 (Ala. 1989),
cert. denied, 493 U.S. 874, 110 S. Ct. 208, 107 L. Ed. 2d
161 (1989).

In reviewing the answers provided by the veniremember
during her individual voir dire, we find no error in her
exclusion. Additionally, the appellant included a
footnote in his brief claiming that five other
veniremembers were "improperly questioned in such a
manner as to suggest answers which the court then used to
exclude them." However, we note that this claim is
totally unsupported by the record.

601 So. 2d at 1068-69. This final claim related to jury selection

also is due deference pursuant to Section 2254(d). The record

supports a finding that the juror was biased against the death

penalty, in that she clearly stated that she would refuse to impose

the death penalty, even if the state proved its case beyond a

reasonable doubt. See id. at 1068. The fact that she equivocated

on her stance did not make the trial court's actions in excusing

this juror unreasonable.

Even if evaluated on the merits, petitioner has failed to

present evidence of the quality or quantity that might demonstrate

any bias caused by what appears to have been scant pre-trial

publicity.[29] Petitioner also has failed to show any error that

occurred during the jury selection process. Finally, petitioner's

---

[29] Petitioner points to fewer than 20 newspaper articles and
one broadcast report, most of which were published more than a year
before the trial began. While there may have been a couple of
articles published within a few months of the trial, those were
never offered by petitioner as evidence in the state courts.

-107-

bare assertion that the questions posed to potential jurors were "too conclusory" and that the veniremembers were "unlikely" to admit biases (see Petitioner's Brief, p. 63), are insufficient to demonstrate prejudice.

Petitioner's final assertions of error in the selection of his jury are that black jurors were struck in violation of <u>Batson</u>, and that the jury pools for the grand and petit juries were selected from a list of licensed drivers, which excluded segments of the community in derogation of his constitutional rights (Claims 24, 25). These claims were first raised in the post-conviction petition. <u>See</u> Rule 32 Claims 20 and 21. Petitioner failed to raise these issues, however, when he appealed from the trial court's denial of these claims. Accordingly, Claims 24 and 25 are due to be denied because they are procedurally defaulted pursuant to <u>Esslinger v. Davis</u>, 44 F.3d 1515 (11th Cir. 1995)(failure to appeal a claim denied in a post-conviction petition is a procedural default of the claim).

For all the reasons set forth herein, petitioner's claims relating to the selection of his jury are without merit and are due to be dismissed.

## M. *Habeas* Claim 1(z) and 15 (Role Of the Victim's Widow)

Petitioner asserts at paragraphs 100-02 that his trial counsel unreasonably failed to object to the role the victim's widow was

allowed to play at trial in that she sat with the prosecuting attorney and testified to personal characteristics of the victim not relevant to guilt (Claim 1(z)).  Petitioner also asserts at paragraph 175 a substantive claim that the trial court erred in allowing evidence of the victim's character and victim impact to be admitted (Claim 15).  The issue of admissibility of the widow's testimony first was raised on direct appeal.  See Appeal Claim 13(b).  On review, the Alabama Court of Criminal Appeals stated:

> The appellant further argues that the trial court erred in allowing the victim's widow to testify in the guilt phase of the trial.  Her testimony consisted of identifying the camper truck that the victim was driving, identifying certain items of evidence, and testifying as to the victim's habits.  He contends that this testimony violates the United States Supreme Court holdings in *Booth* and *South Carolina v. Gathers*, 490 U.S. 805, 109 S. Ct. 2207, 104 L. Ed. 2d 876 (1989).  As the Supreme Court held in each of these cases, evidence concerning victim impact is inadmissible in the sentencing phase of a capital trial.  This is so because, "Our capital cases have consistently recognized that '[f]or purposes of imposing the death penalty ... [the defendant's] punishment must be tailored to his personal responsibility and moral guilt.'" *Gathers*, 490 U.S. at 810, 109 S. Ct. at 2210.  As the state correctly argues in its brief, the rulings of these cases has been limited to circumstances arising in the sentencing phase of a death penalty case.  See *Pierce v. State*, 576 So. 2d 236 (Ala. Cr. App. 1990), cert. denied, 576 So. 2d 258 (Ala. 1991).  Furthermore, the evidence in no way violated the Supreme Court's holdings in *Booth* and *Gathers*.  The testimony was relevant to the state's case and was correctly received into evidence.

601 So. 2d at 1079-80.  Petitioner raised the claim as an ineffective-assistance-of-counsel claim in his Rule 32 petition and

on appeal from the denial of that petition.  See Rule 32 Appeal Claim 3(k).  The appellate court rejected the claim, holding that there was no basis for objection.  783 So. 2d at 134.

As previously discussed, the resolution of this issue reached by the Alabama courts is entitled to a presumption of correctness and deference unless it is contrary to or an unreasonable application of Supreme Court precedent.  The state courts correctly analyzed the widow's testimony in light of Booth v. Maryland, 482 U.S. 496, 107 S. Ct. 2529, 96 L. Ed. 2d 440 (1987), and South Carolina v. Gathers, 490 U.S. 805, 109 S. Ct. 2207, 104 L. Ed. 2d 876 (1989).  The courts found that the evidence did not violate the Supreme Court precedent.[30]  Petitioner has not pointed out any way in which the conclusions reached by the Court of Criminal Appeals were contrary to or an unreasonable application of Supreme Court precedent.  This court's own review of the record persuades it that the state courts' assessment of the evidence and the conclusions

_____

[30]    It should be noted that petitioner relies on Booth and Gathers to support his assertion that the widow's testimony in the guilt phase was violative of the Eighth Amendment, even though both cases limit the analysis of victim impact evidence to the sentencing phase of a capital trial.  In any event, the testimony of which petitioner complains, such as the widow's reading of an anniversary card, were elicited in response to questions designed to identify items found in the victim's truck as belonging to the victim.  That evidence was relevant and admissible.  Any comments that may have been irrelevant, such as the witness's reference to a granddaughter, certainly were not so prejudicial as to render the trial fundamentally unfair.

-110-

drawn   from   it   are   essentially   correct   and   reasonable.[31]
Accordingly,   the   claims   related   to   the   widow's   testimony   are
without merit.

###     N.  *Habeas* Claims 1(aa) and 21 (Speedy Trial)

Petitioner   asserts   at   paragraphs   106-07   that   his   counsel
rendered  ineffective  assistance  by  failing  to  assert  his  right  to
a  speedy  trial,  and,  at  paragraphs  185-87,  that  his  constitutional
rights  were  violated  because  it  took  almost  two  years  for  his  case
to  come  to  trial.   (Claims  1(aa)  and  21).)   Petitioner  first  raised
the  speedy-trial  claim  on  direct  appeal.   See  Appeal  Claim  19.   The
Alabama  Court  of  Criminal  Appeals  examined  the  claim  and  held:

> The appellant contends that he was denied his right to a
> speedy trial due to the 22-month delay between the date
> of his arrest and the date of his trial.

---

[31]    Petitioner's only argument regarding the victim's widow's
placement  at  counsel  table  references  p.  203  of  the  trial
transcript,  at  which  the  prosecutor  addresses  the  venire,
introduces  himself,  the  district  attorney,  an  assistant,  and  the
widow  as  the  people  seated  at  the  prosecutor's  table.   He  simply
states  the  widow's  name  and  explains.  "She  is  the  widow  of  John
Robert  Kirk,  the  man  who  was  killed  in  this  case.   She's  from
Gordo,  Alabama,  Pickens  County.   Mr.  Kirk  and  his  family  were  long
time  residents  of  Pickens  County.   He  happened  to  be  killed  in
Tuscaloosa  County."   This  recitation  was  merely  information
pertinent  to  the  process  of  jury  selection,  which  was  followed  by
questions  about  whether  any  member  of  the  venire  knew  or  knew  of
any  party  related  to  the  case.   Petitioner  does  not  cite  any  case
that  would  suggest  that  such  an  introduction  of  the  victim,  or  her
placement  at  counsel  table,  violated  any  of  petitioner's
constitutional rights.

In analyzing such a contention, four factors must be considered in determining whether the accused has been denied a speedy trial: the length of the delay, the reasons for the delay, the appellant's assertion of his right to a speedy trial, and the degree of prejudice to the appellant's case caused by unnecessary delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192, 33 L. Ed. 2d 101 (1972).

In the case now before us, 22 months elapsed between the date of the appellant's arrest and the date of his trial. However, such a period is not presumptively prejudicial, rather, "the length of delay that will provoke such an inquiry is necessarily dependent upon the particular circumstances of the case." *Barker*, at 530-31, 92 S. Ct. at 2191-92. See also *United States v. Herman*, 576 F.2d 1139 (5th Cir. 1978)(22-month delay not unduly arduous); *Kelley v. State*, 568 So. 2d 405 (Ala. Cr. App. 1990)(15-month delay deemed not excessive under the circumstances); *Smelley v. State*, 564 So. 2d 74 (Ala. Cr. App.), cert. denied, 564 So. 2d 89 (Ala. 1990)(28-month delay did not warrant reversal).

"Although the length of the delay has been said to trigger the examination of the remaining factors, most courts do not analyze a speedy trial argument without taking into account all four factors discussed in *Barker*." *Goodson v. State*, 588 So. 2d 509, 511 (Ala. Cr. App. 1991).   We now look to the reasons for the aforementioned delay.  In his brief, the appellant claims that he caused none of the delay.  However, the record clearly contradicts this claim.  The pretrial history of this case is as follows:

> January 25, 1988 – Appellant arrested for escape from SIR program.
> January 27, 1988 – Capital warrant issued for appellant.
> April 29, 1988 – Appellant indicted by Tuscaloosa County grand jury for murder during first degree robbery.
> July 20, 1988 – Appellant files a motion to continue arraignment.  Motion granted.
> August 19, 1988 – Appellant arraigned, at which time he pleaded not guilty.  Appellant petitioned for psychiatric evaluation to determine his competency to stand trial.

> Petition granted.   Appellant ordered to be
> admitted to Taylor Hardin Secure Medical
> Facility as bed space became available.
> November 9, 1988 - Appellant admitted to
> Taylor Hardin.
> December 23, 1988 - Appellant released from
> Taylor Hardin.
> January 25, 1989 - Report from Taylor Hardin
> submitted to the trial court.
> February 1, 1989 - Pretrial conference, Trial
> set for April 3, 1989.
> February 9, 1989 - Appellant files a plethora
> of motions and requests an evidentiary hearing
> on many of them.
> March 9, 1989 - Hearing on previously filed
> motions.   Appellant announces his intent to
> file for a continuance of April 3, trial date.
> The state opposes the granting of a
> continuance and announces that it is ready for
> trial.
> March 10, 1989 - Appellant files motion for
> continuance.  Motion granted.
> May 23, 1989 - Appellant files motion for
> continuance because one of his attorneys was
> injured in an automobile accident.   Motion
> granted.
> August 8, 1989 - Pretrial hearing.
> November 27, 1989 - Trial begins.

This court has previously held that, "[d]elays occasioned
by the defendant or on his behalf are excluded from the
length of delay and are heavily counted against the
defendant in applying the balancing test of *Barker*."
*Walker v. State*, 386 So. 2d 762, 763 (Ala. Cr. App.),
cert. denied, 386 So. 2d 765 (Ala. 1980).

Although the appellant claims in his brief that he
asserted his right to a speedy trial, a review of the
record fails to support his claim.  We find no evidence
that the appellant either demanded or made any attempt to
obtain an earlier trial.  This point, coupled with the
fact that the appellant is largely responsible for the
delay of his trial, leads us to conclude that the
appellant was not denied his right to a speedy trial.

601 So. 2d at 1066-67.

In his post-conviction proceeding, petitioner challenged his attorney's performance for failing to secure speedy trial.  See Rule 32 Appeal Claim 23(jj).  The appellate court determined that any delay in the trial date was sought by petitioner or on his behalf, and thus was caused by petitioner.  See 783 So. 2d at 132.

Petitioner contends that, because there was a delay of almost two years between his indictment on the capital murder charge and his trial, witnesses and evidence became unavailable.  However, the only witness that petitioner specifies was unavailable to testify was Ms. Wilkins, petitioner's aunt, who acted as an adoptive mother to him.  There is no allegation that Wilkins had any knowledge of the facts of the crime, only that she could have testified as to petitioner's difficult childhood.  Accordingly, there is no evidence or argument that the delay impaired the fairness of the guilt phase of the trial — only that petitioner lost evidence that might have been presented at the penalty phase as evidence of mitigating circumstances.  At the penalty phase, the attorneys' presentation of mitigation evidence included evidence of his childhood and the deprivation he suffered.  Essentially, Wilkins' testimony would have been cumulative, and the petitioner did not suffer any prejudice from the absence of Wilkins' testimony.  For that reason alone, the ineffective-assistance claim relating to the delay in trial is due to be denied.  See Strickland v. Washington, 466 U.S. 668,  104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Furthermore, petitioner has not contested that any of the delays identified by the Alabama Court of Criminal Appeals as being sought by petitioner through his attorneys, were, in fact, *not* sought by or approved by petitioner.  Put another way, petitioner has failed to demonstrate that he ever asserted his right to a speedy trial before trial.  For all of these reasons, both the substantive speedy-trial claim and the related claim of ineffective assistance are due to be denied.

## O.  *Habeas* Claim 1(bb)(Failure To Preserve Issues For Appeal)

Petitioner asserts at paragraph 161 that his counsel at trial unreasonably failed to make objections to numerous defects in the trial, which resulted in the application of the "plain error" standard of review on appeal (Claim 1(bb)).  If the objections had been made at trial, they would have been sustained, petitioner argues.  Because no objection was made, however, the claims on appeal were dismissed under the stringent "plain error" review.  Petitioner did not raise this claim on appeal or in his Rule 32 petition in the trial court.  He raised it for the first time in the appeal from the denial of post-conviction relief.  See Rule 32 Appeal Claim 6.

The Alabama Court of Criminal Appeals rejected the claim as procedurally barred because it was not presented in the circuit court below.  See 783 So. 2d at 133.  Accordingly, the last court

to review this claim has clearly stated that the claim was procedurally defaulted. Petitioner has made no showing of cause and prejudice, or of a fundamental miscarraige of justice, to avoid the default; therefore, petitioner is entitled to no relief. Harris v. Reed, 489 U.S. 255, 263, 109 S. Ct. 1038, 103 L. Ed. 2d 308, 317 (1989).

### P. *Habeas* Claim 1(dd)(Failure To Object To Gunshot Evidence)

Petitioner's final claim of ineffective assistance is set forth at paragraphs 110-12 and alleges that his attorneys should have objected to testimony from a medical examiner who said the angle of the victim's gunshot wound was consistent with the victim being shot while on his knees or lying down. This claim was not raised on direct appeal, and was not included in the Rule 32 petition. It has never been presented to the state courts.[32] Accordingly, petitioner is not entitled to any relief on this claim in the instant action. See Smith v. Jones, 256 F.3d 1135 (11th Cir. 2001).

Petitioner's Claim 1(dd) is due to be dismissed as procedurally defaulted because he failed to raise this specific claim of ineffective assistance of counsel in the state court in his Rule 32 petition. The mere fact that other claims of

---

[32] Petitioner concedes that this claim was first raised in his amended *habeas* petition. (Petitioner's Brief, p. 75 n. 14).

ineffective assistance were raised in the Rule 32 petition is not enough to exhaust this claim.    The Eleventh Circuit Court of Appeals has held that to allow a petitioner "to allege a single instance of ineffective assistance in his state post-conviction proceedings and then proceed to federal court to allege additional instances would be contrary to the state's 'full and fair opportunity to address the claim on the merits.'"   <u>Footman v. Singletary</u>, 978 F.2d 1207, 1211 (11th Cir. 1992).   Presentation of the claim in state court now is barred by Alabama's successive petitions rule, found at Rule 32.2(b) of the Alabama Rules of Criminal Procedure, and it would be untimely under Rule 32.2(c). Petitioner has not shown cause and prejudice or a fundamental miscarriage of justice to excuse these default.  Claim 1(dd) is due to be dismissed.


###    Q.   *Habeas* <u>Claim 2 (Alabama's Inadequate Funding For Defense Of Capital Cases</u>

In relation to the quality of the work of his defense counsel at trial, petitioner further alleges at paragraphs 108-109 that, because Alabama provides inadequate funding for the compensation of defense attorneys and their expenses in capital trials, he received ineffective assistance of counsel (Claim 2).  This claim first was raised in his appeal from the denial of his Rule 32 petition. <u>See</u> Rule 32 Appeal Claim 5.   The Alabama Court of Criminal Appeals

denied the claim on grounds that it had not been raised in the original Rule 32 petition or the amended petition, and thus was not properly before the court.  <u>See</u> 783 So. 2d at 132.  Accordingly, the last state court to examine the claim clearly decided that the claim was procedurally defaulted, and petitioner is not now entitled to any relief on that claim.  <u>Harris v. Reed</u>, 489 U.S. 255, 263, 109 S. Ct. 1038, 103 L. Ed. 2d 308, 317 (1989).[33]

But even if not procedurally defaulted, it fails to state a claim for *habeas* relief.  Under the <u>Strickland</u> standard, a petitioner alleging ineffective assistance of counsel must identify particular errors or deficiencies in counsel's representation, proving how those errors and deficiencies cause actual prejudice to the defense.  Here, petitioner has made no attempt to link particular errors, deficiencies, or problems with his defense to a lack of funding for counsel.  Even though one might assume that the limitation of funding for counsel in capital cases causes real problems, an assumption is not enough to prove a constitutional violation.  Petitioner must allege and show that some specific

---

[33]    Even if this claim were due to be examined on the merits, which it is not, it would fail because petitioner alleges only generally that inadequate pay results in inadequate representation. Petitioner does not offer any evidence that his representation at this trial was actually inadequate because of the state's compensation scheme.  In fact, both his attorneys and the investigator have testified that they worked more hours than they could be compensated for.  Petitioner urges this court essentially to conclude that any attorney who works *pro bono* <u>therefore</u> provides ineffective assistance of counsel.

-118-

shortcoming in counsel's representation of him was directly attributable to a lack of funding. That has not been done in this case. Many of petitioner's complaints, such as counsel's failure to object, could not have been cured by funding. Moreover, it is undisputed that counsel performed work for which they were not paid; consequently, it cannot be argued that counsel declined to work on petitioner's behalf when the funding for the defense was depleted. Given the strong presumption of competence afforded counsel under Strickland, the court cannot simply assume that inadequate defense funding actually produced a constitutionally ineffective performance by counsel. The issue is not what counsel could have done if they were given greater or unlimited funding; rather, it is whether the limitation on funds sank their representation below a constitutional minimum. Aside from the general complaint that funding was inadequate, there is an insufficient showing by petitioner that inadequate funding produced an ineffective performance by counsel. No relief is warranted on this claim.

### R.  *Habeas* Claims 3(a) and (b) (Failure To Present Evidence Of Mitigating Circumstances)

Petitioner also asserts that he received ineffective assistance of counsel at the penalty phase of his trial. At paragraphs 117-32, petitioner asserts that his counsel unreasonably

failed to investigate and present mitigating evidence, including evidence of petitioner's psychological profile.[34]    Petitioner complains that counsel should have discovered and presented witnesses who could have testified about his difficult childhood and his learning problems.    He specifically names: (1) Herbert Echoles, who could have testified that petitioner was regularly whipped with belts and extension cords by his stepfather and that petitioner was "slow" in school; (2) Deborah Grenshaw, who could have testified that petitioner frequently was locked out of his home as an adolescent and was forced to live on the streets for days at a time; (3) Laura Williams, who could have testified about the lack of adult involvement in petitioner's childhood; and (4) Jesse Hill, petitioner's stepfather, who allegedly whipped petitioner with belts and cords.[35]    Next, petitioner asserts that counsel failed to seek the assistance of an expert psychologist to investigate mitigating mental health issues, testify about the effects of drug and alcohol abuse and an "impoverished and abusive

---

[34]    Petitioner further asserts that the presentation of evidence of mitigation was constitutionally inadequate in light of more recent Supreme Court pronouncements on the issue of a defendant's intellectual abilities and psychological makeup in Wiggins v. Smith, 539 U.S. 510, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003).    See Petitioner's Supplemental Memorandum, pp. 2-7.

[35]    Petitioner also complains that Sumrall failed to access Department of Corrections records on petitioner, but petitioner has not described any information contained in those records that might have been beneficial in proving mitigating circumstances.

environment," and advise counsel about how to rebut testimony from the state's mental health experts.[36]

Petitioner first raised these claims in the context of his post-conviction petition. <u>See</u> Rule 32 Claims 23(i) and (m); Rule 32 Appeal Claims 2(a) and (b). In reviewing the claim about investigating and presenting mitigating evidence, the Alabama Court of Criminal Appeals stated:

> First, the appellant contends that his attorneys rendered ineffective assistance because they allegedly did not

---

[36]   Petitioner has moved this court for approval of funds for the appointment of a psychologist or psychiatrist to examine petitioner in connection with the instant petition. He asserts that expert assistance would support petitioner's claims that he received ineffective assistance of counsel with regard to the presentation and rebuttal of evidence relating to petitioner's psychological condition (court document #27). Petitioner's motion is due to be and hereby is DENIED. The assistance of a psychologist or psychiatrist at this stage of the litigation would not change the resolution of the petitioner's instant claim that his attorneys rendered ineffective assistance in failing to present the testimony of a psychologist or psychiatrist at trial. As discussed in this section, the state courts adjudicated the issue of the attorneys' competence, appropriately applying <u>Strickland</u>, and found that the petitioner failed to meet either prong of the <u>Strickland</u> test. The state courts determined that counsel made a reasoned, informed decision to present the evidence through Sumrall instead of through another professional. Such tactical decisions are "virtually unassailable." <u>Williams v. Head</u>, 185 F. 3d 1223, 1242 (11th Cir. 1999). The finding that Bivens made a defensible strategic choice was supported by the testimony of Bivens (Rule 32 Hearing Transcript, p. 50), and thus was not an unreasonable application of the facts. Accordingly, even if the examination of a psychologist or psychiatrist now would demonstrate that counsel's strategic choice was "wrong" or that another expert would have provided more favorable testimony, counsel's performance still withstands scrutiny under the highly deferential review of strategic choices mandated by <u>Strickland</u>, and required by § 2254(d).

investigate and present sufficient mitigating evidence
during the penalty phase of his trial.  Specifically, he
contends that counsel should have called witnesses who
could have testified about his background and upbringing,
including the "personal hardships and severe
deprivations" he suffered. (Appellant's brief at p. 44.)
In *Daniels v. State*, 650 So. 2d 544, 568-70 (Ala. Crim.
App. 1994), cert. denied, 514 U.S. 1024, 115 S. Ct. 1375,
131 L. Ed. 2d 230 (1995), we stated the following
regarding a claim that trial counsel had rendered
ineffective assistance during the penalty phase of a
capital murder trial:

> "In determining whether Haas was ineffective
> at original sentencing, ... we recognize that
> the

> "'two-pronged *Strickland* analysis applies
> whether the ineffectiveness complained of
> occurred in the defendant's trial or in a
> subsequent adversarial sentencing proceeding.
> However, in a challenge to the imposition of a
> death sentence, the prejudice prong of the
> *Strickland* inquiry focuses on whether "the
> sentencer ... would have concluded that the
> balance of aggravating and mitigating
> circumstances did not warrant death."'

> "*Stevens v. Zant*, 968 F.2d 1076, 1081 (11th
> Cir. 1992)(citation omitted), cert. denied,
> 507 U.S. 929, 113 S. Ct. 1306, 122 L. Ed. 2d
> 695 (1993).  We also recognize that

> "'[w]hile "[i]t should be beyond cavil that an
> attorney who fails altogether to make any
> preparations for the penalty phase of a
> capital murder trial deprives his client of
> reasonably effective assistance of counsel by
> any objective standard of reasonableness," *see*
> *Blake v. Kemp*, 758 F.2d 523, 533 (11th Cir.
> 1985), it is unclear how detailed an
> investigation is necessary to provide a
> defendant with the effective assistance of
> counsel.  *Strickland* only requires that
> counsel's actions fall within the wide
> spectrum of what can be considered reasonable
> assistance of counsel.'

-122-

"*White v. Singletary*, 972 F.2d 1218, 1224 (11th Cir. 1992).  The principles regarding an attorney's duty to conduct an investigation into mitigating evidence have been summarized as follows:

"'An attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence. *Thompson v. Wainwright*, 787 F.2d 1447, 1451 (11th Cir. 1986).  First, it must be determined whether a reasonable investigation should have uncovered such mitigating evidence.  If so, then a determination must be made whether the failure to put this evidence before the jury was a tactical choice by trial counsel. If so, such a choice must be given a strong presumption of correctness, and the inquiry is generally at an end.  *Funchess v. Wainwright*, 772 F.2d 683, 689-90 (11th Cir. 1985).  If, however, the failure to present the mitigating evidence was an oversight, and not a tactical decision, then a harmlessness review must be made to determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Thus, it must be determined that defendant suffered actual prejudice due to the ineffectiveness of his trial counsel before relief will be granted.'

"*Middleton v. Dugger*, 849 F.2d 491, 493 (11th Cir. 1988).

"Applying the foregoing principles to the issue of whether Haas provided effective assistance of counsel at original sentencing, we conclude that the appellant's claim is without merit.  Although the defense called only one witness at the sentencing hearing, that witness was Mrs. Hebert, the appellant's mother, who pleaded for the appellant's life. Mrs. Hebert had retained Haas, conferred with him at length, paid all his trial fees, and, by the time of sentencing, had exhausted her funds.  The circuit court's sentencing order

stated that 'it is apparent to the court that [Mrs. Hebert] was devoted to [the appellant].'

"Since Haas had spoken with Mrs. Hebert about the appellant and had observed by her words and actions that she appeared to be 'devoted' to the appellant, we cannot fault Haas for failing to discover the appellant's 'traumatic' childhood, in which, according to later testimony by Dr. Herlihy, Mrs. Hebert's 'emotional rejection' of her son played a large part. Compare *Bertolotti v. Dugger*, 883 F.2d 1503, 1520 (11th Cir. 1989)(defense counsel held to have provided effective assistance on claim that counsel overlooked or failed to investigate evidence of defendant's traumatic childhood, where counsel interviewed defendant's parents), cert. denied, 497 U.S. 1032, 110 S. Ct. 3296, 111 L. Ed. 2d 804 (1990).  See also *Beets v. Collins*, 986 F.2d 1478, 1488-89 (5th Cir. 1993)(although counsel did not 'conduct a thorough investigation of [the defendant's] medical, mental, and psychological history,' which would have revealed that the defendant 'was raised in abject poverty, experienced a debilitating hearing loss, was afflicted with learning disabilities, had received head injuries as a child, and suffers from battered woman syndrome,' the court observed that the defendant never gave her attorney 'any hint that she had been abused by previous husbands or boyfriends.  Neither [the defendant] nor any other member of her family ever conveyed to [the attorney] any information giving him reason to believe that she had a history of being physically abused.'), rehearing granted, 998 F.2d 253 (5th Cir. 1993); *Cantu v. Collins*, 967 F.2d 1006, 1016 (5th Cir. 1992)(despite fact that counsel failed to present evidence of defendant's 'low IQ, emotional immaturity, troubled youth, trauma as a result of his parents' divorce, and appearance of neglect,' court found that counsel had 'thoroughly investigated these claims, consulting with his client as well as [client's] father and brother for possible mitigating evidence,' and

-124-

the claims were not supported in fact), cert. denied, 509 U.S. 926, 113 S. Ct. 3045, 125 L. Ed. 2d 730 (1993); *Wilkerson v. Collins*, 950 F.2d 1054, 1064-65 (5th Cir. 1992) (although attorney failed to discover or develop mitigating evidence that defendant had a 'deprived family background,' and psychological and mental 'limitations,' the court observed that 'trial counsel interviewed [the defendant], his mother, and other relatives. Neither [the defendant] nor his relatives were able to supply the names of potential defense witnesses. Investigation did not reveal reason to suspect that [the defendant's] mental capacity was in any fashion impaired.'), cert. denied, 509 U.S. 921, 113 S. Ct. 3035, 125 L. Ed. 2d 722 (1993); *Thompson v. State*, 581 So. 2d 1216, 1238 (Ala. Cr. App. 1991)(upholding circuit court's finding that counsel, who presented only the testimony of defendant's mother at sentencing, was not ineffective for failing to present evidence of the defendant's violent family background, addiction and substance abuse), cert. denied, 502 U.S. 1030, 112 S. Ct. 868, 116 L. Ed. 2d 774 (1992).

"We hold that Haas was not ineffective at the original sentencing proceeding."

650 So. 2d at 568-70 (emphasis omitted). Also, counsel does not necessarily render ineffective assistance simply because he does not present all possible mitigating evidence. "Although the failure to conduct a reasonable investigation of possible mitigating evidence may constitute ineffective assistance of counsel, 'counsel may make a reasonable strategic judgment to present less than all possible available evidence in mitigation.' *Stanley v. Zant*, 697 F.2d 955, 965 (11th Cir. 1983), 467 U.S. 1219, 104 S. Ct. 2667, 81 L. Ed. 2d 372 (1984)." *Lundy v. State*, 568 So. 2d 399, 403 (Ala. Crim. App. 1990).

"When a decision to not put on certain mitigating evidence is based on a 'strategic choice,' courts have always found no ineffective performance. *Moore v. Maggio*, 740

F.2d 308 (5th Cir. 1984), cert. denied, 472
U.S. 1032, 105 S. Ct. 3514, 87 L. Ed. 2d 643
(1985); *Lowenfield v. Phelps*, 817 F.2d 285 (5th
Cir. 1987), aff'd, 484 U.S. 231, 108 S. Ct.
546, 98 L. Ed. 2d 568 (1988).  No two lawyers
would try a case exactly the same way.

"We cannot say that counsel's performance is
deficient because he failed to call more
witnesses at the sentencing phase.  'The
decision not to call a particular witness is
usually a tactical decision not constituting
ineffective assistance of counsel.' *Oliver v.
State*, 435 So. 2d 207, 208 (Ala. Cr. App.
1983).  At the hearing on the Rule 32
petition, the appellant's mother, two of his
aunts, an uncle, and several old friends
offered character testimony.  Most of these
witnesses did not have contact with the
appellant near the time of the murder.  There
has never been a case where additional
witnesses could not have been called.  The
appellant presented relatives and personal
friends who, upon interview, were found to
testify on his behalf.  We refuse to set a
standard that a court may be reversed because
it did not hear unoffered testimony from still
more friends and relatives.  We also refuse to
say that a member of the bar is guilty of
ineffectiveness for not calling every witness
and friend who was willing to testify.  To
hold  otherwise  would  clog  an  already
overburdened  system  with  repetitious
testimony.  The appellant has failed to
satisfy either prong of the *Strickland* test."

*State v. Tarver*, 629 So. 2d 14, 21 (Ala. Crim. App.
1993), cert. denied, 511 U.S. 1078, 114 S. Ct. 1664, 128
L. Ed. 2d 380 (1994).

"With regard to McKinnon's representation of
Morrison  at  the  punishment-fixing  and
sentencing phases of his trial, we find that
the observations of the court in *Clark v.
Dugger*, 834 F.2d 1561, 1568 (11th Cir. 1987),
are appropriate:

> "'The failure to conduct a reasonable
> investigation of possible mitigating evidence
> may render counsel's assistance ineffective.
> *Lightbourne v. Dugger*, 829 F.2d 1012, 1025
> (11th Cir. 1987); *Thompson v. Wainwright*, 787
> F.2d 1447, 1450 (11th Cir. 1986), cert. denied,
> 481 U.S. 1042, 107 S. Ct. 1986, 95 L. Ed. 2d
> 825 (1987). "After a sufficient investi-
> gation, however, 'counsel may make a
> reasonable strategic judgment to present less
> than all possible available evidence in
> mitigation.'" *Lightbourne*, 829 F.2d at 1025
> (quoting *Mitchell v. Kemp*, 762 F.2d 886, 889
> (11th Cir. 1985), cert. denied, 483 U.S. 1026,
> 107 S. Ct. 3248, 97 L. Ed. 2d 774 (1987) and
> *Stanley v. Zant*, 697 F.2d 955, 965 (11th Cir.
> 1983), cert. denied, sub nom. [*Stanley v.
> Kemp*,] 467 U.S. 1219, 104 S. Ct. 2667, 81 L.
> Ed. 2d 372 (1984)). In essence, "[c]ounsel
> has no absolute duty to present mitigating
> character evidence." *Id*. (quoting *Mitchell*,
> 762 F.2d at 889). [Counsel] conducted a
> reasonable investigation to determine the
> availability of appropriate mitigating
> evidence and simply made a tactical decision
> to not present some of the available
> mitigating evidence. In this circuit,
> [counsel's] decision is "accorded a strong
> presumption of correctness which is 'virtually
> unchallengeable.'" *Id*. (quoting *Sinclair v.
> Wainwright*, 814 F.2d 1516, 1519 (11th Cir.
> 1987) and *Strickland v. Washington*, 466 U.S.
> 668, 690, 104 S. Ct. 2052, 2066, 80 L. Ed. 2d
> 674 (1984)). Given the alternatives ...
> faced, [counsel's] handling of the penalty
> phase was not unreasonable. *See Stanley*, 697
> F.2d at 958-70. We therefore conclude that
> there has been no showing of ineffective
> assistance nor prejudice to defendant in the
> way trial counsel prepared and tried [this]
> case.'"

*Morrison v. State*, 551 So. 2d 435, 445 (Ala. Crim. App.
1989), cert. denied, 495 U.S. 911, 110 S. Ct. 1938, 109
L. Ed. 2d 301 (1990)(alterations in original).

"We find that the holding of *Fleming v. Kemp*, 748 F.2d 1435, 1452 (11th Cir. 1984), cert. denied, 475 U.S. 1058, 106 S. Ct. 1286, 89 L. Ed. 2d 593 (1986), is applicable here:

"'In summary, we are not persuaded by petitioner's argument that ... [defense counsel] rendered him ineffective assistance of counsel. Petitioner's examples of professional dereliction dissolve away under close scrutiny, leaving at best a handful of colorable claims. A defense attorney is not ineffective solely because his client is sentenced to death. "Intrusive post-trial inquiry into attorney performance," such as that which has been required in this case, may "dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client." *Strickland v. Washington*, [466] U.S. at [690], 104 S. Ct. at 2066. Counsel's performance, here, ensured a fundamentally "fair trial" which "produced a just result." *Id.* at [686], 104 S. Ct. at 2064. There is no reason to set aside petitioner's conviction or his penalty on account of the representation he received.'"

*Bell v. State*, 518 So. 2d 840, 847 (Ala. Crim. App. 1987), cert. denied, 486 U.S. 1036, 108 S. Ct. 2024, 100 L. Ed. 2d 611 (1988). Finally, the appellant bears a heavy burden of proof when he claims that his counsel rendered ineffective assistance.

"Further, we cannot say that the appellant suffered any prejudice based on counsel's performance because he failed to demonstrate any evidence of mitigation. Prejudice cannot merely be alleged; it must be affirmatively proved. *Duren v. State*, 590 So. 2d 360 (Ala. Crim. App. 1990). Thus, the appellant has not shown that there is a reasonable probability that the outcome of his trial would have been different, but for trial counsel's performance. *Baldwin [v. State*, 539 So. 2d 1103 (Ala. Cr. App. 1988)], *Thompson v. State*, 581 So. 2d 1216 (Ala. Crim. App. 1991), cert.

denied, 502 U.S. 1030, 112 S. Ct. 868, 116 L.
Ed. 2d 774 (1992)."

*Brooks v. State*, 695 So. 2d 176, 182 (Ala. Crim. App.
1996), aff'd, 695 So. 2d 184 (Ala.), cert. denied, 522
U.S. 893, 118 S. Ct. 233, 139 L. Ed. 2d 164 (1997).

The record from the appellant's direct appeal shows that
Dr. Raymond O. Sumrall testified before the jury during
the penalty-phase proceedings.  Dr. Sumrall, who was a
professor at the School of Social Work at the University
of Alabama and an associate professor with the
University's Department of Criminal Justice, testified
that he spent ten hours interviewing the appellant and
that he had reviewed the appellant's background.  He
testified that the appellant's mother deserted him when
he was very young; that he lived with his maternal
grandmother; that, at age seven, when his maternal
grandmother died, he moved in with his aunt; that he did
not have a stable home environment; that he had not had
any relationships with significant adult and stable women
in his life; that he did not have a relationship with his
father because his father left when the appellant was two
years old; that, from the ages of nine to twelve, "he was
pretty much a street kid who came and went without very
much supervision from anybody" (Trial R. 1026); that he
could not discipline himself; and that he had been
extensively involved in the use of drugs and other
substances since he was sixteen.  Dr. Sumrall also
testified that he had not observed any pattern of
behavior in the appellant that was assaultive or violent
and that committing murder was not consistent with the
appellant's prior behavior, which involved only property
offenses.

There was also testimony that the appellant had been
evaluated at the Taylor Hardin Secure Medical Facility
("Taylor Hardin") by several doctors.  Using that
evaluation, Dr. Bernard E. Bryant, a psychiatrist,
testified that the appellant had an antisocial
personality and that he showed remorse about the offense.

Finally, the trial court held a separate bench sentencing
hearing after the jury had returned its recommendation
and after the presentence investigation had been
completed.  At this hearing, Reverend Charles Hunter
testified that he had known the appellant since the

appellant was a child and that he was not a violent
person.  The appellant also testified at the hearing that
he was the type of person who liked to help people and
"look out" for people.  He further testified that he did
not have a history of violence and that he had never
previously been convicted of a violent crime.

When addressing this claim, the circuit court made the
following findings:

> "In his Post-Hearing Brief, Williams contends
> that testimony could have been adduced by
> defense counsel through Herbert Echols, Debra
> Grenshaw (spelled 'Grinshaw' in the transcript
> of the evidentiary hearing), Jesse Hill [the
> appellant's stepfather] and/or Laura Williams
> to paint a picture of Luther Williams'
> deprived and impoverished childhood.  There is
> some question as to Mr. Echols' accessibility
> and availability during the period of [trial
> counsel's] representation of Williams,
> inasmuch as Mr. Echols testified at the
> evidentiary hearing that he was living in
> Detroit from 1988 to 1990, and even his
> brother did not really know how to find him,
> because at one point in time he was homeless.
> (EH 145).  Nonetheless, the testimony elicited
> from him and from the other aforementioned
> witnesses at the evidentiary hearing related
> to information essentially cumulative to that
> provided the jury by Dr. Sumrall.  Williams
> argues in his Post-Hearing Brief that those
> witnesses could have acquainted the jury with
> the fact that his mother had deserted him and
> his siblings when he was still very young;
> that his father likewise had abandoned him;
> that he thereafter was raised by Laura
> Wilkins; and that he was often locked out of
> her house and forced to fend for himself.  In
> his testimony at the evidentiary hearing,
> Luther Williams explained that when Ms.
> Wilkins would lock him out, for two to three
> days at a time, he would live 'over [at] other
> friends' houses.'  (EH 189-90).  The conten-
> tion is made in the Post-Hearing Brief that
> testimony could have been presented through
> Mr. Echols that Luther, along with Mr. Echols,

-130-

was regularly whipped by Mr. Hill with
switches, belts, and extension cords.
Williams himself testified at the evidentiary
hearing that he had a good relationship with
Mr. Hill when he didn't whip him, and Luther
still loved him. (EH 190). Dr. Sumrall put
before the jury that Luther Williams' 'mother
deserted him at a very young age' and that he
lived with a maternal grandmother for a while
but that she died when he was seven, leaving
Luther with an aunt who apparently adopted him
when he was about nine; that 'from his birth
to age nine he had no stable environment';
that he had 'no relationship with significant
adult and stable women in his life'; that he
had no relationship with a significant father
figure in his life'; that his father had left
him when he was only two years old; and that
from about nine to twelve years of age 'he was
pretty much a street kid who came and went
without very much supervision from anybody.'
(R. 1025-26). When Williams' present counsel
called Jesse Hill to the stand at the
evidentiary hearing, he was not asked any
questions concerning any alleged mistreatment
of Luther by him. Further, Mr. Hill was asked
virtually no questions at that hearing
concerning Luther Williams' impoverished or
deprived background, other than concerning the
undisputed fact that Luther's mother and
father were not involved in his life after his
early years. (EH 163). With respect to the
argument made in the post-hearing brief that
use of a psychologist, such as Dr. Barbara
Tarkin, could have paved the way for
presentation of significant non-statutory
mitigation evidence, the testimony she
presented was not in disagreement with that of
Dr. Sumrall or the State's penalty-phase
expert, Dr. Bernard E. Bryant. The contention
is made in the post-hearing brief that 'Dr.
Tarkin, or another qualified psychologist,
could have offered an opinion, consistent with
that of Taylor Hardin's psychiatrist, that Mr.
Williams' condition was a condition that
developed in all probability by virtue of his
very early childhood deprivation.' (PHB, p.

17).   Dr. Bryant, who testified that he was
employed at Taylor Hardin from April 1 of 1986
through August 31 of 1989, opined that
Williams had an antisocial personality (R.
108).  He explained that it is a 'character-
ological or personality' disorder developed
during a person's formative years, of ages '2,
3, 6, 7, 8 years old,' whereby 'the person has
ended up with this personality.'   (R. 1082).
Dr.  Bryant  acknowledged  during  cross-
examination  by  [trial  counsel]  that  an
unstable family could, if there were not a
proper male or female role model, contribute
to a person having antisocial characteristics.
(R.  1097).   He  further  acknowledged  that
'substance abuse does exacerbate' (R. 1098).

"The court does not find that the failure to
utilize  the  witnesses  now  suggested  by
Williams constituted ineffective assistance of
counsel....   The  pertinent  information  was
presented to the jury through Dr. Sumrall,
without the risk being run of possibly harmful
information  being  elicited  from  those
witnesses on cross-examination.  Furthermore,
even  if  [trial  counsel's]  preparation  and
presentation were deficient in this regard,
Williams has failed to show the requisite
second prong of prejudice.  He has not met the
*Strickland*  test  of  showing  a  reasonable
probability  that,  absent  the  error  in
question, the sentencer would have concluded
that the balance of aggravating and mitigating
circumstances did not warrant death; he has
not  shown  a  probability  sufficient  to
undermine confidence in the outcome."

(C.R.  684-87.)   We  agree  with  the  circuit  court's
findings and adopt them as part of this opinion.   In
addition, we note that the trial court found, as
nonstatutory mitigating circumstances, that the appellant
had an antisocial personality, that he did not have a
significant  prior  history  of  assaultive  or  violent
conduct, that he had not had a stable family environment
during his formative years, and that he had extensively
abused alcohol and drugs since he was about 16 years old.
(Trial R. 1433).   For  the  above-stated  reasons,  the

appellant has not shown that counsel rendered ineffective
assistance in the preparation and presentation of
mitigating evidence. *See Strickland*, supra.

783 So. 2d at 115-21.  The appellate court further stated, in
relation to the claim that counsel failed to present expert
psychological testimony:

> Second, the appellant contends that his attorneys
> rendered ineffective assistance because they did not seek
> the assistance of a psychologist to help present
> mitigating evidence.  The circuit court made the
> following findings regarding this claim:
>
>> "[Trial counsel's] utilization of Raymond O.
>> Sumrall was a defensible strategic choice.
>> Dr. Sumrall spent nine to ten hours
>> interviewing Williams, exclusive of any other
>> case investigation/preparation (R. 1042), and
>> he brought to his assignment, and detailed for
>> the jury, a diverse and extensive background
>> of both academic and professional credentials
>> and a wide variety of work experiences (R.
>> 1006-19).  At the time of this testimony, he
>> was a professor at the School of Social Work
>> and was also an associate professor with the
>> Department of Criminal Justice; he taught
>> courses in criminal justice, crime, and
>> delinquency; he has a Master's degree in
>> social work with an emphasis in psychiatric
>> social work; a Master's of Divinity degree
>> with an emphasis on pastoral counseling; and a
>> Ph.D.  He had worked as a chief probation
>> officer, a parole officer, and a consultant to
>> the Office of the Chief of Police of
>> Birmingham.  Such a background might well be
>> expected to more favorably impress a jury than
>> the 'ivory tower' perspective of a
>> psychologist or a psychiatrist."
>
> (C.R. 683-84.)  The circuit court also found:

> "The court finds that [trial counsel's] decision to use the services of Dr. Sumrall, rather than a psychologist, was a tactical decision within the wide range of professionally competent assistance. The court has carefully reviewed and reconsidered the testimony of the clinical psychologist who Williams put forward at the evidentiary hearing to develop support for this ground, Dr. Barbara Tarkin. She was offered as an expert in clinical psychology. (EH 285). From her review of records relating to Mr. Williams, she noted that a diagnosis of antisocial behavior had been put forth as a diagnosis, and, although she had not been asked to develop a psychological diagnosis of Mr. Williams, she included among the 'working hypotheses in my head' a diagnosis that 'Mr. Williams engaged in significant antisocial behaviors.' ... Dr. Tarkin's testimony was not inconsistent with the opinions expressed by Dr. Sumrall and Dr. Karl Kirkland. The testimony of Dr. Tarkin does not support the proposition that the use of the services of a psychologist by trial counsel, 'who could have examined [Williams] and prepared a report on his mental condition' would have developed any beneficial information. Stated another way, there is no showing of prejudice, as required by *Strickland*.

(C.R. 673-74.) We agree with the circuit court's findings and adopt them as part of this opinion. Accordingly, the appellant has not shown that his attorneys rendered ineffective assistance in this regard. *See Strickland*, supra.

783 So. 2d at 121-22.

Insofar as petitioner criticizes counsel's failure to present evidence of his traumatic childhood as a mitigating factor, the state courts concluded that evidence of petitioner's childhood was,

-134-

in fact, presented to the jury during the penalty phase through the testimony of Sumrall, a professor and licensed, certified social worker.  Sumrall interviewed Williams personally for approximately 10 hours; he reviewed mental health records, police records, and probation and parole records.  (Transcript, pp. R-1028-30, 1032, 1042, 1046.)

As the trial and appellate courts noted, Sumrall testified that petitioner was deserted by his mother at a very young age, that he was reared by a grandmother until she died when he was 7 years old, and that he then lived with an aunt.  (Transcript, p. R-1025.)  He specifically stated that petitioner had "no stable environment" as a small child, and had "no relationships with significant" women or father figures.  (Transcript, p. R-1025.)  He said petitioner had abused drugs and alcohol since age 16, and that from age 9 to 12 he was "pretty much a street kid who came and went without very much supervision from anybody."  (Transcript, p. R-1026.)

The only evidence that petitioner suggests was not presented but could have been was that of four witnesses.  The first is Herbert Echoles, who could have testified that petitioner was regularly beaten by his stepfather, was slow in school, and was picked on by others as a child because of his small stature.  (See Rule 32 Hearing Transcript, pp. 138-147.)  The other witnesses named by petitioner are Debra Grenshaw, Jesse Hill, and Laura

Williams, all of whom petitioner states could have described petitioner's deprived childhood. Grenshaw apparently could have testified that petitioner had been locked out of his house as an adolescent. Laura Williams, petitioner's step-sister, could have testified to the "lack of adult involvement" in petitioner's early life. Although petitioner does not describe what Hill might have testified to, it would appear that petitioner expected Hill to admit to having beaten petitioner as a child.

The Alabama Court of Criminal Appeals noted that there was a question as to whether Echoles was available as a witness at the time of trial because he was living in Detroit. 783 So. 2d at 120. Echoles stated at the Rule 32 hearing that he had been in Detroit from 1988-1990, and that he had been homeless for some of that time. (See Rule 32 Hearing Transcript, p. 145.) The court further noted that the proffered testimony of Grenshaw and Williams was cumulative to that given by Sumrall. Finally, petitioner has presented no evidence that Hill was available or would have testified that he was violent toward his stepson. Petitioner failed, however, to elicit any such testimony from Hill at the Rule 32 hearing. Because petitioner had an opportunity to prove the claim related to Hill's testimony in state court proceedings, he cannot offer additional evidence in support of the claim in these proceedings without showing cause and prejudice explaining his earlier failure to do so. Keeney v. Tamayo-Reyes, 504 U.S. 1, 112

-136-

S. Ct. 1715, 118 L. Ed. 2d 318 (1992).  Petitioner has not offered
any explanation for his failure to elicit this evidence from Hill
at the Rule 32 evidentiary hearing.

The claim as to all of the witnesses urged by petitioner must
fail, however.  First, this court must find that the state court's
assessment that counsel made a strategic choice not to present the
witnesses urged by petitioner was an "unreasonable application" of
the facts because there was no testimony elicited at the Rule 32
hearing that counsel made such a tactical decision.  To the
contrary, Bivens testified that he simply presented what evidence
he had, which at least suggests that he was unaware of the
potential witnesses.  (Rule 32 Hearing Transcript, p. 50).
Certainly, Bivens never described any evaluation of the proposed
testimony or any decision to avoid the potential negative
consequences of the testimony, as the state court suggests.

Even so, this court must agree with the state appellate
court's determination that petitioner has failed to show that he
was prejudiced by the absence of these witnesses.  The essential
facts to which they would have testified were presented to the jury
through Sumrall.  There is no basis upon which the court can find
that the absence of the witnesses actually prejudiced the
petitioner.  A showing of prejudice requires a finding that, if the
mitigation evidence had been presented, the sentencing authority
"would have concluded that the balance of aggravating and

-137-

mitigating circumstances did not warrant death." <u>Stevens v. Zant</u>, 968 F.2d 1076, 1081 (11th Cir. 1992), <u>cert. denied</u>, 507 U.S. 929, 113 S. Ct. 1306, 122 L. Ed. 2d 695 (1993).

The court is cognizant that evidence of violence against the defendant as a child can sometimes be used to justify a conclusion that the defendant would likely use violence against others. Even if the additional mitigating evidence had been fully presented to the court and jury during the sentencing phase, it is at least debatable, and therefore objectively reasonable, to conclude that it would not have swayed the sentencing decisions.

Other courts have noted that the type of mitigation evidence urged by petitioner is not always helpful at trial. The courts have noted that evidence of drug and alcohol abuse "often has little mitigating value and can do as much or more harm than good in the eyes of the jury." <u>Crawford v. Head</u>, 311 F.3d 1288, 1321 (11th Cir. 2002); <u>see also</u> <u>Haliburton v. Secretary for the Department of Corrections</u>, 342 F.3d 1233 (11th Cir. 2003). Because of the double-edged sword such evidence presents, counsel is given great deference in the decision whether or not to resort to it. Evidence of childhood abuse, like that of drug and alcohol abuse, often can do little good and can cause harm. For example, in <u>Haliburton</u>, the court of appeals quoted the testimony of an attorney on the difficulty of the decision to present such evidence:

> At the state evidentiary hearing, Bailey testified that he chose not to present evidence about Haliburton's abusive background in part because such evidence "can paint an appealing picture of how your client was abused and all those factors lead up to him doing what [he] did and you may convince the jury of that absolutely; but you may also convince them that, paint a picture of Frankenstein."

342 F.3d at 1244 n. 30. Although _Haliburton_ is a different case involving a different petitioner, the difficulty of deciding whether to present childhood-abuse evidence remains the same. The effect such evidence might have on the jury cannot be said to be universally favorable. That being the case, the court cannot simply assume that if counsel had presented such evidence, it would have had a mitigating effect; it might have had just the opposite effect. Thus, whether "correct" or not, the conclusion by the state courts that it would not have had a significant mitigating effect to undermine confidence in the outcome of the penalty phase cannot be said to be objectively unreasonable. Even if this court were to find that counsel acted below the acceptable standard of conduct by failing to discover and present these witnesses, petitioner's claim still would not succeed because it fails to meet the prejudice prong of _Strickland_. The issue is not whether this court might view the mitigating impact of this evidence differently, or even whether the state courts' conclusions are "correct." Rather, under § 2254(d), the question is whether the

conclusion that the mitigating impact of the potential evidence was insufficient to have compelled a different sentencing outcome is objectively unreasonable.   Because it is not, that conclusion is entitled to deference, and *habeas* relief is not warranted.

Petitioner's claims that counsel were ineffective in failing to seek the assistance of a psychologist at the penalty phase also is unavailing.   The credentials of the expert selected by the defense were impressive, and the trial court noted that the choice to call Sumrall was a "defensible strategic choice."   783 So. 2d at 121.   That conclusion is backed up by Bivens' testimony.[37]   Although in hindsight it could be asserted that petitioner might have benefitted from a psychologist, or a psychiatrist, or some other expert witness, such conjecture falls far short of the showing of prejudice required to meet the <u>Strickland</u> test.   It should be noted that Sumrall offered favorable testimony - which might not have been elicited from another expert - when he stated that petitioner

---

[37]     At the Rule 32 hearing, Bivens testified: "There was nothing to indicate anything of a mental defense for Luther and nothing that demonstrated to me that a psychiatrist or psychologist or a social worker would have any better or more standing with a jury. So, a social worker would do just as well. The point was to get somebody who could – I could depend on to assist with the preparation of the penalty phase and to provide me with the information I needed.   And I felt that Ray [Sumrall] was more than adequate to do that.   I didn't think the credentials would be an issue, not with the jury."   (Rule 32 Hearing Transcript, p. 72.) This explains why counsel did not supplement the earlier motion seeking appointment of a psychologist, conduct which also forms a basis for petitioner's claim.   <u>See</u> Petitioner's Brief, p. 94.

was not "assaultive or violent."  In sum, petitioner has failed to demonstrate that his counsel were ineffective in failing to utilize a psychologist, or in choosing to present selected mitigating evidence through Dr. Sumrall.  On this issue, petitioner has failed to meet either prong of the Strickland test.  Accordingly, petitioner is not entitled to relief on Claims 3(a) and (b).

## S.   *Habeas* Claims 3(c) and 12 (Testimony Of State's Expert Regarding Future Dangerousness)

Petitioner contends at paragraphs 133-35 that he received ineffective assistance of counsel during the sentencing phase of his trial because counsel failed to object to the testimony of the state's expert psychiatrist, Dr. Bernard Bryant.  (Claim 3(c)). Similarly, he alleges at paragraphs 170-71 that the court erred in allowing Bryant to testify regarding the petitioner's future dangerousness.  (Claim 12).  Petitioner first raised the substantive issue of Bryant's testimony on direct appeal.  See Appeal Claim 10.  The Alabama Court of Criminal Appeals addressed the issue, stating:

> The appellant further argues in his supplemental brief that the trial court erred in allowing the testimony of a psychiatrist during the penalty phase of his trial. Specifically, he maintains that the testimony of the psychiatrist, which included his observations concerning the "future dangerousness" of the appellant, violated his constitutional rights. See *Estelle v. Smith*, 451 U.S. 454, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981).

-141-

Initially, we note that no objection was made to this testimony at trial.  Thus, we must evaluate the alleged defect under the plain error doctrine.  Is the defect so egregious that the fairness and integrity of the judicial proceeding has been affected?  See *Kuenzel*.

As the state notes, prior to the commencement of the trial the appellant filed a motion requesting that a psychiatrist evaluate the appellant to assist him in his defense and to aid counsel in the "sentencing phase of the trial if defendant is convicted."  He also filed a petition for "inquisition on the sanity" of the defendant.  It is clear that the appellant's sanity at the time of the offense was put at issue prior to the trial.

After the appellant had been found guilty and during the sentencing phase of the proceedings, appellant introduced the testimony of Professor Raymond Sumrall, a certified social worker, as to the issue of mitigating evidence. Sumrall testified that the act of murdering an individual would be inconsistent with the appellant's previous behavior.  To rebut this testimony, the prosecution presented the testimony of Dr. Bernard Bryant, a psychologist.  He testified that the appellant has a personality disorder, that treatment for this disorder is often ineffective, and that because of the attitude of people with personality disorders they are very unlikely to change.

The appellant relies on *Estelle v. Smith*, supra, as the basis for his argument that his constitutional rights were violated.

> "The Fifth Amendment, made applicable to the states through the Fourteenth Amendment, commands that '[n]o person ... shall be compelled in any criminal case to be a witness against himself.'  The essence of this basic constitutional principle is 'the requirement that the State which proposes to convict *and punish* an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips.'"

*Estelle*, 451 U.S. at 462, 101 S. Ct. at 1872 (citations omitted).  The United States Supreme Court in *Estelle* held that under the circumstances of the case, the psychiatrist could not be allowed to testify concerning the "future dangerousness" of the defendant.  *Estelle* is readily distinguishable from the instant case.  In *Estelle*, the prosecutor had the burden of proving the existence of future dangerousness, beyond a reasonable doubt, at the sentencing hearing.  Further, in *Estelle*, the mental competency of the defendant was not placed at issue.

We quote the recent Alabama Supreme Court case of *Ex parte Wilson*, 571 So. 2d 1251, 1258 (Ala. 1990):

> "We are mindful that the defendant offered the psychiatric testimony in this case in order to establish mitigating circumstances under [Ala.] Code 1975, § 13A-5-51(2).  The defendant clearly bears the burden of proving mitigation under § 13A-5-45(g).  However, § 13A-5-45(g) states that once the defendant interjects the issue of mitigation 'the State shall have the burden of disproving the factual existence of that circumstance by a preponderance of the evidence.'  Thus, the State was justified in producing its own expert to rebut the evidence of mitigation offered by the defendant's expert."

The Supreme Court went on to say further that *Estelle* was readily distinguishable.  They stated "the Supreme Court [of the United States] noted that 'a different situation arises where a defendant intends to introduce psychiatric evidence at the penalty phase' as opposed to the case where the defendant intends to offer no such evidence." *Wilson*, 571 So. 2d at 1259, quoting from *Estelle*, 451 U.S. at 472, 101 S. Ct. at 1878.  In *Wilson*, the Supreme Court stated that the appellant had been notified that the examination would cover any evidence of mitigating evidence.  As the state argues, it appears from the motion filed by the appellant that he was aware that the examination would cover any evidence offered during the sentencing phase of the trial.

-143-

601 So. 2d at 1078-79.  Petitioner raised the ineffective-assistance claim in his appeal from the denial of his Rule 32 petition.  Rule 32 Appeal Claim 2(b).  The appellate court noted, however, that the claim was not raised in the Rule 32 petition or by amendment, and was procedurally barred.  The court additionally noted that the decision on appeal was correct, and that petitioner was not prejudiced by the failure to object to Bryant's testimony, which included statements favorable to the defense.  783 So. 2d at 122-23.

The court notes that Bryant was called to rebut the testimony put forth by the defendant by Sumrall regarding his non-violent nature.  As the state court determined on direct appeal, the admission of his testimony was in accordance with the Supreme Court's comments in Estelle v. Smith, 451 U.S. 454, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981).[38]  The appellate court's adjudication

---

[38]     It should be noted that Estelle is instructive but not dispositive of this issue because Estelle was limited to the issue of whether use of a defendant's statement made to a state-employed psychiatrist violated the defendant's Fifth Amendment rights and has not been expanded to cover the situation at bar.  Petitioner now alleges that Estelle is distinguishable because Sumrall was not a psychiatrist, but petitioner offers no legal support for this distinction, and the court is unaware of any.  Moreover, a review of Bryant's testimony reveals that Bryant never actually testified that the petitioner posed a future danger.  Bryant simply testified that the petitioner exhibited traits of an antisocial personality, and that persons with that personality disorder tend to persist in behaviors of prevarication and theft.  Accordingly, this claim also is without merit because it is not based in fact in that petitioner mischaracterizes Bryant's testimony as supporting a finding of future dangerousness.

of this issue applied the correct legal standard and did not involve any unreasonable application of the facts. Accordingly, the substantive claim is due to be dismissed because it was adjudicated on the merits in the state courts and the state courts' decision is due deference. In addition, the related ineffective-assistance claim is due to be denied as procedurally barred pursuant to <u>Harris v. Reed</u>, 489 U.S. 255, 263, 109 S. Ct. 1038, 103 L. Ed. 2d 308, 317 (1989).

### T. *Habeas* Claims 3(d) and 17 (Consideration Of the Pre-Sentence Report)

Petitioner alleges at paragraphs 136-38 that he was denied effective assistance of counsel in that his attorneys at the penalty phase failed to object to the court's consideration of the pre-sentence report on grounds that it contained hearsay and suggested that the death penalty should be imposed on the basis of non-statutory aggravating circumstances (Claim 3(d)). Similarly, petitioner contends at paragraphs 177-180 that his constitutional rights were violated by consideration of the pre-sentence report (Claim 17). The substantive claim relating to the pre-sentence report first was raised on direct appeal. <u>See</u> Appeal Claims 15(a)-(c). The Alabama Court of Criminal Appeals examined the issue on the merits and held:

Last, the appellant argues that the trial court erred in considering a presentence report, which contained nonstatutory aggravating circumstances, a recommendation by the preparer, statements made by the appellant while counsel was not present, and hearsay.  Initially, we observe that the appellant made no objection to this in the court below.  Thus, we must apply the plain error doctrine.  Is the error so egregious that the fairness of the proceedings were affected?  See *Dill* and *Kuenzel*.

Initially, we recognize the important function that the presentence report serves.  Section 13A-5-47(b) specifically provides for the preparation of presentence reports.  "A presentence report is recognized as a valuable sentencing aid."  Colquitt, *Death Penalty Laws*, 33 Ala. L. Rev. 213, 330 (1982).

Regarding the recommendation by the parole officer, this court has recently addressed this issue on several occasions.  See *Dill; Kuenzel;* and *Lawhorn v. State*, 581 So. 2d 1159, 1171 (Ala. Cr. App. 1990).  We stated in *Lawhorn*:

> "'Although we do not approve or condone such a recommendation, we find that error harmless in this case.  Rule 45, A.R.A.P.  "[T]he mere presence of information in the pre-sentence report which should not be considered for the purpose of enhancing punishment is not, *per se*, prejudicial." *Johnson v. State*, 521 So. 2d 1006, 1031 (Ala. Cr. App. 1986), affirmed, 521 So. 2d 1018 (Ala.), cert. denied, 488 U.S. 876, 109 S. Ct. 193 [102 L. Ed. 2d 162] ... (1988).'"

*Lawhorn*, 581 So. 2d at 1171, quoting *Kuenzel*, 577 So. 2d at 527.

In both *Lawhorn* and *Kuenzel* this court noted that it was apparent from the trial court's findings that the court independently weighed the aggravating and mitigating circumstances and found that the aggravating circumstances outweighed the mitigating circumstances.  It is apparent from a review of the trial court's findings in the instant case that the trial court independently weighed the evidence.  The trial court's

-146-

order complies with § 13A-5-47(d), Code of Alabama 1975. See *Lawhorn*.

The appellant further argues that the presentence report was improper since it contained hearsay statements. Judge Bowen recently addressed this issue in *Kuenzel*:

> "'Courts are permitted to consider hearsay testimony at sentencing.... While hearsay evidence may be considered in sentencing, due process requires both that the defendant be given an opportunity to refute it and that it bear minimal indicia of reliability.... These protections apply not just to hearsay testimony but also to any information presented at sentencing.... When, as in this case, the defendant claims that his due process rights were violated by the sentencing court's reliance on materially false information, the defendant must establish not only that the disputed information is materially false or unreliable, but also that the sentencing judge relied on the information.'
>
> "*United States v. Giltner*, 889 F.2d 1004, 1007 (11th Cir. 1989).   A sentencing judge may consider hearsay evidence so long as the defendant had a fair opportunity at rebuttal. *Smiley v. State*, 435 So. 2d 202, 206 (Ala. Cr. App. 1983), *Johnson v. State*, 399 So. 2d 859, 864 (Ala. Cr. App), affirmed in part, reversed in part on other grounds, 399 So. 2d 873 (Ala. 1979).
>
> In *Thompson [v. State]*, 503 So. 2d [871,] at 880 [1986], this Court rejected the argument that the presentence report was inadmissible at the sentence hearing because, among other things, it 'included hearsay ... [and] the summary of the crime was prejudicial':
>
> "'It is clear to this court that the report is entirely consistent with Alabama's capital murder statute regarding evidence to be considered in sentencing.  Section 13A-5-45(d), Code states, "[a]ny evidence which has

-147-

probative value and is relevant to sentence
shall be received at the sentence hearing
regardless of its admissibility under the
exclusionary rules of evidence, provided the
defendant is accorded a fair opportunity to
rebut any hearsay statements.'   Further, the
report itself is an out-of-court statement and
is entirely hearsay.     However, it is
admissible under § 13A-5-47 Code of Alabama,
being specifically called for consideration by
the trial court.

"'It is equally clear to this court that the
summary of the offense contained in the pre-
sentence report was not prejudicial to this
appellant.    He argues that this summary
contained an opinion [by a parole officer] as
to his culpability in the crime in question.
This argument is without merit.     The
appellant's culpability was established by the
jury's verdict of guilt.  Further, the summary
of the offense is consistent with the evidence
presented by the State and with the
appellant's own statement which was admitted
into evidence at trial.  The appellant was not
prejudiced by this information.'

"*Thompson*, 503 So. 2d at 880.

"The exclusion of hearsay evidence that is
highly relevant to a critical issue in the
penalty phase of a trial may constitute
reversible error.  *Green v. Georgia*, 442 U.S.
95, 97, 99 S. Ct. 2150, 2151, 60 L. Ed. 2d 738
(1979)."

*Kuenzel*, 577 So. 2d at 528-29.   See also *Dill*, supra.
The hearsay in the instant case is similar to that which
the court ruled was not error to include in a presentence
report in *Thompson*.  The appellant had every opportunity
to refute the statements contained in the presentence
report.  No plain error exists here.

The appellant also contends that the inclusion in the
presentence report of comments made by the appellant in
an interview with his parole officer deprived him of his
constitutional right against self-incrimination. [FN2]

-148-

> Initially, we note that no objection was made to this in the trial court.  While this will not bar review in a case involving the death penalty it will weigh against any claim of prejudice.  See *Dill* and *Kuenzel*.  We apply the same harmless error analysis that this court applied in *Kuenzel* and *Dill*.  Like the statements in *Kuenzel* and *Dill*, the statements in the report which were credited to the appellant were insignificant.  (For a thorough discussion of this issue, see *Kuenzel*, supra.)  We can conceive of no possible reason why these statements would have affected the trial court's imposition of the death sentence.  No plain error exists here.
>
> FN2.  We note that some federal courts have ruled that *Miranda* warnings are not needed in the above situation. For a discussion of this see *Kuenzel*.

601 So. 2d at 1084-86.  Petitioner's related claim of ineffective assistance was raised in the Rule 32 context, and the appellate court examined that issue on appeal, finding that there was no basis for objection, and that the trial court did not consider any improper information in imposing the sentence.  783 So. 2d at 134.

The petitioner contends that the pre-sentence report contained improper information in three ways: (1) that it included statements made by the petitioner without benefit of counsel in violation of his Fifth and Sixth Amendment rights; (2) that it related prejudicial hearsay by unnamed sources; and (3) that it improperly suggested that the death penalty should be imposed on the basis of non-statutory aggravating circumstances.  As the Alabama Court of Criminal Appeals pointed out, the mere existence of improper statements in the pre-sentence report does not constitute error unless the trial court relied on that information in imposing the

sentence.    Where  the  trial  court  "independently  weighed  the
evidence"  and  otherwise  complied  with  state  law  and  the
Constitution,  the  presence  of  inappropriate  information  in  the
report  is  not  *per se*  prejudicial.   601 So. 2d at 1085.   A review of
the  transcript  of  the  sentencing  phase,  the  sentencing  order,  and
the  Rule  32  hearing  indicates  that  the  information  in  the  pre-
sentence  report - even if improper, which this court has not found
that  it  was - was  not  prejudicial  because  the  trial  court  had
independent  information  upon  which  to  form  the  basis  of  its
findings.[39]

     The state court's findings of fact and conclusions of law with
regard  to  the  use  of  the  pre-sentence  report  have  not  been  shown  to
be  contrary  to  or  an  unreasonable  application  of  federal  law.
Accordingly,  they  are  due  deference,  and  the  petitioner  is  not
entitled  to  any  relief  on  these  claims.


     **U.    *Habeas* Claims 3(e) and 19 (Prosecutor's Reference To
          "Reasonable Satisfaction")**

     At  paragraph  183  petitioner  asserts  that  he  was  denied  a  fair
trial  because  the  prosecutor  told  the  jury  during  opening  statement
at  the  penalty  phase  of  his  trial  that  they  must  find  to  a

---

     [39]    The trial court's sentencing order is contained at Tab R-
1, within Vol. 7 of the respondents' exhibits, at pp. 1427-1434.
Specific findings as to statutory aggravating circumstances are set
forth at pp. 1429-1430.

"reasonable satisfaction" that the aggravating circumstances outweighed the mitigating circumstances (Claim 19). Similarly, petitioner asserts at paragraphs 139-140 that he received ineffective assistance because his attorneys failed to object to that statement (Claim 3(e)). Petitioner first raised the substantive claim on direct appeal. See Appeal Claim 17. The Alabama Court of Criminal Appeals considered the claim, stating:

> The appellant further argues that the following statement made by the prosecutor in his opening statement during the sentencing phase was error. The prosecutor said:
>
>> "And I anticipate upon hearing that evidence and all other offered mitigating circumstances and evaluating the weight of these two amounts of evidence simply this: To the reasonable satisfaction of the jury, the appropriate punishment for the personal responsibility and moral guilt of the defendant is nothing other than death."
>
> The appellant maintains that "reasonable satisfaction" was not the correct standard upon which the jury would fix punishment. Initially, we observe that no objection was made at trial. Thus, we must evaluate the above comment according to the plain error doctrine and ask whether the error is so egregious that it affected the fairness of the proceeding. See *Dill* and *Kuenzel*.
>
> We do not believe that this comment, made once during a lengthy opening statement by the prosecutor, affected the fairness of the proceedings. The trial court thoroughly instructed the jury on the finding of aggravating and mitigating circumstances. The court told the jury that they must be satisfied beyond a reasonable doubt that any aggravating circumstance had been proven. The court also stated in its instruction, "If there's a dispute as to the factual existence pertaining to any of the offered mitigating circumstances, then the State would have the burden of disproving the factual existence of that

-151-

> circumstance by a preponderance of the evidence."   The
> isolated comment made by the prosecutor in no way
> constitutes plain error.

601 So. 2d at 1080.   Petitioner again raised the substantive claim in the Rule 32 petition and added the related claim of ineffective assistance.   See Rule 32 Claims 13, 23(hh).   The appellate court examined those claims in petitioner's appeal from the denial of post-conviction relief, stating that the statement was not "plain error, and did not provide any basis for objection by counsel.  783 So. 2d at 135.

The state courts have examined this substantive claim and have found that it was not in error.   Petitioner has failed to demonstrate that the finding is not due deference under § 2254(d).   Similarly, the courts have found that the statement was not objectionable, and that counsel could not have been ineffective for failing to raise such an objection.   This finding also is due deference.   Alternatively, even if counsel can be faulted for not objecting, no prejudice resulted because the comments did not undermine the fundamental fairness of the sentencing process.   See Spivey v. Head, 207 F.3d 1263 (11th Cir. 2000); Drake v. Kemp, 762 F.2d 1449 (11th Cir. 1985)("Improper argument will only warrant relief if it renders a petitioner's trial or sentencing 'fundamentally unfair'").   It is clear from the transcript that the jury was fully informed that they must make their determination at

the penalty phase based on the "reasonable doubt" standard.  The phrase was used in the context of an opening statement that referenced "reasonable satisfaction" was merely an isolated comment.  Accordingly, the claims related to the statement concerning the jury's "reasonable satisfaction" are meritless.

### V.   *Habeas* Claims 4(a) and (b) (Lack Of Due Process During Rule 32 Proceedings)

Petitioner asserts at paragraphs 141-58 that his due process rights were violated in the Rule 32 proceeding in that the trial court refused his request for funds to hire experts, and took judicial notice of the fact that the investigator's secretary was black.  (Claims 4(a) and (b).)  These claims are alike in that both allege error that occurred in the post-conviction proceedings, which have no bearing on the capital murder conviction or on the imposition of the death penalty.  Because these claims do not "in any way undermine[] the validity of petitioner's conviction," they do not state a basis for *habeas* relief.  Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987).  The conduct that petitioner complains of relates only to the petitioner's post-conviction proceeding, to which the federal constitution provides no right.  Consequently, the claims relating to the Rule 32 proceeding (Claims 4(a) and (b)) are due to be dismissed for failure to state a claim upon which relief may be granted.

## W. *Habeas* Claims 16 and 20 (Jury Instructions At Penalty Phase)

Petitioner asserts that the trial court erred in "repeatedly" telling the jury that its sentence would be only a "recommendation."  Specifically, petitioner contends at paragraph 176 that the trial court referred to the verdict more than 20 times as a recommendation, which "diminished the jury's sense of responsibility for its sentence of death" (Claim 16).  In addition, petitioner claims at paragraph 184 that the trial court allowed the jury "unguided discretion" at the penalty phase in weighing the aggravating circumstances against the mitigating circumstances (Claim 20).  These claims were presented to the Alabama Court of Criminal Appeals on direct appeal.  See Appeal Claims 14, 18.  In weighing the propriety of the court's statements to the jury at the penalty phased, the court stated:

> The appellant next contends that several of the jury instructions in the sentencing phase were constitutionally flawed.  No objections were made to these instructions at trial.  "'While this failure to object does not preclude review in a capital case, *it does weigh against any claim of prejudice.' Ex parte Kennedy*, 472 So. 2d 1106, 111 (Ala. 1985)." *Kuenzel*.  As provided for by Rule 45A, A. R. App. P., we must review any case involving the death penalty for plain error.  As Judge Bowen restated in *Kuenzel*, plain error is, "'error which, when examined in the context of the entire case, is so obvious that failure to notice it would seriously affect the fairness, integrity, and public reputation of the judicial proceedings.'" *Kuenzel*, 577 So. 2d at 489, quoting *United States v. Butler*, 792 F.2d 1528, 1535 (11th Cir.), cert. denied, *Waites v. United States*, 479 U.S. 933, 107 S. Ct. 407, 93 L. Ed. 2d 359 (1986).  We

-154-

recognize that instructions receive a more intense scrutiny from appellate courts than from the jurors themselves.

As the Supreme Court of the United States stated in *California v. Brown*, 479 U.S. 538, 107 S. Ct. 837, 93 L. Ed. 2d 934 (1987), when deciding whether a trial court erred in delivering a jury instruction, we must consider the interpretation a reasonable juror places on the instruction,

> "'focus[ing] initially on the specific language challenged. *Francis v. Franklin*, 471 U.S. [307, 315, 105 S. Ct. 1965, 1971, 85 L. Ed. 2d 344 (1985)]. If the specific instruction fails constitutional muster, we then review the instructions as a whole to see if the entire charge delivered a correct interpretation of the law."

*California v. Brown*, 479 U.S. at 541, 107 S. Ct. at 839.

The first instance complained of by the appellant is the following instruction: "[Y]our verdict in this case, your deliberation, should be based on the evidence you've seen and heard and the law that has been explained to you." The appellant argues that this statement limits the jury's discretion and does away with the jury's option to impose a sentence of life without parole. He contends that the instruction prevented the jury from making a "moral" response.

A review of the jury charge shows that the instruction in no way impinged on the ability of the jury to sentence the appellant to life without parole. The trial court gave very detailed instructions on the mitigating circumstances which would militate against the death penalty. As the United States Supreme Court stated in *Gardner v. Florida*, 430 U.S. 349, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977), "It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion." *Gardner*, 430 U.S. at 358, 97 S. Ct. at 1204.

The appellant next argues that the trial court erred in failing to instruct the jury on "their unfettered option"

-155-

to impose a sentence of life without parole.  The jury
may not recommend mercy without reason.  See *Morrison v.
State*, 500 So. 2d 36 (Ala. Cr. App. 1985), aff'd, 500 So.
2d 57 (Ala. 1986), cert denied, 481 U.S. 1007, 107 S. Ct.
1634, 95 L. Ed. 2d 207 (1987).  The jury does not have an
"unfettered option" to recommend a sentence of life
without parole unless after weighing the aggravating and
mitigating circumstances it finds that life without
parole is warranted.  The record clearly shows that the
trial court did instruct the jury, on several occasions,
regarding its option to sentence the appellant to life
without parole.  Also, the court thoroughly instructed
the jury on aggravating and mitigating circumstances.

The appellant also argues that the trial court erred in
instructing the jury that it was to avoid any arbitrary
factor in reaching a decision regarding sentencing.  No
objection was made to this instruction during the trial.
The appellant states that the jury might easily have
believed that it "could not consider mercy or sympathy or
any factor in mitigation that was not expressly addressed
by the trial judge."  The trial court gave the following
instruction:

> "In reaching your findings concerning the
> aggravating and mitigating circumstances, and
> in determining what your recommendation will
> be as to the punishment in this case, *you must
> avoid any influence of passion, prejudice, or
> arbitrary factors.  Your determination, your
> verdict in this case, your deliberation,
> should be based on the evidence that you've
> seen and heard and the law that has been
> explained to you.*  There is no room in the
> trial of such cases for any influence of
> passion, prejudice, or any type of arbitrary
> factors to come into your determination or
> consideration."

The trial court did not err in giving this instruction.
See *California v. Brown*, supra.  See also *Saffle v.
Parks*, 494 U.S. 484, 110 S. Ct. 1257, 108 L. Ed. 2d 415
(1990).  In *California v. Brown*, the jury was instructed
not to be swayed by "mere sentiment, conjecture,
sympathy, passion, prejudice, public opinion or public
feeling."  As the Supreme Court stated:

> "An instruction prohibiting juries from basing their sentencing decisions on factors not presented at the trial, and irrelevant to the issues at the trial, does not violate the United States Constitution.  It serves the useful purpose of confining the jury's imposition of the death sentence by cautioning it against reliance on extraneous emotional factors, which, we think, would be far more likely to turn the jury against a capital defendant than for him."

*California v. Brown*, 479 U.S. at 543, 107 S. Ct. at 840.  A similar instruction was considered by this court in *Pierce*, supra.  Judge Tyson wrote:

> "'In evaluating this alleged constitutional error, the Court must determine how a reasonable juror could construe the instruction. *Francis v. Franklin*, 471 U.S. 307, 105 S. Ct. 1965, 1971-72, 85 L. Ed. 2d 344 (1985)....'"

*Pierce*, 576 So. 2d at 255, quoting *Julius v. Jones*, 875 F.2d 1520, 1528 (11th Cir.), cert. denied, 493 U.S. 900, 110 S. Ct. 258, 107 L. Ed. 2d 207 (1989).

This court, in the recent case of *Haney*, supra, considered a comment made by the prosecutor in his closing argument, which asked the jury to put aside their sympathies.  As Judge Patterson stated:

> "Our examination of the portion of the closing argument set out above leads us to the conclusion that it is no more than the prosecutor urging the jury not to be distracted by matters unrelated to the evidence, but to confine itself to the facts and the law."

*Haney*, 603 So. 2d at 394.  The same can be said of the instruction in the instant case.  The jury was thoroughly instructed that it could consider any evidence in considering mitigating circumstances.  The trial judge's comment in the instruction, when viewed with the instruction as a whole, was not plain error.

Furthermore, as the State argues, the instruction is substantially the same as the pattern instruction in *Proposed Pattern Jury Instructions for use in the Sentence Phase of Capital Cases Tried under Act No. 81-178*. "'[W]e do not think we should hold that the trial judge *plainly erred* when he instructed the jury pursuant to a pattern jury instruction 'recommended' by this Court, especially in the absence of an objection or request from the defendant.'" *Kuenzel*, 577 So. 2d at 520, quoting *Ex parte Harrell*, 470 So. 2d 1309, 1315 (Ala. 1985).

The appellant further argues that the trial court erred in instructing the jury that one aggravating circumstance had already been proven by the fact that the jury had found the appellant guilty of a capital offense.  He states that this forced him to overcome a presumption that the death sentence should be imposed.  We do not agree.  As Judge Tyson wrote in *Pierce,* supra:

> "'Alabama's "statutory sentencing scheme does not provide, that if even one aggravating circumstance is found, 'death is presumed to be the proper sentence' unless overcome by sufficient mitigating circumstances." [Citation omitted.]  Neither the oral charge of the trial judge nor Alabama's statutory sentencing scheme "presumes" that death is the appropriate punishment upon the finding of the existence of at least one aggravating circumstance.'  *Kuenzel*, 577 So. 2d 474 at 521.  Thus, there is no 'automatic death penalty' upon conviction for a capital offense for which there is an 'overlap' between one of the elements of the offense and a statutory aggravating circumstance."

*Pierce*, 576 So. 2d at 255; see also *Kuenzel*.

The appellant further contends that during the instructions in the sentencing phase, the trial court lessened the jury's responsibility by stating that its sentence was a recommendation to the trial court.  He contends that this violates the holding of *Caldwell v. Mississippi,* 472 U.S. 320, 105 S. Ct. 2633, 86 L. Ed. 2d 231 (1985).  Initially, we observe that no objection was

made to this during the trial.  As the state correctly
argues:

> "'[T]he comments of the prosecutor and the
> instructions of the trial court accurately
> informing a jury of the extent of its
> sentencing authority and that its sentence
> verdict was 'advisory' and a 'recommendation'
> and that the trial court would make the final
> decision as to sentence does not violate
> *Caldwell [v. Mississippi*, 472 U.S. 320, 105 S.
> Ct. 2633, 86 L. Ed. 2d 231 (1985)].' *Martin
> v. State*, 548 So. 2d [488, 494 (Ala. Cr. App.
> 1988), aff'd, 548 So. 2d 496 (Ala. 1989)]."

*Kuenzel*, 577 So. 2d at 502.

The appellant further contends that the trial court erred
in giving the jury no guidance in weighing the
aggravating and mitigating circumstances.  No objection
was made to this at trial.  This will not bar review in
a case involving the death penalty.  See *Kuenzel*.

For the death penalty to be imposed in Alabama, it does
not have to be proven that beyond a "reasonable doubt"
the aggravating circumstances outweigh the mitigating
circumstances.  The aggravating circumstances must simply
outweigh the mitigating circumstances.  See § 13A-5-48,
Code of Alabama 1975.  As Judge Patterson wrote in
*Rutledge v. State*, 523 So. 2d 1087 (Ala. Cr. App. 1987),
rev'd on other grounds, 523 So. 2d 1118 (Ala. 1988):

> "'While the existence of an aggravating or
> mitigating circumstance is a fact susceptible
> to proof under a reasonable doubt or
> preponderance standard, ... the relative
> *weight* is not.  The process of weighing
> circumstances is a matter for judge and jury,
> and, unlike facts, is not susceptible to proof
> by either party.'"

*Rutledge*, 523 So. 2d at 1111-12, quoting *Ford v.
Strickland*, 676 F.2d 434, 442 (11th Cir. 1982), vacated,
696 F.2d 804 (11th Cir.), cert. denied, 464 U.S. 865, 104
S. Ct. 201, 78 L. Ed. 2d 176 (1983)(same statement is
contained in both cases).  See also *Whisenhant v. State*,
482 So. 2d 1225 (Ala. Cr. App. 1982), aff'd in part and

remanded, 482 So. 2d 1241 (Ala. 1985).  The trial court committed no error in failing to instruct the jury that the aggravating circumstances must outweigh the mitigating circumstances beyond a reasonable doubt.

After a review of the specific challenges to the jury instructions and a review of the jury instructions as a whole, we can find no error on the part of the trial court.

601 So. 2d at 1080-83.  The appellate court examined claims that the jury instruction unduly limited the jury's discretion to impose the penalty of life without parole, and specifically cited the court's instructions on mitigating and aggravating circumstances. The court relied upon United States Supreme Court authority in determining whether the instructions violated the Constitution. Id. at 1081-82, citing California v. Brown, 479 U.S. 538, 107 S. Ct. 837, 93 L. Ed. 2d 934 (1987);  Caldwell v. Mississippi, 472 U.S. 320, 105 S. Ct. 2633, 86 L. Ed. 2d 231 (1985).  Under § 2254(d), this court is bound to give those findings of fact and law due deference, absent some showing by petitioner that the state courts adjudication of the claims was contrary to federal law or involved an unreasonable application of the facts.[40]  Petitioner has

---

[40]   Comments minimizing the jury's responsibility in sentencing a capital defendant may violate the Constitution, but the threshold of unacceptability of such comments is high.  For example, in Buttrum v. Black, 721 F. Supp. 1268, 1316 (N.D. Ga. 1989), a case cited by petitioner, the prosecutor told the jurors that the defendant had "signed her own death warrant," that the jury was "merely one cog in the criminal process," and quoted the Bible to them, stating: "He is the servant of God to execute his wrath on the wrongdoer."  Id. at 1316.  The prosecutor further

not demonstrated either; accordingly, he is not entitled to any relief on these claims challenging the trial court's instructions at the penalty phase of his trial.

## X.  *Habeas* Claim 18 (Sufficiency Of the Evidence)

At paragraphs 181-82, petitioner asserts generally that the evidence adduced at trial was constitutionally insufficient to support a conviction for capital murder or a sentence of death (Claim 18).  This claim was raised on direct appeal.  <u>See</u> Appeal Claim 16.  The Alabama Court of Criminal Appeals clearly found that the evidence was sufficient to sustain the conviction and sentence, stating:

> The appellant also contends in his supplemental brief that there was insufficient evidence to find him guilty of murder committed during the course of a robbery.  We do not agree.  The evidence was clearly sufficient for the jury to find beyond a reasonable doubt that the appellant was guilty of capital murder.
>
> The state's evidence tended to show that on January 23, 1988, the victim was shot, execution style, with one bullet to the head.  The appellant and two other individuals were on Interstate 59, South, when they saw the victim's car on the side of the road.  They took the victim to a wooded area and shot him once in the head at

stated that "No one - no one else, including you should feel any responsibility for what happens to her, for it is she that broke into that room that night...."  <u>Id</u>. at 1316, n. 11.  None of the comments complained of in the instant case similarly remove the "responsibility for determining the appropriateness of the defendants death," as required by <u>Caldwell</u> in order to trigger *habeas* relief.

very close range.  The victim's money and truck were
taken from the site.  Later that same day, the appellant
was seen driving the victim's truck.  The appellant went
to visit a relative and showed her a gun and bullets and
said that he had killed a white man and stole his truck.
A statement was also admitted which was made by appellant
in which he said, "I have killed one white m____ f____;
I'll kill another one."  This evidence was clearly
sufficient to present the issue of appellant's guilt to
the jury for their determination.  There is no reason to
disturb their verdict on appeal.  "We will not substitute
our judgment for that of the jury."  *Neal v. State*, 460
So. 2d 257, 260 (Ala. Cr. App. 1984).

601 So. 2d at 1077-78.

The court first notes that this claim has been adjudicated on

the merits in the state courts and, thus, is entitled to deference.

The court further emphasizes that the federal courts play a limited

role in weighing the constitutional sufficiency of evidence in a

state criminal prosecution.  See Martin v. State, 730 F.2d 721, 724

(11th Cir. 1984).  The sole question to be determined when a state

prisoner seeks federal *habeas* relief on the ground that the

evidence at his trial was insufficient is "whether, after viewing

the evidence in the light most favorable to the government, any

rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt."  Smith v. White, 815 F.2d

1401, 1403 (11th Cir.), cert. denied, 485 U.S. 863 (1987), citing

Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.

Ed. 2d 560 (1979).  "The government's proof need not rule out every

theory except guilt beyond a reasonable doubt." Bishop v. Kelso, 914 F.2d 1468, 1470 (11th Cir. 1990)(emphasis in original).

When presented with conflicting testimony, a federal *habeas* court must presume that the trier of fact resolved the conflict in favor of the prosecution. Machin v. Wainwright, 758 F.2d 1431, 1435 (11th  Cir. 1985).  In other words, the federal courts must defer to the judgment of the jury in assessing the credibility of the witnesses and weighing the evidence. See Jackson, 443 U.S. at 326; Wilcox v. Ford, 813 F.2d 1140 (11th Cir. 1987).

Upon an independent review of the record, the Court concludes that a rational trier of fact could have found the petitioner guilty beyond a reasonable doubt of capital murder.  The evidence showed that petitioner was driving the pickup truck stolen from the murder victim the morning after the murder, that the murder weapon was found in petitioner's bedroom, and that the petitioner told at least two people that he had killed a white man shortly after the robbery and murder occurred.  As the Alabama Court of Criminal Appeals determined when this issue was raised on appeal, those facts, which a reasonable juror could find, are sufficient to show that the petitioner was guilty.  For these reasons, the claim challenging the sufficiency of the evidence is without merit.

     **Y.   *Habeas* Claim 22 (Consideration Of Prior Criminal Activity**
           **and Escape)**

     In another challenge to the propriety of the penalty phase,
petitioner contends at paragraphs 188-189 that the trial court
erred in finding that there were no mitigating circumstances and in
concluding that petitioner had escaped.   More specifically,
petitioner asserts that the court should have recognized as a
mitigating factor that petitioner's prior criminal history
contained no crimes of violence.   Further, petitioner asserts that
the court's finding that petitioner was on escape when the capital
crime occurred never was proven at trial.   This claim was raised on
direct appeal.[41]   See Appeal Claim 1.   The Alabama Court of Criminal
Appeals addressed the claim, stating:

       The appellant next argues that the trial court erred in
       its written findings as to mitigation.   Specifically, he
       argues that the trial court erred in finding that the
       mitigating circumstance of the defendant's having no
       significant history of prior criminal activity under §
       13A-5-51(1), Code of Alabama 1975, was not applicable.
       The trial court made the following findings:

            "*The mitigating circumstances*.   The defense
            asserted the presence of mitigating
            circumstances.   Although the defense did not
            rely on all of the statutory mitigating
            circumstances, the court reviews all of the

_____

     [41]  The claim relating to the criminal history also was raised
in the Rule 32 petition.   See Rule 32 Claim 16.   His appeal from
denial of Rule 32 relief, however, did not contain the claim.   It
was exhausted nonetheless on direct appeal, and it was not
necessary to relitigate it during Rule 32 proceedings.   Thus, there
is no procedural default due to the failure to appeal the denial of
the Rule 32 petition.

                              -164-

statutory mitigating circumstances in this
sentencing order.

"1. *The defendant has no significant history
of prior criminal activity.* See Ala. Code §
13A-5-51(1)(1982 repl. vol.). The court finds
that this mitigating circumstance is
inapplicable.

"The defense argued that the defendant has no
significant history of prior criminal
activity. According to the defense this
mitigating circumstance should be deemed
established by the absence of previous
convictions for crimes of violence. Although
the defendant does not have a record of prior
convictions for violent felonies, he does have
a history of prior criminal activity, and that
history is significant. In 1979 he was
convicted of grand larceny. By his own
account, he was sent to the Frank Lee Youth
Center, but after only four months he was
transferred to Draper prison. Then he was
placed in a work-release program in Mobile,
but was 'busted' for shoplifting and returned
to prison, this time at Atmore. In 1981 he
was convicted of burglary in the third degree.
He served the two-year sentence. Obviously,
though, he did not serve the entire sentence,
for in 1982 he was convicted of possessing
burglar's tools. In 1983 he was convicted of
two counts of breaking and entering a motor
vehicle and one count of burglary in the third
degree. He served a split sentence on the
burglary conviction. In 1984 he was convicted
of receiving stolen property, burglary in the
third degree, and violation of the Alabama
Controlled Substances Act. He was given two
fifteen year sentences to run concurrently on
the first two convictions. He was on escape
from these sentences when he committed this
capital offense. He also has been convicted
of giving false information and disorderly
conduct. Moreover, in 1978 the defendant was
adjudicated a youthful offender in 1978 based
on a charge of grand larceny. The court can
consider that adjudication. *See* Ala. Code §

> 15-19-7(a)(1982 repl. vol.)('[I]f he is
> subsequently convicted of crime, the prior
> adjudication as youthful offender shall be
> considered.').  This mitigating circumstance
> refers to no significant history of prior
> criminal 'activity,' not convictions. Even if
> that adjudication were not considered by the
> court though, the defendant nevertheless has
> an extensive criminal record.
>
> "Additionally, the defendant has served at
> least portions of six separate sentences.  He
> has had at least one probation sentence
> revoked.  He has violated the conditions in
> two separate work release programs.  Thus,
> disregarding the youthful offender adjud-
> ication and the misdemeanor convictions, the
> defendant has five prior felony convictions.
>
> "The defense proffered the opinion of a
> witness that 'the defendant does not have a
> significant history of violent or assaultive
> behavior in his prior criminal activity.'
> That is true, but does not establish this
> mitigating circumstance.  The statutory
> definition never refers to violent or
> assaultive conduct.  The court discussed this
> circumstance to this degree only in deference
> to the defense's argument that it was present.
> The defendant's long and substantial history
> of criminal behavior requires the court to
> reject this mitigating circumstance."

We agree with the trial court.  The appellant did have a
significant history of prior criminal conduct.  It was
sufficient enough not to invoke the mitigating provision
of § 13A-5-51(1), Code of Alabama 1975.  This section
states that, "Mitigating circumstances shall include ...
(1) The defendant has no significant history of prior
criminal activity."

The appellant argues that § 13A-5-51(1) should apply
since he has no prior convictions which involve violent
behavior.  We do not agree.  "Unlike the aggravating
circumstance related to prior criminal acts, this
mitigating circumstance is not restricted to prior
convictions of capital felonies or felonies in which

violence was used." Colquitt, *Death Penalty Laws*, 33
Ala. L. Rev. 213, 300 (1982).  We have upheld the
practice of not applying this mitigating provision when
the significant history was based on prior misdemeanor
convictions.  See *Richardson v. State*, 376 So. 2d 205
(Ala. Cr. App. 1978), aff'd, 376 So. 2d 228 (Ala. 1979).

Section 13A-5-51, Code of Alabama 1975, which lists
mitigating circumstances, does not specifically state
that the history of criminal activity referred to therein
refers only to convictions for violent crimes.  However,
§ 13A-5-49(2), Code of Alabama 1975, which lists
aggravating circumstances, specifically provides that a
conviction for a violent crime is an aggravating
circumstance.    Had  the  legislature  intended  that
convictions for nonviolent crimes not be considered in
determining  whether  there  has  been  "no  significant
history  of  prior  criminal  activity"  for  purposes  of
determining the existence of mitigating circumstances,
it would have specifically so stated in the statutes.  The
trial  court  committed  no  error  in  not  finding  as  a
mitigating  circumstance  that  the  appellant  lacked  a
significant history of prior criminal activity.

The appellant also argues that the court erred in finding
as a prior conviction the crime of escape from the SIR
program.  It is clear from the record that this escape
was  not  considered  in  the  trial  court's  review  of
mitigating  circumstances.   The  trial  judge  referred  to
the  fact  that  the  appellant  had  escaped  from  the  SIR
program,  but  he  does  not  cite  that  escape  as  a  prior
conviction.

It is clear from the record that the trial court allowed
the appellant to introduce "any matter" which would point
towards mitigation.  No error occurred here. *Clisby v.
State*, 456 So. 2d 99 (Ala. Cr. App. 1983), aff'd, 456 So.
2d 105 (Ala. 1984).

601 So. 2d 1083-84.

In  examining  the  trial  court's  written  findings  as  to

petitioner's criminal history, the court in the direct appeal aptly

applied Alabama statutes and case law in determining whether the

petitioner's prior convictions for non-violent offenses could constitute a "significant history of prior criminal activity."  In viewing the claim relating to the escape, the appeals court made a finding of fact that the escape had not been considered by the trial court as a factor.  Petitioner is not entitled to relief on the claims related to the court's findings on mitigation because the state courts examined the issues on the merits, applying the proper standards under Alabama law.  As noted by the state courts, the Alabama statute speaks of "criminal activity," not simply violent criminal activity.  The state trial court correctly found that petitioner had a significant history of criminal activity, even if it was non-violent.  The state courts' conclusions of law are neither contrary to nor an unreasonable application of Supreme Court precedent.  Nor is that court's finding an unreasonable application of the facts.  Consequently, the appellate court's decision is entitled to a presumption of correctness and deference under § 2254(d), and petitioner is not entitled to any relief on this claim.

## Z.   *Habeas* Claim 26 (Unconstitutionality Of Alabama's Death Penalty Statute)

At paragraphs 194-95, petitioner asserts in the instant *habeas* petition that Alabama's death penalty statute is violative of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments.

Specifically, petitioner contends that the appellate courts, in carrying out the proportionality review of death sentences mandated by state law, limit the review to other death penalty cases. Thus, petitioner argues, a death sentence may never be "deemed to have been imposed in a disproportionate manner if compared only to other cases in which death sentences have been imposed" (Claim 26).

Petitioner did not raise this claim in his direct appeal. In his petition for post-conviction relief, petitioner first asserted the claim. See Rule 32 Claim 22. The trial court denied relief on this and more than 20 other substantive constitutional claims on grounds that the claims were precluded under Rule 32.2(a) because they could have been raised on appeal but were not. Order Denying Rule 32 Petition, pp. 3-4. Petitioner argued in his appeal to the Alabama Court of Criminal Appeals that, although the court generally applies the preclusionary effect of Rule 32.2(a) in all cases, the state courts should recognize an exception where the failure to raise the claims was caused by counsel's ineffective assistance. See Petitioner's Brief on Appeal of Rule 32, pp. 129-34. Essentially, petitioner urged the state courts to adopt the test of "cause and prejudice" employed by the federal courts in deciding questions of procedural default in *habeas* cases. Id.,

citing <u>Wainwright v. Sykes</u>.[42]   The appellate court examined that argument and held:

> The appellant also argues that 23 alleged constitutional defects [FN2] that the circuit court found to be procedurally barred pursuant to the provisions of Rule 32.2, Ala. R. Crim. P., should be considered "independently to find that trial counsel was ineffective." (Appellant's brief at p. 132.)  However, he did not first present this argument to the circuit court in his original or amended petition.  Therefore, it is not properly before this court. *See Morrison*, supra.
>
> > FN2.  The appellant appears to concede that the 23 substantive claims are procedurally barred.  To the extent he may argue that we should make an exception to our rules of preclusion, we decline to do so.  To the extent he may argue that they are not barred, his argument is without merit.  The circuit court properly found that the claims are barred pursuant to the provisions of Rule 32.2, Ala. R. Crim. P.

783 So. 2d at 133.  The last state court to examine this claim specifically held that the claim was procedurally defaulted, and petitioner has made no showing of cause and prejudice or of a fundamental miscarriage of justice to avoid the default.  <u>Edwards</u>

---

[42]   Although petitioner asserted in the Rule 32 appeal that the reason this claim was not raised on direct appeal was that his appellate counsel rendered ineffective assistance, he did not make that specific claim of ineffective-assistance at any point prior to the Rule 32 appeal, even though, in the original Rule 32 petition, he raised more than 40 instances of ineffective assistance.  Such a claim of ineffectiveness-as-cause must be both exhausted and not procedurally defaulted in state court.  <u>Edwards v. Carpenter</u>, 529 U.S. 446, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000); <u>Hill v. Jones</u>, 81 F.3d 1015 (11th Cir. 1996).

v. Carpenter, 529 U.S. 446, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000).  Therefore, petitioner is not entitled to relief on this claim.

Even if this claim could be examined on the merits here, it would not warrant relief.  It is clear that the Supreme Court has never mandated proportionality review as an indispensable part of a constitutionally sound capital sentencing scheme.  In <u>Pulley v. Harris</u>, 465 U.S. 37, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984), the Court squarely rejected the notion that proportionality review is constitutionally necessary in capital sentencing schemes using other means to assure that the sentence is not arbitrarily applied.

> That <u>Gregg</u> and <u>Proffitt</u> did not establish a constitutional requirement of proportionality review is made clearer by <u>Jurek v. Texas</u>, 428 U.S. 262, 96 S. Ct. 2950, 49 L. Ed. 2d 929 (1976), decided the same day. In <u>Jurek</u> we upheld a death sentence even though neither the statute, as in Georgia, nor state case-law, as in Florida, provided for comparative proportionality review.

<u>Pulley v. Harris</u>, 465 U.S. 37, 48, 104 S. Ct. 871, 878, 79 L. Ed. 2d 29 (1984).  As long as the sentencing scheme provides for assurances of rationality and guidance for the sentencing authority, proportionality review is not necessary.  For example, some means by which arbitrariness can be checked include limiting the number and types of offenses subject to the death sentence, bifurcating proceedings, requiring a finding of aggravating circumstances, and consideration of mitigating circumstances.  All

of these features are present in the Alabama capital sentencing scheme, thus eliminating the constitutional need[43] for proportionality review under <u>Pulley</u>.   <u>See also</u> <u>Lindsey v. Smith</u>, 820 F.2d 1137 (11th Cir. 1987).   Regardless of the adequacy of the proportionality review conducted by the state courts, *habeas* relief is not warranted because proportionality review is not required by federal law.  There not being a violation of federal constitutional law, this claim also is due to be denied.

## IV.   CONCLUSION

Accordingly, for the reasons stated above, the court finds that the petition for writ of *habeas corpus* under 28 U.S.C. § 2254 is due to be denied and dismissed with prejudice.  A separate order will be entered denying and dismissing the petition for relief.

The Clerk is DIRECTED to serve a copy of this memorandum opinion upon counsel for the petitioner and upon counsel for the respondents.

DATED this 20th day of April, 2005.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

---

[43] Insofar as petitioner alleges that the state courts failed to conduct an adequate proportionality review under state law, the claim fails to state a violation of a federal right; federal *habeas corpus* is not available to correct a violation of state law. <u>Pulley v. Harris</u>, 465 U.S. 37, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984).

-172-